United States District Court
For The Southern District Of New York

| | |
|---|---|
| State of New Jersey,<br>State of Connecticut,<br>State of Delaware,<br>State of New York,<br>Commonwealth of Massachusetts, *and*<br>City of New York,<br>              *Plaintiffs,*<br><br>v.<br><br>Andrew R. Wheeler, *Administrator of the U.S. Environmental Protection Agency; and the* U.S. Environmental Protection Agency,<br>              *Defendants.* | Civil Action No. 20-cv-1425<br><br>**Complaint For Declaratory and Injunctive Relief**<br><br>**(Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*)** |

Plaintiffs, State of New Jersey, State of Connecticut, State of Delaware, State of New York, Commonwealth of Massachusetts, and City of New York (collectively Plaintiff States) allege as follows:

## INTRODUCTION

1. The Plaintiff States sue for declaratory and injunctive relief through the citizen suit provision of the Clean Air Act (Act) against Andrew R. Wheeler, in his official capacity as Administrator of the U.S. Environmental Protection Agency, and against the U.S. Environmental Protection Agency (together, EPA). The Plaintiff States ask the Court to order EPA to carry out the agency's mandatory duty to protect the Plaintiff States from harmful air pollution blowing into our states.

2. Air pollution from Illinois, Indiana, Michigan, Ohio, Pennsylvania, Virginia, and West Virginia (the Upwind States) significantly contributes to levels of harmful air pollution in the Plaintiff States. Oxides of nitrogen ($NO_x$) and volatile organic compounds (VOCs) emitted

1

by power plants and other industrial sources in the Upwind States are carried by prevailing winds into the Plaintiff States, where those pollutants recombine into ozone (often called "smog").

3. Breathing ozone can cause coughing, throat irritation, and lung tissue damage; can aggravate conditions such as asthma, bronchitis, and heart disease; and has been linked to premature mortality. Children, the elderly, and those with existing lung diseases such as asthma are at higher risk of harm from ozone exposure.

4. To protect the public from unhealthy ozone levels, in 2008 EPA published revised National Ambient Air Quality Standards (NAAQS) for ozone, which every state must attain (and thereafter maintain) by deadlines set in the Act. For purposes of this lawsuit, the next deadline is in July 2021.

5. Air pollution from the Upwind States significantly contributes to nonattainment of the 2008 ozone NAAQS, or interferes with maintenance of the 2008 ozone NAAQS, by the Plaintiff States. And, EPA has also found that the Upwind States have not taken actions required by the Act to reduce their in-state emissions.

6. Where EPA determines states have not done enough to reduce their own emissions, the Act requires EPA to promulgate federal implementation plans (Federal Plans) within two years to protect downwind states like the Plaintiff States.

7. EPA's Federal Plans for the Upwind States were recently vacated by the U.S. Court of Appeals for District of Columbia Circuit because the Federal Plans did not require sufficient air pollution reductions in time for the impending July 2021 attainment deadline. *See New York v. EPA*, 781 F. App'x 4 (D.C. Cir. 2019). The D.C. Circuit issued its mandate on November 5, 2019, yet EPA has not announced any action to promulgate replacement Federal Plans.

8. Time is of the essence for the Plaintiff States: compliance with the July 2021 statutory attainment deadline will be determined in part by average ozone measurements this summer, beginning in May 2020. EPA's failure to take immediate action to cut air pollution from the Upwind States will both prolong harms to the health of our residents from high ozone levels, and foreclose the ability of Plaintiff States to demonstrate attainment of the 2008 ozone NAAQS by the July 2021 deadline.

9. The Plaintiff States ask the Court to find that EPA violated the Act when it failed to issue complete Federal Plans by the Act's two-year deadline for Federal Plans. The Court should order EPA to propose and adopt complete Federal Plans by a date certain. The Plaintiff States also seek all available litigation costs, including reasonable attorneys' fees, allowable under section 304(d) of the Act, 42 U.S.C. § 7604(d).

## JURISDICTION

10. This Court has subject matter jurisdiction over this action pursuant to section 304(a)(2) of the Act, 42 U.S.C. § 7604(a)(2), which authorizes any person, after due notice, to sue to compel the performance of a nondiscretionary duty under the Act. The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (suits to compel officer or agency actions).

