**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW JERSEY,<br>STATE OF CONNECTICUT,<br>STATE OF DELAWARE,<br>STATE OF NEW YORK,<br>COMMONWEALTH OF MASSACHUSETTS,<br>*and* CITY OF NEW YORK<br><br>              *Plaintiffs*,<br>        v.<br><br>ANDREW R. WHEELER, *Administrator of the*<br>*United States Environmental Protection Agency;*<br>*and the* UNITED STATES<br>ENVIRONMENTAL PROTECTION<br>AGENCY,<br><br>              *Defendants*. | **Civil Case No.: 20-cv-1425-JGK**<br><br><br><br><br>**(Clean Air Act, 42 U.S.C. §§ 7401,** *et seq.***)** |

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

TOC/TOA POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION

I.  PREMILINARY STATEMENT .................................................................................1

II.  STATEMENT OF RELEVANT STATUTORY AND FACTUAL
BACKGROUND.......................................................................................................3

    A.  The Clean Air Act and NAAQS, and the Good
Neighbor Provision.......................................................................................3

    B.  Factual Background.......................................................................................4

    C.  Procedural History........................................................................................9

III.  JURISDICTION.....................................................................................................10

IV.  LEGAL STANDARD .............................................................................................11

V.  ARGUMENT .........................................................................................................13

    A.  EPA FAILED TO PERFORM ITS MANDATORY DUTY TO ISSUE
FIPS   FOR   ILLINOIS,   INDIANA,   MICHIGAN,   OHIO,
PENNSYLVANIA, VIRGINIA AND WEST VIRGINIA BY THE
STATUTORY DEADLINES. .......................................................................14

    B.  AN ORDER REQUIRING EPA TO EXPEDITIOUSLY PERFORM
ITS MANDATORY DUTY TO PROMULGATE FIPS FOR
ILLINOIS, INDIANA, MICHIGAN, OHIO, PENNSYLVANIA,
VIRGINIA  AND  WEST  VIRGINIA  IS  FEASIBLE  AND
NECESSARY.............................................................................................15

        1.  Requiring EPA to meet the Downwind States' proposed
schedule is urgently necessary because any further delay
unfairly burdens the Downwind States and harms public
health and welfare. .......................................................................15

        2.  The Downwind States' requested schedule for EPA to
propose and finalize FIPs is feasible. ............................................18

C.    AWARDING   DOWNWIND   STATES   THEIR   COSTS   OF
LITIGATION, INCLUDING REASONABLE ATTORNEYS' FEES,
IS APPROPRIATE IN THIS ACTION. ...................................................... 20

VI.    CONCLUSION ...................................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

Alaska Ctr. for Env't v. Browner,
   20 F.3d 981 (9th Cir. 1994) ..........................................................................12

American Int'l Grp., Inc. v. London Am. Int'l Corp.,
   664 F. 2d 348 (2d Cir. 1981) ..........................................................................11

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986) ..................................................................................11, 12

Bryant v. Maffucci,
   923 F. 2d 979 (2d Cir.), cert. denied, 502 U.S. 849 (1991) ...................................11

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ..............................................................................11, 12, 21

Downwinders at Risk, et al. v. Wheeler,
   No. 1:20-cv-00349, Doc. No. 1 (D.D.C. filed Feb. 7, 2020) ....................................9

EPA v. EME Homer City Generation, L.P.,
   134 S.Ct. 1584 (2014) ..................................................................................6, 16

Gallo v. Prudential Residential Servs., Ltd. P'ship,
   22 F.3d 1219 (2d Cir. 1994) ..........................................................................11

Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg.
   Funding, Inc.,
   916 F.3d 116 (2d Cir. 2019) ..........................................................................11

Lujan v. Defs. of Wildlife,
   504 U.S. 555 (1992) ......................................................................................11

Massachusetts v. EPA,
   549 U.S. 497 (2007) ......................................................................................11

Nat'l Resources Defense Council v. U.S.E.P.A.,
   797 F. Supp. 194 ..........................................................................................13

Natural Res. Def. Council v. Train,
   510 F.2d 692 (D.C. Cir. 1974) ........................................................................15

New York v. EPA,
   781 Fed. Appx. 4 (D.C. Cir. 2019) ................................................................1, 7

New York v. EPA,
    Case No. 19-1019, Doc. 1814375 (D.C. Cir. Nov. 5, 2019)........................................8

New York v. Pruitt,
    No. 18-cv-406 (JGK), 2018 WL 2976018
    (S.D.N.Y. Jun. 12, 2018) ....................................................1, 2, 7, 8, 10, 11, 14, 18, 19

New York v. Wheeler,
    No. 1:19-cv-03287-JMF, Doc. 32 (S.D.N.Y. Jul. 25, 2019)....................................12

Northwest Envtl. Def. Ctr. v. Bonneville Power Admin.,
    477 F.3d 668 (9th Cir. 2007) ........................................................................15

Sierra Club v. Johnson,
    444 F. Supp. 2d 46 (D.D.C. 2006) ........................................................12, 13, 15, 18

Sierra Club v. Pruitt,
    280 F. Supp. 3d 1 (D.D.C. 2017) ........................................................................12

Sierra Club v. Ruckelshaus,
    602 F. Supp. 892 (N.D. Cal. 1984) ....................................................................12

Sierra Club v. Thomas
    658 F. Supp. 165 (N.D. Cal. 1987) ....................................................................19

State of Connecticut v. Pruitt,
    No. 3:17-cv-00796-WWE, Ruling on Motions for Summary Judgment and
    Motion Concerning Remedy, ECF No. 52, 2018 WL 745953 (D. Conn. Feb.
    2, 2018) ....................................................................................................13

State of New York v. Gorsuch,
    554 F. Supp. 1060 (S.D.N.Y. 1983)..............................................................12, 15

Wisconsin v. EPA,
    938 F.3d 303 (D.C. Cir. 2019) ........................................................................4, 7

## **Statutes**

28 U.S.C. § 1331 ................................................................................................10

28 U.S.C. § 1361 ................................................................................................10

42 U.S.C. §§ 7408-7409 ......................................................................................3

42 U.S.C. § 7410(a)(1)........................................................................................4, 5

42 U.S.C. § 7410(a)(2)(D)(i)(I) ........................................................................1, 4, 21

42 U.S.C. § 7410(c)(1), EPA ..........................................................................2, 4, 6, 14, 21

42 U.S.C. §§ 7511(a)(1) & (b)(1) ....................................................................................3

42 U.S.C. § 7604(a) ......................................................................................................10