## NOTICE

11. In satisfaction of section 304(b), 42 U.S.C. § 7604(b), the Plaintiff States sent notice to EPA on December 20, 2019, of their intention to file suit for EPA's failure to perform the nondiscretionary duties described here. The statutory 60-day notice period has now expired without action by EPA.

## VENUE

12. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e) because this suit names an agency of the United States and an officer of the United States acting in his official capacity, and a substantial part of the events or omissions giving rise to the Plaintiff States' claims occurred in this judicial district. EPA's failure to promulgate complete Federal Plans prolongs the risk of harm from high ozone levels to millions of residents of the New York City metropolitan area (which, for purposes of the 2008 ozone NAAQS and this litigation, includes the five boroughs of New York City, all of Long Island, Rockland and Westchester counties in New York, as well as twelve northern New Jersey counties and three in Connecticut).

## PARTIES

13. The Plaintiff States—sovereign states and the City of New York—bring this action on behalf of their residents and on their own behalf to protect their respective interests as administrators of healthcare programs and schools, as employers, and as regulators and sovereigns responsible for protecting and preserving natural resources held in trust.

14. The Plaintiff States are all "persons" defined by section 302(e) of the Act, 42 U.S.C. § 7602(e).

15. EPA is the federal agency charged with implementing the Act. Andrew R. Wheeler is the Administrator of EPA and is sued in his official capacity.

16. As a result of EPA's failure to timely regulate upwind ozone pollution, the Plaintiff States have suffered and will continue to suffer harm from the interstate transport of air pollution. Sources of air pollution in each of the Upwind States significantly contribute to nonattainment and maintenance problems for the 2008 ozone NAAQS in Plaintiff States to the detriment of the health and welfare of our residents. Moreover, if EPA does not require Upwind

States to timely reduce their emissions as the law requires, certain downwind Plaintiff States will be unable to come into attainment by the upcoming statutory deadlines for attaining clean air, which will trigger even more stringent and costly regulatory obligations for those states.

## STATUTORY BACKGROUND

17. Sections 108 and 109 of the Act require EPA to establish, and periodically to revise, NAAQS that reflect the maximum allowable ambient air concentrations for certain pollutants. 42 U.S.C. §§ 7408-7409. The NAAQS must be set at levels that are protective of public health and public welfare. *Id.* § 7409(b).

18. States have primary responsible for ensuring that air quality within their borders meets these standards. *See* 42 U.S.C. § 7410(a). Within three years of EPA promulgating a new or revised ozone NAAQS, each State must submit a state implementation plan (State Plan) that provides for the "implementation, maintenance, and enforcement" of the NAAQS by statutory attainment deadlines. *Id.* § 7410(a)(1).

19. State Plans must meet all the requirements of section 110(a)(2) of the Act, including the "Good Neighbor" requirement to prohibit sources within the state from emitting air pollution in amounts that will "contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any [NAAQS]." 42 U.S.C. § 7410(a)(2)(D)(i)(I).

20. After the State Plan submission deadline, EPA has six months to issue findings describing which states submitted complete State Plans. *See* 42 U.S.C. § 7410(k)(1)(A). EPA must issue a "finding of failure to submit" for any state that missed the three-year deadline.

21. Within twelve months of EPA's completeness finding, EPA must act on each submitted State Plan. EPA can approve or disapprove a plan in full; approve in part and disapprove in part; or conditionally approve the plan. 42 U.S.C. §§ 7410(k)(2), (3) & (4).

22. Finally, EPA is required to "promulgate a Federal implementation plan at any time within 2 years after the Administrator—(A) finds that a State has failed to make a required submission or finds that the plan or plan revision submitted by the State does not satisfy the minimum criteria established under subsection (k)(1)(A) of this section, or (B) disapproves a State implementation plan submission in whole or in part, unless the State corrects the deficiency, and the Administrator approves the plan or plan revision, before the Administrator promulgates such Federal implementation plan." 42 U.S.C. § 7410(c)(1).

23. States in nonattainment of the ozone NAAQS must take additional steps to attain "as expeditiously as practicable but not later than" statutory deadlines that depend on the degree of nonattainment, which EPA classifies by severity (from marginal through moderate, serious, severe, and extreme). 42 U.S.C. § 7511(a)(1), (b)(1). For example, areas such as the New York City metropolitan area that are in "serious" nonattainment of the 2008 ozone NAAQS have a statutory attainment deadline of 2021. *See Reclassification of Several Areas Classified as Moderate for the 2008 Ozone National Ambient Air Quality Standards*, 84 Fed. Reg. 44,238, 44,244 (Aug. 23, 2019).