42 U.S.C. § 7604(a)(2) ..................................................................................................10

42 U.S.C. § 7604(b) ........................................................................................................9

42 U.S.C. § 7604(d) ..................................................................................................20, 21

**Federal Register**

73 Fed. Reg. 16,436 ........................................................................................................5

73 Fed. Reg. at 16,436 ..................................................................................................18

73 Fed. Reg. at 16,440 ..................................................................................................10

80 Fed. Reg. 12,264, 12,268 ...........................................................................................3

80 Fed Reg. 39,961 ..........................................................................................................6

80 Fed. Reg. at 39,961 ..................................................................................................14

80 Fed. Reg. at 65,292 ....................................................................................................6

80 Fed. Reg. 65,292, 65,299-300 ....................................................................................4

80 Fed. Reg. at 65,302-11 ...............................................................................................4

81 Fed. Reg. 38,957 ........................................................................................................6

81 Fed. Reg. 74,504, 74,513 ...........................................................................................4

81 Fed. Reg. at 74,514 ..............................................................................................4, 5

81 Fed. Reg. at 74,516 ..................................................................................................17

81 Fed. Reg. at 74,538 ..............................................................................................5, 8

83 Fed. Reg. 65,878, 65,883 ...........................................................................................6

84 Fed. Reg. 44,238, 44,244 ...........................................................................................8

**TOC/TOA POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION**

**I.      PRELIMINARY STATEMENT**

This case concerns essentially the same failure of the Environmental Protection Agency and Administrator Andrew Wheeler (collectively, EPA) to comply with the mandatory statutory duty to remedy interstate ozone transport that the Court addressed in *New York v. Pruitt*, No. 18-cv-406 (JGK), 2018 WL 2976018, at *3-4 (S.D.N.Y. Jun. 12, 2018). Although EPA promulgated a rule purporting to meet its overdue obligation after that decision, the United States Court of Appeals for the District of Columbia Circuit vacated that rule as insufficient in *New York v. EPA*, 781 Fed. Appx. 4, 7 (D.C. Cir. 2019).  Almost two years after this Court's decision, EPA is once again in default of its non-discretionary statutory duty and must therefore promulgate federal implementation plans (FIPs) that fully comply with the Clean Air Act's (Act) "Good Neighbor Provision," 42 U.S.C. § 7410(a)(2)(D)(i)(I).  The only issue remaining is to set new enforceable deadlines for EPA to comply with its statutory obligations.

The matter is before this Court little changed from the circumstances the Court addressed in *Pruitt* in 2018, with EPA again in violation of the same statutory deadline. Now, however, EPA is even further past that deadline, and the states of New Jersey, New York, Delaware, and Connecticut, the Commonwealth of Massachusetts, and New York City (the Downwind States or Plaintiffs)[1] have suffered additional months and years of unhealthy air due to pollution unlawfully transported into their borders. The Downwind States respectfully request summary judgment finding that EPA has failed to fulfill its mandatory duty and directing EPA to comply with the Act by promulgating FIPs in accordance with the schedule proposed herein.

---

[1] New York City is affected by interstate transport of ozone as a municipality within the New York Metropolitan area.

The Good Neighbor Provision obligation that EPA has not satisfied requires EPA to prevent upwind states from emitting quantities of ozone pollution that prevent the Downwind States from attaining or maintaining air quality standards. As relevant here, air pollution from sources in Illinois, Indiana, Michigan, Ohio, Pennsylvania, Virginia and West Virginia (the Upwind States) is transported into the Downwind States, where it mixes with pollution from local sources to form ground-level ozone, or "smog." Because of this pollution, the Downwind States have struggled for decades to attain and maintain federal air quality standards.

Under the Good Neighbor Provision, 42 U.S.C. § 7410(c)(1), EPA had a statutory duty to issue FIPs for Illinois, Michigan, Pennsylvania, Virginia, and West Virginia by August 12, 2017, and for Indiana and Ohio by July 15, 2018, fully addressing their respective obligations to reduce the ozone pollution they send downwind. EPA has yet to fulfill this mandatory obligation. Further delay by EPA prolongs exposure of the public in the Downwind States to elevated levels of ozone pollution. This is particularly so in the New York-Northern New Jersey-Long Island, NY-NJ-CT Nonattainment Area (New York Metropolitan Area), where bad air quality contributes to a higher mortality rate from a variety of ailments.

Summary judgment is appropriate and necessary because EPA has again failed to adhere to its non-discretionary duty under the Act, leaving the residents of Downwind States exposed to increased air pollution. It is undisputed that EPA failed to comply with its statutory duty, *see* Answer ¶ 51. Indeed, this Court previously exercised its authority to compel EPA to act by dates certain to address overdue deadlines, *Pruitt*, 2018 WL 2976018 at *3. Similar action by the Court is necessary here.

Because of the severe and widespread harm to Downwind States' residents and environment from ozone pollution, EPA's long history of delay in fully addressing interstate ozone

transport harmful to the Downwind States, and EPA's ability to act expeditiously to complete its mandatory duty, the Court should issue an order requiring EPA to sign and disseminate by October 1, 2020, a notice of a proposed action fully addressing the Good Neighbor Provision obligations under the 2008 ozone national ambient air quality standard (NAAQS) for Illinois, Indiana, Michigan, Ohio, Pennsylvania, Virginia and West Virginia, and to promulgate by March 1, 2021, a final action addressing those obligations. The Court should also award Plaintiffs their costs of litigation and retain jurisdiction to ensure EPA's compliance.

## II.     STATEMENT OF RELEVANT STATUTORY AND FACTUAL BACKGROUND

### A. The Clean Air Act, the NAAQS, and the Good Neighbor Provision

Under the cooperative federalism framework of the Act, EPA and the states are required to work together to achieve healthy air quality throughout the country. The Act requires EPA to establish and periodically review NAAQS, which establish maximum allowable ambient air concentrations for certain pollutants. 42 U.S.C. §§ 7408-7409. The NAAQS must be set at levels that protect public health and public welfare. *Id.* § 7409(b).