## FACTUAL BACKGROUND

24. Ground-level ozone is a harmful air pollutant regulated under the NAAQS program. Ozone is not emitted directly into the air. Instead, it is a secondary air pollutant formed by the atmospheric reaction of ozone "precursors," principally NOx and VOCs, in the presence of sunlight. *[2008] National Ambient Air Quality Standards for Ozone*, 73 Fed. Reg. 16,436 (Mar. 27, 2008).

25. Breathing ozone can cause coughing, throat irritation, lung tissue damage, and can aggravate conditions such as asthma, bronchitis, and heart disease. 73 Fed. Reg. at 16,440,

16,450-51, 16,470-71 & n.20.  Exposure to ozone has also been linked to premature mortality.  *Id.* at 16,471.  Children, the elderly, and those with existing lung diseases such as asthma are at higher risk of harm from ozone exposure.  *Id.*

26. For decades, EPA has known that formation and transport of ozone occurs on a regional scale (*i.e.*, hundreds of miles) over much of the eastern United States.  Pollution from sources located in multiple upwind states contributes to high ozone levels in downwind states.  In large part due to the substantial quantities of ozone pollution transported from upwind areas, many eastern States have faced decades-long challenges in attaining clean air.

27. EPA has therefore determined that many of these downwind states cannot attain the NAAQS without reductions in the "interstate transport" of ozone precursor pollution from upwind sources.  *Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS*, 81 Fed. Reg. 74,504, 74,514 (Oct. 26, 2016).  And for those downwind areas that have been able to come into attainment, reductions in emissions from upwind sources remain critical to ensuring their ability to maintain compliance, as demonstrated by continued exceedances of the ozone standard on certain high ozone days even after attainment designations.

28. In March 2008, EPA revised the ozone NAAQS to make the standard more protective.  73 Fed. Reg. at 16,436.  EPA set the 2008 ozone NAAQS at 75 parts per billion over an 8-hour period.[1]  *Id.*

---

[1] In 2015, EPA again revised the ozone NAAQS downward, to 70 parts per billion, in light of new information about the risks and harms of ozone exposure.  *[2015] Ozone National Ambient Air Quality Standards*, 80 Fed. Reg. 65,292 (October 26, 2015).  Both the 2008 and 2015 ozone NAAQS remain in the effect, and States must comply with overlapping attainment deadlines for both standards.  Although the 2015 ozone NAAQS are not directly at issue in this lawsuit, attainment of the 2008 ozone NAAQS is a first, critical step to meeting the stricter 2015 ozone NAAQS.

29. Under section 110(a)(1), State Plans for the 2008 ozone NAAQS were due within three years, by March 2011.  42 U.S.C. § 7410(a)(1).

30. On July 13, 2015, EPA published its finding that Illinois, Michigan, Pennsylvania, Virginia, and West Virginia failed to submit State Plans that satisfied the Upwind States' Good Neighbor obligations for the 2008 ozone NAAQS.  *Findings of Failure To Submit a Section 110 State Implementation Plan for Interstate Transport for the 2008 National Ambient Air Quality Standards for Ozone*, 80 Fed. Reg. 39,961, 39,965 (July 13, 2015) (effective Aug. 12, 2015).  One year later, on June 15, 2016, EPA also disapproved the Good Neighbor State Plans submitted by Indiana and Ohio.  *Indiana; Ohio; Disapproval of Interstate Transport Requirements for the 2008 Ozone NAAQS*, 81 Fed. Reg. 38,957, 38,961 (June 15, 2016) (effective July 15, 2016).

31. Each finding—the 2015 finding of failure to submit and the 2016 disapproval—triggered the Act's two-year deadline for EPA to promulgate Federal Plans for the States covered by each respective finding.  *See* 42 U.S.C. § 7410(c)(1); *see also EPA v. EME Homer City Generation*, 572 U.S. 489, 507 (2014) (recognizing EPA's nondiscretionary statutory duty to promulgate a Federal Plan within two years of determining a State Plan is missing or inadequate).  Accordingly, EPA was required to submit compliant Federal Plans for Illinois, Michigan, Pennsylvania, Virginia, and West Virginia by August 12, 2017; and for Indiana and Ohio by July 15, 2018.