States have primary responsibility for ensuring that air quality within their borders meets these standards "as expeditiously as practicable but not later than" statutory attainment deadlines. 42 U.S.C. §§ 7511(a)(1) & (b)(1). If states' measures are inadequate to control their own pollution, EPA must adopt and enforce federal measures to ensure timely attainment. *Id.* §§ 7407(a), 7511(a). The amount of time a state has to meet a NAAQS depends on the degree of nonattainment, with EPA classifying nonattainment areas by level of severity. For the 2008 ozone NAAQS, the respective deadlines for areas designated as "marginal," "moderate," and "serious" nonattainment are July 20, 2015, July 20, 2018, and July 20, 2021. 80 Fed. Reg. 12,264, 12,268 (Mar. 6, 2015).

The Act requires each state to submit a state implementation plan (SIP) within three years of every promulgation or revision of a NAAQS.  42 U.S.C. § 7410(a)(1).  Each SIP must provide for the "implementation, maintenance, and enforcement" of the standard. *Id.* These plans are often referred to as "Infrastructure" SIPs. An Infrastructure SIP is required to meet all the requirements of section 110(a)(2) of the Act, including the requirements of the Good Neighbor Provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I).

The Good Neighbor Provision requires states to prohibit sources within their state from emitting air pollution in amounts that will "contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any" NAAQS, or what EPA refers to as the "interstate transport" of air pollution. If EPA disapproves a state's SIP for failing to satisfy that state's obligations under the Good Neighbor Provision, or if EPA finds that a state has failed to submit a SIP, EPA must fix the deficiency within two years by issuing a FIP that prohibits all excess air pollution from sources within that state. *Id.* § 7410(c)(1); *see Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019).

### B. Factual Background

Defendant Andrew R. Wheeler is the Administrator of the Environmental Protection Agency. Defendant Environmental Protection Agency is an executive agency of the United States government and is charged with implementing the Act, including the Good Neighbor Provision.

Ozone forms when other atmospheric pollutants, known as ozone precursors, such as nitrogen oxides (NOx) and volatile organic compounds (VOCs), react in the presence of sunlight. 81 Fed. Reg. 74,504, 74,513 (Oct. 26, 2016); *see also* 80 Fed. Reg. 65,292, 65,299-300 (Oct. 26, 2015) (effective Dec. 28, 2015) (2015 ozone NAAQS). EPA has found significant negative health effects in individuals exposed to elevated levels of ozone. *See* 80 Fed. Reg. at 65,302-11; 81 Fed.

Reg. at 74,514; *see also* Statement of Undisputed Facts (SUF) ¶ 3. Ozone can also negatively impact ecosystems. *Id.* Based on updated scientific data about the harms of ozone at concentrations lower than the previous standard, EPA promulgated a revised NAAQS for ozone on March 12, 2008 setting a standard of 75 parts per billion, *see* 73 Fed. Reg. 16,436 (Mar. 27, 2008) (effective May 27, 2008) (2008 ozone NAAQS), triggering the states' duty under 42 U.S.C. § 7410(a)(1) to submit Infrastructure SIPs to EPA within three years that, inter alia, satisfied their Good Neighbor Provision obligations.

Illinois, Indiana, Michigan, Ohio, Pennsylvania, Virginia, and West Virginia are each upwind of one or more of the Downwind States and contribute significantly to nonattainment of the 2008 ozone NAAQS in New Jersey, New York, and Connecticut. 81 Fed. Reg. at 74,538. *See Declaration of Sharon Davis,* ¶¶ 2, 11, 29, 30; *Declaration of Michael Sheehan,* ¶¶ 2, 33; *Declaration of Tracy R. Babbidge,* ¶ 23. Pollution from the same Upwind States interferes with maintenance of the ozone NAAQS in Delaware, and continues to cause ozone monitors in Massachusetts to measure ozone levels in excess of the standard. *See* United States Environmental Protection Agency Region 1, Massachusetts Ozone Air Quality Data, available at https://www3.epa.gov/region1/airquality/ma_over.html (registering exceedances of 2008 standard at monitors in Lynn and Martha's Vineyard, Massachusetts). The entire New York Metropolitan Area in the vicinity of New York City was regionally designated as in nonattainment of the 2008 ozone NAAQS, and the inability of one state to meet the 2008 ozone NAAQS determines the attainment status of the other states in the metropolitan area. *See Davis Declaration*, ¶ 17; *Sheehan Declaration,* ¶ 21; *Babbidge Declaration* ¶ 15.

On July 13, 2015, EPA published notice in the *Federal Register* that 24 states, including Illinois, Michigan, Pennsylvania, Virginia, and West Virginia, failed to submit SIPs that satisfied

their Good Neighbor Provision requirements for the 2008 ozone NAAQS.[2] *See* SUF ¶ 4; 80 Fed

Reg. 39,961 (Jul. 13, 2015) (effective Aug. 12, 2015). In accordance with 42 U.S.C. § 7410(c)(1),

EPA's finding triggered its duty to promulgate FIPs to satisfy these states' Good Neighbor

Provision obligations, and to do so within two years (August 12, 2017). *See* SUF ¶ 8; *EPA v. EME

Homer City Generation, L.P.*, 134 S.Ct. 1584, 1600 (2014). Similarly, effective July 15, 2016,

EPA disapproved relevant portions of Indiana and Ohio's Good Neighbor SIPs. 81 Fed. Reg.

38,957 (Jun. 15, 2016) (effective Jul. 15, 2016); *see also* SUF ¶6; 83 Fed. Reg. 65,878, 65,883 tbl.

II.C-1. Therefore, EPA was obligated to promulgate FIPs fully resolving Indiana and Ohio's Good

Neighbor obligations by July 15, 2018. *See* SUF ¶ 8.  To date, however, EPA has failed to approve

compliant SIPS for any of the Upwind States, or to promulgate fully compliant FIPs for any of the

Upwind States. See SUF ¶ 7; SUF ¶ 9.