32. While EPA promulgated two Federal Plans, neither fully addressed the Upwind States' Good Neighbor obligations.

33. In October 2016, EPA adopted the Cross-State Air Pollution Rule Update (CSAPR Update), to partially satisfy its Federal Plan obligations for the 2008 ozone NAAQS.

81 Fed. Reg. 74,504 (Oct. 26, 2015).  EPA admitted that this was not a "full solution," but only a "first, partial step" and a "partial remedy" for incomplete or missing Good Neighbor State Plans. *Id.* at 74,508, 74,520, 74,522.  EPA expected that "a full resolution of upwind transport obligations" would require, *inter alia*, "further [power plant] reductions that are achievable after 2017," *id.* at 74,522, and that even after all of the CSAPR Update's emission reductions were implemented, attainment and maintenance problems in downwind areas might remain, *id.* at 74,520, 74,521-22.

34. On January 17, 2018, after EPA missed its August 12, 2017 deadline to submit complete Federal Plans for Illinois, Michigan, Pennsylvania, Virginia, and West Virginia, the States of New York and Connecticut sued in this Court to require EPA to act.  The Court entered judgment for the States, declaring that EPA was in violation of section 110(c)(1) of the Act and ordering EPA to promulgate full Federal Plans for these upwind states by December 6, 2018. *See New York v. Pruitt*, No. 18-cv-406, 2018 WL 2976018 at 3 (S.D.N.Y. June 12, 2018).

35. To comply with this Court's order, EPA published the Cross-State Air Pollution Rule Close-Out (CSAPR Close-Out) on December 21, 2018.  *Determination Regarding Good Neighbor Obligations for the 2008 Ozone National Ambient Air Quality Standard*, 83 Fed. Reg. 65,878 (Dec. 21, 2018).  The CSAPR Close-Out purported to satisfy EPA's Federal Plan obligations for the 2008 ozone NAAQS for all the Upwind States, among others.

36. Even though EPA had earlier conceded that the CSAPR Update was an incomplete remedy, the CSAPR Close-Out did not require any additional upwind air pollution reductions.  In a reversal of its earlier position, EPA concluded that the Update had "*fully* addressed" the Upwind States' Good Neighbor obligations, so nothing more remained to be done.  83 Fed. Reg. at 65,879 (emphasis added); *id.* at 65,885-86.  EPA based this finding on its

flawed prediction that downwind States would satisfy that standard by 2023—two years *after* the relevant statutory 2021 attainment deadline.  *Id.* at 65,885-86.

37. Challenges to both Federal Plans—the CSAPR Update and the Close-Out—were litigated in the U.S. Court of Appeals for the D.C. Circuit.

38. On September 13, 2019, the D.C. Circuit partially invalidated the CSAPR Update insofar as it "allows upwind States to continue their significant contributions to downwind air quality problems beyond the statutory deadlines by which downwind States must demonstrate their attainment of air quality standards." *Wisconsin v. EPA*, 938 F.3d 303, 309 (D.C. Cir. 2019). The D.C. Circuit remanded the CSAPR Update to EPA to modify the rule in a manner consistent with its opinion.  *Id.* at 336-37.

39. Then, on October 1, 2019, the D.C. Circuit vacated the CSAPR Close-Out—the action EPA took to comply with this Court's Order in *New York v. Pruitt*, No. 18-cv-406—because it "rests on an interpretation of the Good Neighbor Provision now rejected by this Court."  *New York*, 781 F. App'x at 7.

40. Since issuance of the D.C. Circuit's mandate in *New York* on November 5, 2019, neither EPA nor any Upwind State has issued a final Federal Plan or State Plan that fully addresses the Upwind States' Good Neighbor obligations, notwithstanding the passage of EPA's August 12, 2017 deadline to issue Federal Plans for Illinois, Michigan, Pennsylvania, Virginia, and West Virginia, and EPA's July 15, 2018 deadline to issue Federal Plans for Indiana and Ohio.

41. Emissions from each of the Upwind States contribute significantly to problems attaining or maintaining the 2008 ozone NAAQS in one or more of the Plaintiff States for the 2008 ozone NAAQS.