EPA promulgated two regional rules for the 2008 ozone NAAQS to address interstate

ozone transport, but neither fully addressed the Upwind States' Good Neighbor Provision

obligations. The first rule, the 2016 Cross-State Air Pollution Rule Update (CSAPR Update), was

explicitly designed to be only a partial remedy. But because it failed to fully address upwind states'

obligations to reduce ozone pollution by the next relevant attainment deadlines, the D.C. Circuit

---

[2] After finding the 2008 ozone NAAQS insufficient to protect public health and welfare, EPA in 2015 promulgated

another revised ozone NAAQS, setting a more stringent standard. 80 Fed. Reg. at 65,292 (2015 ozone NAAQS). Both

of these standards remain in effect. EPA and the states' respective obligations for implementing the 2015 ozone

NAAQS do not supplant their obligations under the 2008 ozone NAAQS and are not directly at issue in this case.

However, to the extent an area has not attained or maintained the 2008 ozone NAAQS, it is likely to face even greater

nonattainment or maintenance problems with respect to the 2015 ozone NAAQS.

partially invalidated and remanded the rule to EPA in September 2019. *See Wisconsin v. EPA*, 938 F.3d 303, 315 (D.C. Cir. 2019).

Because EPA failed to take action after the CSAPR Update to complete its obligation, a state coalition brought suit in this Court in 2017 to compel EPA to provide the full remedy required by the Act. *Pruitt*, 2018 WL 2976018. EPA did not dispute in *Pruitt* that it failed to meet its obligation by the Act's deadline, and this Court granted summary judgment to the states and ordered EPA to promulgate a final rule to fulfill its unmet duty by December 8, 2018. *Id.* EPA agreed in that litigation that a deadline of less than 8 months was a feasible amount of time to promulgate a final action fully addressing the Good Neighbor Provision obligations for several upwind states. *See* SUF ¶ 10.

EPA promulgated the second rule, the Cross-State Air Pollution Rule Close-Out (CSAPR Close-Out), in response to the *Pruitt* decision and according to the schedule ordered by this Court. Although the CSAPR Close-Out purported to satisfy EPA's FIP obligations for the 2008 ozone NAAQS for all Upwind States, the rule required no further emissions reductions from any Upwind State, even as modeling data continued to project that ozone emissions from the Upwind States would prevent many of the Downwind States from being able to attain and maintain the 2008 NAAQS, at least through their upcoming statutory attainment deadlines. *Determination Regarding Good Neighbor Obligations for the 2008 Ozone National Ambient Air Quality Standard*, 83 Fed. Reg. 65,878 (Dec. 21, 2018). After the *Wisconsin* decision, the D.C. Circuit vacated the CSAPR Close-Out, holding that EPA's failure to fully resolve the Upwind States' Good Neighbor Provision obligations in time to provide relief by the Downwind States' next statutory attainment deadlines "rests on an interpretation of the Good Neighbor Provision now rejected by this Court." *See New York v. EPA*, 781 Fed. Appx. at 7.

The vacatur of the CSAPR Close-Out restored the *status quo ante* that existed in 2018 when this Court found EPA was delinquent in fulfilling its mandatory statutory duty. *Pruitt*, 2018 WL 2976018, at *3-4. Since the D.C. Circuit's order in *Wisconsin* on September 13, 2019, and judgment in *New York* on October 1, 2019,[3] neither EPA nor any individual Upwind State has acted to address the Upwind States' Clean Air Act obligations.  Now, years beyond the statutory deadlines for resolving interstate ozone transport, EPA is again in breach of its mandatory statutory duties.

Because of EPA's failure to act, many of the Downwind States continue to face problems attaining and maintaining the NAAQS due to ozone emissions from the Upwind States. The New York Metropolitan Area was reclassified to "serious" nonattainment of the 2008 ozone NAAQS in August 2019, and was given a new attainment deadline of July 20, 2021. *See* 84 Fed. Reg. 44,238, 44,244 (Aug. 23, 2019); *New York*, 781 Fed. App'x at *5; *see* Compl. ¶ 43. EPA, in modeling for the CSAPR Update and the CSAPR Close-Out, found that emissions from sources in each of the Upwind States significantly contribute to chronic nonattainment of ozone standards in the New York Metropolitan Area. *See, e.g.*, 81 Fed. Reg. at 74,538 (describing upwind linkages to nonattainment air monitors in the New York Metropolitan Area).  Attainment by the 2021 deadline will be determined by ozone measurements made during the three preceding "ozone seasons" in 2018, 2019 and 2020—the hot, sunny summer months between May and September when ozone levels are at their highest. *Id.* at 44,246. Certified air quality monitoring data for the 2018 and 2019 ozone seasons and air pollution transport modeling all show that the New York Metropolitan Area will not meet the 2021 attainment deadline and that the Area is unlikely to meet

---

[3] The D.C. Circuit issued its mandate on November 5, 2019, *see* Mandate, *New York v. EPA*, Case No. 19-1019, Doc. 1814375 (D.C. Cir. Nov. 5, 2019).

future attainment deadlines. *See Davis Declaration,* ¶¶ 23, 24, 32, 33; *Sheehan Declaration,* ¶¶ 30, 31, 49; *Babbidge Declaration* ¶¶ 19, 21. EPA's inexcusable delay ensures that it is too late for EPA to promulgate a rule that fully resolves the Upwind States Good Neighbor obligations in time to meaningfully affect New York, New Jersey, and Connecticut's 2021 attainment deadline. *Davis Declaration,* ¶¶ 31, 34, 35. ; *Sheehan Declaration* ¶¶ 31, 49; *Babbidge Declaration* ¶ 19. But, EPA can still act urgently to meet its long-overdue statutory duty before the next full ozone season begins in the spring of 2021 to avoid further harms to public health in the downwind areas and further impairment of the Downwind States' efforts to meet future attainment deadlines under the 2008 ozone NAAQS. *See Davis Declaration* ¶ 36; *Sheehan Declaration* ¶¶ 59-82; *Babbidge Declaration* ¶ 27.