42. For example, EPA—in modeling for both the CSAPR Update and the Close-Out—found that emissions from sources in Illinois, Indiana, Michigan, Ohio, Pennsylvania, Virginia, and West Virginia significantly contribute to chronic nonattainment of ozone standards in the New York City metropolitan area. *See, e.g.*, *CSAPR Update*, 81 Fed. Reg. at 74,538 (describing upwind linkages to nonattainment air monitors in the NY-NJ-CT nonattainment area).

43. In August 2019, EPA re-designated the New York City metropolitan area as a "serious" nonattainment area, meaning that the three states that share the metropolitan area—New York, New Jersey, and Connecticut—must meet a July 20, 2021, attainment deadline. *Determinations of Attainment, Extensions, and Reclassification of Several Moderate Areas for the 2008 Ozone NAAQS*, 84 Fed. Reg. 44,238 (Aug. 23, 2019). Whether the states will attain by 2021 will be determined by ozone measurements during the three preceding "ozone seasons": the typically hot, sunny summer months between May and September when ozone levels peak.[2] Thus, ozone levels measured in the 2018, 2019, and 2020 ozone seasons will determine whether states meet their 2021 attainment deadline. *Id.* at 44,246.

44. Certified air quality monitoring data for the 2018 ozone season, and preliminary 2019 ozone season data, as well as air pollution transport modeling, all show that the New York City metropolitan area will not meet the 2021 attainment deadline unless EPA takes immediate action to reduce ozone transport and cut significant contributions from the Upwind States during the 2020 ozone season beginning this May.

---

[2] For purposes of EPA's ozone transport Federal Plans, the ozone season runs from May 1 through September 30 each year. *See* 81 Fed. Reg. at 74,507.

45. EPA's failure to promulgate complete Federal Plans for the Upwind States is a clear breach of EPA's statutory duty. EPA's failure prolongs the risk of harm to the health and welfare of the Plaintiff States' residents, environment, and property, all of which will be exposed to higher levels of ozone so long as EPA shirks its responsibility to curtail ozone transport.

46. EPA's failure to comply with its nondiscretionary duty also places unfair economic and administrative burdens on certain Plaintiff States. All states are required, subject to punitive consequences, to timely meet their attainment deadlines. Those obligations are substantially more burdensome without EPA action to address ozone transport. For example, States in nonattainment, such as several of the Plaintiff States, must submit periodic revisions to their State Plans showing that they are making "reasonable further progress" towards attainment by cutting in-state emissions year-after-year. 42 U.S.C. §§ 7502(b) & (c); *id.* at § 7511a.

47. The Plaintiff States already have among the most stringent, protective emissions limits in the country for their in-state sources of $NO_x$ and VOCs. EPA's failure to fully enforce the Upwind States' Good Neighbor obligations through complete Federal Plans harms the Plaintiff States and their residents by obligating the Plaintiff States to promulgate new, ever more stringent and expensive control measures for their local sources of ozone precursors to offset pollution from the Upwind States.

48. EPA has acknowledged that requiring downwind areas to plan for attainment and maintenance of the NAAQS before requiring upwind reductions is contrary to the Act's statutory structure and places an "inequitable burden" on downwind areas. *CSAPR Update*, 81 Fed. Reg., at 74,516. When EPA does not enforce the Good Neighbor Provision through Federal Plans, downwind states are "force[d] . . . to make greater reductions than the Good Neighbor Provision

requires." *Wisconsin*, 938 F.3d at 314 (quoting *North Carolina v. EPA*, 531 F.3d 896, 911-12 (D.C. Cir. 2008)).

## CLAIM FOR RELIEF

(Failure to Perform a Nondiscretionary Duty
Pursuant to 42 U.S.C. § 7410(c)(1))

49. The Plaintiff States re-assert and re-allege paragraphs 1 through 48 above.

50. Having taken final actions, effective August 12, 2015 and July 15, 2016, finding that all of the Upwind States did not meet their section 110(a)(2)(D)(i)(I) Good Neighbor obligations for the 2008 ozone NAAQS, EPA had a nondiscretionary legal duty pursuant to 42 U.S.C. § 7410(c)(1) to issue Federal Plans for Illinois, Michigan, Pennsylvania, Virginia, and West Virginia no later than August 12, 2017, and for Indiana and Ohio no later than July 15, 2018, that fully address each Upwind State's Good Neighbor obligations.