### C. Procedural History

As required by 42 U.S.C. § 7604(b), the Downwind States sent notice to EPA on December 20, 2019, of their intention to file suit for EPA's failure to perform the nondiscretionary duties described herein. *See* SUF ¶ 22; *Declaration of Robert J. Kinney,* ¶ 2. Following the expiration of the 60-day notice period, and without any further action from EPA, Plaintiffs filed the Complaint on February 19, 2020. *See* SUF ¶ 12; Doc. No. 1.[4] On March 9, 2020, Plaintiffs filed a letter-motion seeking a pre-motion conference in anticipation of this motion for summary judgment, *see* Doc. No. 16.  On May 13, 2020 the Court set a briefing schedule allowing the plaintiffs to file a

---

[4] A group of non-governmental organizations also sent notice to EPA identifying the agency's failure to meet its mandatory statutory duty with respect to the Upwind States, among others, on November 27, 2019. These organizations commenced litigation in the United States District Court for the District of Columbia on February 7, 2020, which remains pending. *See* Complaint, *Downwinders at Risk, et al. v. Wheeler,* No. 1:20-cv-00349, Doc. No. 1 (D.D.C. filed Feb. 7, 2020).

motion for summary judgment by May 15, 2020. *See* Doc. No. 32. EPA answered the complaint on April 30, 2020, Doc. No. 26, admitting its failure to promulgate FIPs for the Upwind States fully resolving their Good Neighbor obligations for the 2008 ozone NAAQS. ¶¶ 40.

## III.    JURISDICTION

Section 304(a)(2) of the Act authorizes the Downwind States, after giving notice, to commence a citizen suit against EPA where the Administrator has failed to perform a nondiscretionary duty under the Act. 42 U.S.C. § 7604(a)(2). Proper notice having been given, and without further action by EPA, this Court has jurisdiction under 42 U.S.C. § 7604(a)(2) to compel EPA to discharge a nondiscretionary duty under the Act, as well as under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (action to compel officer or agency to perform a duty owed to plaintiffs).

As this Court determined in *Pruitt*, 2018 WL 2976018, at *3, the Downwind States have standing to sue EPA concerning its failure to fulfill its mandatory duty under the Act to promulgate FIPs that fully address the Upwind States' Good Neighbor Provision obligations. Plaintiffs have a procedural right to compel EPA to perform non-discretionary acts. 42 U.S.C. § 7604(a). EPA's failure to take timely action to fully satisfy its FIP obligation has caused Plaintiffs to suffer past and continuing harm to their sovereign and proprietary interests.

Without timely action by EPA to fully address interstate ozone transport from the Upwind States, the Downwind States' residents, property, and environment will continue to be harmed by exposure to higher pollutant levels for a longer period of time, meaning more harmful impacts. *See Davis Declaration,* ¶¶ 7, 15, 16, 26, 32; *Sheehan Declaration*, ¶¶ 15, 16, 53-55; *Babbidge Declaration* ¶¶ 14, 20, 26; *see also* 73 Fed. Reg. at 16,440. And as discussed below, *infra* at 18, when the Downwind States are unable to meet the statutory attainment deadlines because of ozone

transported from the Upwind States, the Downwind States must impose stricter and more costly emission limitations on sources within their borders, when the purpose of the Good Neighbor Provision is that such costs should be borne by Upwind States in the first instance. Because Downwind States' requested relief would redress the harms to these interests caused by EPA's failure to issue FIPs for the Upwind States, the Downwind States have standing. *See Pruitt*, 2018 WL 2976018, at *3 ("The requested relief will redress these harms by requiring the EPA to promulgate FIPs that will bring the defaulting states into compliance with the 2008 ozone NAAQS standards."); *see also Massachusetts v. EPA*, 549 U.S. 497, 518, 520-521 & n. 17 (2007); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573, n. 7 (1992). Furthermore, EPA has not raised any challenge to Downwind States' standing in its Answer or otherwise.

## IV.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994); *accord Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 916 F.3d 116, 123 (2d Cir. 2019). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American Int'l Grp., Inc. v. London Am. Int'l Corp.*, 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F. 2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). If a nonmoving party has failed to make a

sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323. Evidence that is "merely colorable" does not suffice to withstand summary judgment. *Anderson*, 477 U.S. at 249.

When an agency has indisputably failed to meet a mandatory statutory deadline for rulemaking action, summary judgment is the appropriate mechanism to declare that failure and compel compliance by a certain date. The Court has broad discretion to fashion an equitable remedy. *See Pruitt*, 2018 WL 2976018, at *3-4 (granting summary judgment on EPA's missed deadline to promulgate Federal Plans under Clean Air Act, ordering schedule for compliance, and awarding declaratory relief and costs of litigation*); see* Mem. Op. & Order*, New York v. Wheeler,* No. 1:19-cv-03287-JMF, Doc. 32, at 4-5 (S.D.N.Y. Jul. 25, 2019) (granting summary judgment to New York on EPA's missed deadline to act on Clean Air Act section 126 petition and ordering final action by EPA by date certain); *Sierra Club v. Pruitt,* 280 F. Supp. 3d 1, 2-3 (D.D.C. 2017) (on summary judgment, ordering schedule for EPA to perform nondiscretionary act under the Act); *State of New York v. Gorsuch*, 554 F. Supp. 1060, 1065-66 (S.D.N.Y. 1983) (same); *see also Alaska Ctr. for Env't v. Browner*, 20 F.3d 981, 986 (9th Cir. 1994) (recognizing that "to bring about any progress toward achieving the congressional objectives of the [Clean Water Act], the EPA would have to be directed to take specific steps"). Disagreement over the schedule does not create an issue of fact precluding summary judgment, and the Court's power to incorporate a timetable into its order for compliance may resolve competing declarations on the schedule. *See Sierra Club v. Johnson*, 444 F. Supp. 2d 46, at 55-59 (D.D.C. 2006) (resolving disagreement between parties' declarations in setting schedule for EPA's compliance with nondiscretionary duty under the Act); *see Sierra Club v. Ruckelshaus*, 602 F. Supp. 892, 898 n. 9 (N.D. Cal. 1984) (rejecting EPA's argument that disagreement over schedule created a question of fact;

disagreement affected only the court's equitable remedy); *see State of Connecticut v. Pruitt*, No. 3:17-cv-00796-WWE, Ruling on Motions for Summary Judgment and Motion Concerning Remedy, at 6-7, ECF No. 52, 2018 WL 745953, at *2-3 (D. Conn. Feb. 2, 2018), (setting schedule for EPA's compliance with mandatory obligations under Section 126(b) of the Act).