51. To date, EPA has failed to promulgate Federal Plans that fully address each Upwind State's obligations under the Good Neighbor provision for the 2008 ozone NAAQS.

52. This constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" under 42 U.S.C. § 7604(a)(2).

53. EPA's failure to timely promulgate Federal Plans has harmed and continues to harm the Plaintiff States by delaying implementation of the solutions necessary to address the interstate transport of air pollution from the Upwind States. Each of the Upwind States significantly contributes to nonattainment of the 2008 ozone NAAQS, and/or significantly interferes with maintenance of the same in one or more of our states, to the detriment of the health and welfare of our residents, environment, and property.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff States respectfully request that this Court enter judgment:

1. Declaring that EPA is in violation of section 110(c)(1), 42 U.S.C. § 7410(c)(1), by failing to perform a mandatory, nondiscretionary duty to promulgate Federal Plans that fully address the Upwind States' obligations under the Good Neighbor provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I), for the 2008 ozone NAAQS;

2. Enjoining EPA to perform its mandatory duty by promulgating a fully-compliant Federal Plan for each of the Upwind States by a date certain;

3. Awarding the Plaintiff States their costs of litigation, including reasonable attorneys' fees recoverable under 42 U.S.C. § 7604(d);

4. Retaining jurisdiction over this matter for purposes of ensuring EPA's compliance with the Court's order; and

5. Awarding such other and further relief as this Court deems just and proper.

Dated: February 19, 2020

Respectfully submitted,

GURBIR S. GREWAL
*Attorney General of New Jersey*

By: *S/ Aaron Kleinbaum*[3]
Aaron Kleinbaum
*Assistant Attorney General*
New Jersey Division of Law
25 Market St., PO Box 093
Trenton, NJ 08625-0093
(609) 376-2745
Aaron.Kleinbaum@law.njoag.gov
*For Plaintiff State of New Jersey*

---

[3] Counsel for the State of New Jersey represents that the other parties listed in the signature blocks on this document consent to this filing.

          WILLIAM TONG
          *Attorney General of Connecticut*

By:  *S/ Jill Lacedonia / AK (by permission)*
      Jill Lacedonia
      *Assistant Attorney General*
      Office of the Attorney General
      165 Capitol Avenue
      Hartford, CT 06106
      (860) 808-5250
      Jill.Lacedonia@ct.gov
      *For Plaintiff State of Connecticut*

      KATHLEEN JENNINGS
      *Attorney General of Delaware*

By:  *S/ Valerie Satterfield Edge / AK (by permission)*
      Valerie Satterfield Edge*
      Christian Douglas Wright*
      *Deputy Attorneys General*
      Delaware Department of Justice
      102 W. Water Street
      Dover, DE 19904
      (302) 257-3219
      Valerie.Edge@delaware.gov
      *For Plaintiff State of Delaware*

      **Pro Hac Vice applications to be filed*

      MAURA HEALEY
      *Attorney General of Massachusetts*

By:  *S/ I. Andrew Goldberg / AK (by permission)*
      I. Andrew Goldberg
      *Assistant Attorney General*
      Environmental Protection Division
      Office of the Attorney General
      One Ashburton Place, 18th Floor
      Boston, MA  02108
      (617) 963-2429
      Andy.Goldberg@mass.gov
      *For Plaintiff Commonwealth of Massachusetts*

                LETITIA JAMES
*Attorney General of New York*

By:   *S/ Morgan A. Costello / AK (by permission)*
      Morgan A. Costello
      *Chief, Affirmative Litigation*
      Claiborne E. Walthall
      *Assistant Attorney General*
      New York State
      Office of the Attorney General
      The Capitol
      Albany, NY 12224
      (518) 776-2380
      Claiborne.Walthall@ag.ny.gov
      *For Plaintiff State of New York*

      JAMES E. JOHNSON
      *Corporation Counsel of the*
      *City of New York*

By:   *S/ Nathan Taylor / AK (by permission)*
      Nathan Taylor
      *Assistant Corporation Counsel*
      New York City Law Department
      100 Church Street, Rm 6-144
      New York, NY 10007
      (212) 356-2315
      NTaylor@law.nyc.gov
      *For Plaintiff City of New York*