Where, as here, "an agency has failed to meet the statutory deadline for a nondiscretionary act, the court may exercise its equity powers 'to set enforceable deadlines of both an ultimate and an intermediate nature[.]'" *Johnson*, 444 F. Supp. 2d at 52-53 (citing *Natural Res. Def. Council v. Train*, 510 F.2d 692, 705 (D.C. Cir. 1974)). Where the nondiscretionary deadline has passed, the agency may avoid imposition of an "immediate deadline" where it establishes that it has used the "utmost diligence in discharging [its] statutory responsibilities" or where to do so would "call [the Administrator] 'to do an impossibility.'" *Id.* The court should "scrutinize carefully claims of impossibility and 'separate justifications grounded in the purposes of the Act from the footdragging efforts of a delinquent agency.'" *Id.* at 53. A court "may extend time for compliance [only where] it would be infeasible or impossible for EPA, acting in good faith, to meet the deadline[.]" *Nat'l Resources Defense Council v. U.S.E.P.A.*, 797 F. Supp. 194, 196-97 (citations omitted).

## V.     ARGUMENT

The Downwind States request a rulemaking timeline that would grant them long-overdue relief in time for the beginning of the 2021 ozone season, the next full ozone season that will be used to determine whether the Downwind States are attaining the federal air quality standards. Accordingly, the Downwind States request that the Court enter summary judgment and order EPA to issue a notice of proposed action fully satisfying its FIP obligations under the Good Neighbor Provision for the 2008 ozone NAAQS with respect to the Upwind States by October 1, 2020 and

13

promulgate a final action by March 1, 2021. This schedule is feasible and necessary. *See Davis Declaration* ¶ 36; *Sheehan Declaration* ¶¶ 59-82; *Babbidge Declaration* ¶ 27; *See also Infra*, Section V(B). The Court may properly exercise its equitable power to compel EPA to meets its obligations under the Act by incorporating this schedule for EPA's compliance into an order granting summary judgment to Plaintiffs.

### A.   EPA FAILED TO PERFORM ITS MANDATORY DUTY TO ISSUE FIPS FOR ILLINOIS, INDIANA, MICHIGAN, OHIO, PENNSYLVANIA, VIRGINIA AND WEST VIRGINIA BY THE STATUTORY DEADLINES.

Plaintiffs are entitled to summary judgment on their claim for a declaration that EPA failed to perform its mandatory duty under section 110(c)(1) of the Act, 42 U.S.C. § 7410(c)(1), to timely promulgate FIPs that fully address the Upwind States' respective obligations under the Good Neighbor Provision of the Act for the 2008 ozone NAAQS. The Act requires EPA to promulgate a FIP within two years after the Administrator finds a state SIP absent or deficient. 42 U.S.C. § 7410(c)(1). This Court has already held that summary judgment is an appropriate means to enforce that very deadline. *Pruitt*, 2018 WL 2976018 at *4.

Here, EPA issued its finding of failure to submit for Illinois, Michigan, Pennsylvania, Virginia, and West Virginia's SIPs on July 13, 2015, nearly five years ago. Additionally, EPA rejected the Good Neighbor SIPs submitted by Indiana and Ohio on July 15, 2016, nearly four years ago. As this Court held in 2018, EPA exceeded its statutory two-year deadlines to promulgate FIPS with respect to all Upwind States. 80 Fed. Reg. at 39,961; *see Pruitt* 2018 WL 2976018. With no valid rules in effect to fully address the Upwind States' Good Neighbor obligations, there is no dispute that EPA is again in violation of its mandatory duty under section 110(c)(1) of the Act. *See* SUF ¶ 9; ANS, ¶ 40. The Court should grant Plaintiffs declaratory relief, just as it did in 2018 in *Pruitt*. *See* Complaint (Doc. No. 1), Prayer for Relief, ¶ 13-4.

**B. AN ORDER REQUIRING EPA TO EXPEDITIOUSLY PERFORM ITS MANDATORY DUTY TO PROMULGATE FIPS FOR ILLINOIS, INDIANA, MICHIGAN, OHIO, PENNSYLVANIA, VIRGINIA AND WEST VIRGINIA IS FEASIBLE AND NECESSARY.**

The court should exercise its equitable power to set enforceable deadlines to obtain "expeditious compliance." *Train*, 510 F.2d at 705; *see Johnson*, 444 F. Supp. 2d at 46 (ordering an expeditious schedule for rulemaking after EPA missed a nondiscretionary statutory deadline); *accord Pruitt,* 2018 WL 2976018, at *3-4. The Court's discretion should be guided by Congress's express intent—a clear statutory mandate to promulgate FIPs within two years of EPA's finding that these states failed to submit fully compliant SIPs. *See Gorsuch*, 554 F. Supp. at 1065 (further study "must give ground in favor of expedition where Congress expressly directs the Administrator to establish standards promptly"). EPA is now many years overdue in meeting that obligation.

Furthermore, the presence of a significant public interest in this case makes it particularly necessary for the Court to exercise its discretion to achieve Congress's purposes and vindicate the Court's prior order. *See Train*, 510 F.2d at 713 (recognizing the court's power to "give or withhold its mandate in furtherance of the public interest, including specifically the interest in effectuating the congressional objective incorporated in regulatory legislation"); *see also Northwest Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 680 (9th Cir. 2007). Because the Downwind States and their residents, property, and ecosystems will suffer continuing injury from further delay, the Court may properly order EPA's expeditious compliance with the schedule proposed herein.

**1. Requiring EPA to meet the Downwind States' proposed schedule is urgently necessary because any further delay unfairly burdens the Downwind States and harms public health and welfare.**

EPA's failure to timely fulfill its statutory duty places unfair health, administrative, and economic burdens on the Downwind States and their residents, property, and ecosystems. The

15

Upwind States remain in violation of the Good Neighbor Provision, and EPA has not acted, as required by statute, to fully remedy this violation. As the Supreme Court recognized in *EME Homer City Generation*, Congress included the Good Neighbor Provision to tackle the complex problem of air pollution emitted in one state that causes harm in another state:

> Left unregulated, the emitting or upwind State reaps the benefits of the economic activity causing the pollution without bearing all of the costs . . . . Conversely, downwind States to which the pollution travels are unable to achieve clean air because of the influx of out-of-state pollution they lack authority to control. *See* S. Rep. No. 101-228, p. 49 (1989).

134 S. Ct. at 1593.

EPA's inexcusable delay has placed the Downwind States in precisely the position that Congress intended to prevent through the Good Neighbor Provision. Without additional emission reductions from the Upwind States, many of the Downwind States will be required to promulgate new, more stringent control measures for already well-controlled local sources of ozone precursors such as NOx and VOCs in order to attain or maintain the NAAQS. *See Davis Declaration* ¶¶ 22, 23, 31; *Sheehan Declaration* ¶¶ 18, 19, 52; *Babbidge Declaration* ¶¶ 10, 11, 25. As control measures become more stringent, they are also more expensive. *Id.* The more expensive controls that Plaintiffs must require for their in-state sources are a significant deterrent to new businesses locating in those States, and a burden to existing businesses. *Id.* These further, increasingly expensive local emissions reductions will be required to attain or maintain the 2008 ozone NAAQS, even though controls on sources located in the Upwind States are available at far less cost per ton of ozone eliminated. *Id.* The Downwind States should not be forced to shoulder these additional burdens—while Upwind States do little to control emissions from sources within their borders—because of EPA's demonstrable failure to act.

Relying only on in-state control measures will also make it extremely difficult, if not impossible, for the Downwind States to plan for attainment, or to attain in fact, the 2008 ozone

NAAQS. Because of EPA's failure to fulfill its mandatory duty, it is likely that Downwind States, such as those in the New York Metropolitan Area, will be unable to attain the 2008 ozone NAAQS by the 2021 attainment deadline, and thus, they are likely to be reclassified to an even more severe nonattainment status, with a new future attainment deadline, and new, more stringent control requirements. *See Davis Declaration*, ¶ 33; *Sheehan Declaration* ¶¶ 30, 31, 49; *Babbidge Declaration* ¶ 19. Where, as here, upwind pollution is preventing attainment, EPA must act to remedy ozone transport as expeditiously as practicable, particularly where EPA is long-past its statutory deadlines to do so. As EPA recognized in the CSAPR Update, requiring downwind areas to plan for attainment and maintenance before requiring upwind reductions is contrary to the Act's statutory structure and "would place an inequitable burden on downwind areas by requiring them to plan for attainment and maintenance without any upwind actions." 81 Fed. Reg. at 74,516. Additional unnecessary delay in promulgating FIPs for the Upwind States will negatively impact the Downwind State's ability to attain the 2008 ozone NAAQS, in violation of the Act and settled precedent.  It is imperative that EPA act, at the latest, in time for the next full ozone season, which begins in Spring 2021, to prevent even further harms to the Downwind States in the form of additional seasons of unhealthy air and additional missed attainment deadlines that come with costly regulatory consequences.

EPA's delay in fully remedying the Upwind States' violations of the Good Neighbor Provision also harms public health and welfare. *See supra,* Section V(B)(1). The higher concentrations of ozone from upwind ozone transport within the Downwind States, such as those in the New York Metropolitan Area and within the Downwind States' borders, will cause a greater number of Plaintiffs' residents to be exposed to higher pollutant levels for a longer period of time, meaning more harmful health impacts to those residents. *See Davis Declaration,* ¶ 35; *Sheehan*

*Declaration* ¶ 77; *Babbidge Declaration* ¶ 14. Short-term and prolonged exposures to ambient ozone have been linked to a number of adverse health effects. *Id.; see also* 73 Fed. Reg. at 16,436, Xiao Wu et al., *Exposure to Air Pollution and COVID-19 Mortality in the United States: A Nationwide Cross-Sectional Study*, available at https://www.medrxiv.org/content/10.1101/2020.04.05.20054502v2.

In 2018, this Court recognized that Downwind States "will continue to suffer harm" by EPA's "failure to promulgate" FIPs for the Upwind States, and that EPA's inaction was contributing to Downwind States' inability to attain the ozone standards on time. *Pruitt*, 2018 WL 2976018 at *2; *see* Compl. ¶¶ 45-46. Now, two years later, the need for EPA to act swiftly is evident and even more critical. Yet, in the more than seven months since the D.C. Circuit's vacatur of the Close-Out Rule, EPA has not announced any action to reduce ozone transport by 2020 or any future ozone season. Under all of these circumstances, the Court should exercise its equitable power to mandate that EPA act expeditiously to comply with its mandatory obligations under the Act.

## 2.  The Downwind States' requested schedule for EPA to propose and finalize FIPs is feasible.

Because EPA's statutory deadline for a nondiscretionary duty has passed, an "immediate deadline" is appropriate unless EPA can establish that it has used the "'utmost diligence' in discharging [its] statutory responsibilities,'" or where to do so would "call [the Administrator] to 'to do an impossibility.'" *Johnson*, 444 F. Supp. 2d at 52-53. In bringing the instant case, the Downwind States had initially hoped to gain relief in time to affect the 2020 ozone season. The Downwind States now recognize that an immediate deadline that would grant relief in time for the 2020 ozone season is infeasible due to the procedural requirements of the rulemaking process and because of EPA's ongoing failure to even propose a remedy. Nevertheless, the Downwind States

request that EPA undergo as expeditious a rulemaking as possible in order to provide relief in time for the 2021 ozone season. The Downwind States therefore request a schedule requiring EPA to issue a notice of proposed rule-making no later than October 1, 2020, and to promulgate a final rule no later than March 1, 2021.

EPA cannot meet the "heavy burden" of demonstrating that the Downwind State's proposed rulemaking schedule is impossible. *See, id.*; *see also, Sierra Club v. Thomas* 658 F. Supp. 165, 172 (N.D. Cal. 1987) (rejecting EPA's request for additional time to complete regulations long past-due under the Act on the grounds that EPA had not shown the impossibility of the proposed deadline with due diligence). Nor can EPA demonstrate that it has exercised the utmost diligence in discharging its duty because it missed the statutory deadline and has not taken action to fully address interstate transport, despite the passage of more than seven months since the D.C. Circuit remanded the CSAPR Update and vacated the CSAPR Close-Out. Due diligence presumes that EPA has been working on a new remedy during that entire period. And, EPA would not have been working from a blank slate. Indeed, EPA already has spent years gathering data relevant to the task, designing and running the modeling necessary to trace emissions and calculate the effects of emission reductions, and creating and implementing a framework for broad ozone reductions (*i.e.*, the CSAPR framework). All of these steps form the groundwork for EPA to provide expeditious relief here.

Given the substantial data gathering and modeling EPA already has done, and the significant passage of time since EPA's mandatory deadlines—and the seven months that have passed since the *New York* decision—EPA cannot plausibly justify that it is entitled to more time than the schedule set out by the Downwind States. During the course of the *Pruitt* litigation, EPA explicitly conceded that a deadline of less than 8 months was a feasible amount of time to

promulgate a final action fully addressing its obligations under the Good Neighbor Provision for the 2008 ozone NAAQS for several Upwind States. *See* SUF ¶10. Under the schedule proposed here, EPA would have over 9 months from the filing of this motion and over 17 months from the date of the *New York* decision to promulgate a final action fulfilling their statutory obligations. This schedule is eminently reasonable given that EPA is now many years beyond its statutory deadlines and should already have accomplished much of the underlying work. *See Davis Declaration* ¶ 36; *Sheehan Declaration* ¶¶ 61, 62.

Plaintiffs' accompanying declarations further detail how achieving the proposed schedule is feasible. *See Davis Declaration* ¶ 36; *Sheehan Declaration* ¶¶ 59-82; *Babbidge Declaration* ¶ 27. Notably, EPA already possesses much or all of the data it requires to establish necessary controls on significantly contributing sources. EPA already has access to robust emissions data from prior modeling inventories and the National Emissions Inventory to conduct the analysis necessary to initiate a new ozone interstate transport rulemaking. *Davis Declaration* ¶ 36; *Sheehan Declaration* ¶¶ 67-70; *Babbidge Declaration* ¶ 27. A deadline of October 1, 2020 for a notice of proposed rule-making, and March 1, 2021 for a final rule are not impossible with appropriate diligence, and EPA cannot meet its "heavy burden" to demonstrate otherwise. *See Johnson*, 444 F. Supp. 2d 46. Therefore, the Court may properly order EPA's compliance with its statutory obligations in accordance with the Downwind States' proposed schedule.

### C. AWARDING DOWNWIND STATES THEIR COSTS OF LITIGATION, INCLUDING REASONABLE ATTORNEYS' FEES, IS APPROPRIATE IN THIS ACTION.

Section 304(d) of the Act, 42 U.S.C. § 7604(d), provides that "[t]he court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court

determines such award is appropriate." *See* Compl. Prayer for Relief ¶ 3; *see also Pruitt*, 2018 WL 2976018, at *3-4. When a movant has met its initial burden in demonstrating entitlement to summary judgment, the burden shifts to the non-movant to make a sufficient showing in opposition. *See Celotex Corp.*, 477 U.S. at 322-23. Downwind States have demonstrated that summary judgment on the entire complaint should be granted. Therefore, the Downwind States respectfully request their costs of litigation, including reasonable attorneys' fees, in an amount to be determined either through mutual agreement of the parties in a joint stipulated order, or by the Court based on submissions to be provided by Downwind States after entry of judgment in this matter.

## VI.    CONCLUSION

The Downwind States respectfully request that the Court grant summary judgment (1) declaring that EPA is in violation of section 110(c)(1) of the Act, 42 U.S.C. § 7410(c)(1), for failing to perform a mandatory duty to promulgate a FIP for each of the Upwind States that fully addresses these states' respective obligations under 42 U.S.C. § 7410(a)(2)(D)(i)(I), the "Good Neighbor Provision," with regard to the 2008 ozone national ambient air quality standards (NAAQS); (2) requiring EPA to perform its mandatory duty to sign and disseminate by October 1, 2020, a notice of a proposed action fully addressing the obligations under the Good Neighbor Provision for the 2008 ozone NAAQS for the Upwind States, and to promulgate by March 1, 2021, a final action fully addressing the obligations under the Good Neighbor Provision for the 2008 ozone NAAQS for the Upwind States; (3) awarding Plaintiffs the costs of litigation, including reasonable attorneys' fees pursuant to 42 U.S.C. § 7604(d); (4) retaining jurisdiction over this matter for purposes of enforcing and effectuating the Court's order; and (5) granting any such further relief as the Court deems just and proper.

Plaintiffs request oral argument if the Court believes it would be of assistance, but to the extent the Court finds that the issues are clear from the papers, Plaintiffs waive their request for oral argument in the interest of expediting resolution.

Respectfully Submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY


By:    /s/ Robert J. Kinney
       Deputy Attorney General
       Robert.Kinney@law.njoag.gov

<u>CERTIFICATION OF COMPLIANCE WITH INDIVIDUAL PRACTICES:</u>

I hereby certify that this Memorandum of Law, excluding the caption, table of contents and authorities, and this Certification, contains 6,980 words and is in compliance with the Section 2. D. of the Individual Practices of Judge John G. Koeltl.

By:    /s/ Robert J. Kinney
       Deputy Attorney General

ADDITIONAL SIGNATURES TO MEMORANDUM OF LAW ON FOLLOWING PAGE

LETITIA JAMES
*Attorney General of New York*
By: */s/ Morgan A. Costello*
MORGAN A. COSTELLO
CLAIBORNE E. WALTHALL
*Assistant Attorneys General*
The Capitol
Albany, NY 12224
(518) 776-2380
claiborne.walthall@ag.ny.gov

MAURA HEALEY
*Attorney General of Massachusetts*
By: */s/ Andrew Goldberg*
I. Andrew Goldberg
*Assistant Attorney General*
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA  02108
(617) 963-2429
Andy.Goldberg@mass.gov

KATHLEEN JENNINGS
*Attorney General of State of Delaware*
By: */s/  Valerie S. Edge*
Valerie S. Edge
Christian Douglas Wright
*Deputy Attorneys General*
Delaware Department of Justice
102 W. Water Street
Dover, DE 19904
(302) 257-3219
valerie.edge@delaware.gov
christian.wright@delaware.gov

WILLIAM TONG
*Attorney General of Connecticut*
By:  */s/ Jill Lacedonia*
Jill Lacedonia
*Assistant Attorney General*
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

JAMES E. JOHNSON
*Corporation Counsel of the
City of New York*
 By: */s/ Nathan Taylor*
NATHAN TAYLOR
New York City Law Department
100 Church Street, Rm 6-144
New York, NY  10007
(646) 940-0736 (m)
(212) 356-2315
NTaylor@law.nyc.gov