# EXHIBIT B

**ORAL ARGUMENT SCHEDULED ON SEPTEMBER 20, 2019**

No. 19-1019
(and consolidated cases)

───────────────

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

───────────────

STATE OF NEW YORK, ET AL.,
Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,
Respondents.

───────────────

On Petitions for Review of Final Action
by the United States Environmental Protection Agency

───────────────

**RESPONDENT EPA'S SUPPLEMENTAL BRIEF & MOTION
REQUESTING CASE BE REMOVED FROM ARGUMENT CALENDAR**

───────────────

JEFFREY BOSSERT CLARK
*Assistant Attorney General*
JONATHAN D. BRIGHTBILL
*Principal Deputy Assistant Attorney General*

Of Counsel:

STEPHANIE L. HOGAN
DANIEL P. SCHRAMM
KAYTRUE TING
U.S. Environmental Protection Agency
Office of General Counsel
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

CHLOE H. KOLMAN
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7611
Washington, D.C. 20044
(202) 514-9277
chloe.kolman@usdoj.gov

September 17, 2019

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.     Parties and Amici.

All parties, intervenors, and amici appearing in this Court are listed in the opening briefs of State Petitioners (Doc. 1783918) ("State Br.") and Citizen Petitioners (Doc. 1783919) ("Citizen Br."), and in EPA's opening brief (Doc. 1800115) ("EPA Br.").

### B.     Rulings Under Review.

The agency action under review is a final rule entitled "Determination Regarding Good Neighbor Obligations for the 2008 Ozone National Ambient Air Quality Standard," 83 Fed. Reg. 65,878 (Dec. 21, 2018).

### C.     Related Cases.

There are no related cases.  However, a pending matter involving issues that are also pertinent to this case, *State of Wisconsin v. EPA* (D.C. Cir. No. 16-1406, and consolidated cases), was decided by this Court on September 13, 2019 (Doc. 1806378).

/s/ *Chloe H. Kolman*
CHLOE H. KOLMAN

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................iii

GLOSSARY...................................................................................................iv

SUMMARY OF ARGUMENT.........................................................................1

ARGUMENT..................................................................................................2

      I.      Ordering a final disposition of the Rule in this case would be
              premature. ...................................................................................2

             A.     The *Wisconsin* decision bears directly on the legal issues presented
                     in this case and may require EPA to seek a voluntary remand of
                     the Rule. ..................................................................................2

             B.     The status of the Close-Out Rule will not be known until any
                     petitions for rehearing have been addressed....................................5

             C.     EPA is still considering the shape and timeframe of agency action
                     that may be necessary to comply with the *Wisconsin* decision,
                     which, in any case, is within the *Wisconsin* panel's jurisdiction........6

      II.     For the aforementioned reasons, the United States requests that this
              case be removed from the oral argument calendar......................................9

CONCLUSION ............................................................................................11

# TABLE OF AUTHORITIES

## **Cases**

*Clarke v. United States,*
  898 F.2d 162 (D.C. Cir. 1990) ...................................................................5

*Department of Banking of Nebraska v. Pink,*
  317 U.S. 264 (1942) ...................................................................................5

*EME Homer City Generation, L.P. v. EPA,*
  795 F.3d 118 (D.C. Cir. 2015) ..................................................................7

*Missouri v. Jenkins,*
  495 U.S. 33 (1990) .....................................................................................5

*State of Wisconsin v. EPA,*
  No. 16-1406 (D.C. Cir. September 13, 2019)...............................3, 4, 6, 9

## **Statutes**

42 U.S.C. § 7410(a)(2)(D)(i)(I) .........................................................................2

42 U.S.C. § 7607(d)(3) .....................................................................................8

42 U.S.C. § 7607(d)(5) .....................................................................................8

42 U.S.C. § 7607(h) ..........................................................................................8

**GLOSSARY**

| | |
|---|---|
| Close-Out Rule | Determination Regarding Good Neighbor Obligations for the 2008 Ozone National Ambient Air Quality Standard, 83 Fed. Reg. 65,878 (Dec. 21, 2018) |
| CSAPR Update | Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 81 Fed. Reg. 74,504 (Oct. 26, 2016) |
| EPA | United States Environmental Protection Agency |
| Good Neighbor Provision | 42 U.S.C. § 7410(a)(2)(D)(i)(I) |
| $NO_x$ | Nitrogen Oxides |

iv

## SUMMARY OF ARGUMENT

On September 13, 2019, the Court ordered the parties in this matter to file supplemental briefs addressing the effect of the ruling in *State of Wisconsin v. EPA* (D.C. Cir. No. 16-1406 and consolidated cases) on the matters at issue here.  ECF No. 1806402.  The decision in *Wisconsin* bears directly on legal issues presented in Respondent EPA's opening brief.  The *Wisconsin* case and this case correspond to the first and second steps of a two-step rulemaking EPA undertook to implement its obligations under the Clean Air Act's "Good Neighbor Provision" with respect to a 2008 air quality standard for ozone.  In each of the two rules (the 2016 "CSAPR Update" addressed in *Wisconsin,* and the 2018 "CSAPR Close-Out Rule" at issue here), EPA relied upon a common interpretation of the Good Neighbor Provision regarding the timing of emission reductions from "upwind" states.  But the *Wisconsin* panel now disagrees with that interpretation.  Accordingly, EPA is considering whether it needs to seek a remand of the CSAPR Close-Out Rule, or request other relief.

However, EPA is not in a position to fully address this Court's questions – and so comment on *Wisconsin*'s impact on the Close-Out Rule – until the United States completes consideration of whether to seek rehearing in the *Wisconsin* matter. Accordingly, EPA respectfully requests that the Court remove this case from the oral argument calendar.  By rule, October 28, 2019, is the date by which parties must petition for rehearing in *Wisconsin*.  While EPA will examine the options for a revised rule or other action in response to the *Wisconsin* decision, should such action become

necessary, the question of EPA's interpretation and any potential remedy is now within the jurisdiction of the *Wisconsin* court.  EPA therefore requests that this Panel await the conclusion of appropriate process in the *Wisconsin* case before proceeding.

The United States commits to providing a report no later than October 29, 2019 – the day after petitions for rehearing are due.  EPA respectfully submits that this would be the most efficient use of the parties' and this Court's time and resources.  EPA and its counsel will be in a better position to speak to the disposition of the Rule at issue here at that time.  And it may ultimately prove unnecessary to present argument on the Close-Out Rule.

## ARGUMENT

### I.    Ordering a final disposition of the Rule in this case would be premature.

#### A.    The *Wisconsin* decision bears directly on the legal issues presented in this case and may require EPA to seek a voluntary remand of the Rule.

This case, like *Wisconsin*, concerns EPA's implementation of the Good Neighbor Provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I).  This requires upwind states to prohibit their emissions that "contribute significantly to nonattainment" or "interfere with maintenance" of air quality standards in downwind areas.  *Id.*  In Section I of its opening brief, the United States argued that in the Close-Out Rule, EPA reasonably interpreted the text of the Provision to allow upwind states to reduce their nitrogen oxide ("$NO_x$") emissions on a schedule that took account of *both*: (1) the successive deadlines for downwind states' attainment of the 2008 air quality standard for ozone,

and (2) the timeframe for imposing the full suite of available $NO_X$ emission controls. *See* EPA Br. 16-29, ECF No. 1800115.  EPA also argued that, under this statutory interpretation, it was reasonable to structure the Close-Out Rule around a 2023, rather than 2020, "analytic year" (the year used to model and assess downwind air quality problems to which upwind emissions contribute).  The selection of a 2023 analytic year appropriately balanced the upcoming 2021 and 2027 attainment dates for downwind states against the need to ensure EPA could consider emission controls not already considered in its 2016 CSAPR Update rule – including new selective catalytic reduction controls, which are the "gold standard" of $NO_X$ control and which could not be installed sector-wide before the 2021 attainment date.

The *Wisconsin* court, however, held that the text of the Good Neighbor Provision requires EPA to eliminate all "significantly contributing" upwind emissions by the next downwind attainment deadline to ensure that downwind states do not bear a greater burden than Congress intended.  *State of Wisconsin v. EPA*, No. 16-1406, slip op. at 11-27 (D.C. Cir. September 13, 2019).  The *Wisconsin* panel thus concluded that EPA's decision in the 2016 CSAPR Update to only partially address upwind states' "significant contribution" to downwind air quality problems by the 2018 attainment deadline – while deferring to a second rulemaking its consideration of additional reductions that might be necessary over longer timeframes – was unlawful. *Id.*

The Close-Out Rule was promulgated specifically to address any remaining Good Neighbor obligations not addressed in the "partial" CSAPR Update. And it relied upon the same statutory interpretation of the Good Neighbor Provision, allowing EPA to balance consideration of the timing of downwind deadlines and consideration of the lead-times necessary to install the most efficacious emission controls. The *Wisconsin* opinion thus bears directly on the legal basis upon which EPA originally promulgated the Close-Out Rule. If EPA had fully addressed upwind states' significant contributions to downwind nonattainment in the CSAPR Update, as *Wisconsin* suggests was required, there would have been no need to issue the Close-Out Rule. A revision to the CSAPR Update is thus likely to subsume the issues that the Close-Out Rule sought to address and obviate the need for a separate rule. In addition, *Wisconsin*'s conclusion that EPA cannot defer upwind emission reductions beyond a forthcoming attainment date on the basis of technical feasibility would likely require EPA to reassess the legal basis for the Close-Out Rule's use of a 2023 analytic year.[1]

Consequently, the *Wisconsin* decision, as it stands, may require EPA to request a voluntary remand of the Close-Out Rule.

---

[1] The *Wisconsin* panel left open the possibility that EPA could justify some deviation from downwind attainment dates if it could demonstrate "impossibility" or "under particular circumstances and upon a sufficient showing of necessity" not further described in the opinion. Slip op. at 26-27. But the Close-Out Rule does not itself include such a demonstration.

**B.    The status of the Close-Out Rule will not be known until any petitions for rehearing have been addressed.**

At this time, however, the effect of the *Wisconsin* decision on the Close-Out Rule is provisional.  Under Federal Rules 40(a)(1) and 35(c), the United States has 45 days – until October 28, 2019 – to file a petition for panel or *en banc* rehearing in the *Wisconsin* matter.  *See* Fed. R. App. P. 40(a)(1) & 35(c).  Such a petition, if granted, could result in an amended decision in that case, including a determination that EPA had the authority to implement Good Neighbor obligations in the step-wise manner employed here.  As the Supreme Court has explained, "a timely petition for rehearing operates to suspend the finality of the court's judgment, pending the court's further determination whether the judgment should be modified so as to alter its adjudication of the rights of the parties."  *Missouri v. Jenkins*, 495 U.S. 33, 45-46 (1990) (internal alterations omitted) (quoting *Department of Banking of Nebraska v. Pink,* 317 U.S. 264, 266 (1942)); *see Clarke v. United States*, 898 F.2d 162, 163-64 (D.C. Cir. 1990).  Until the period for filing a petition for rehearing runs – and, if necessary, while a petition is pending – there is no final judgment operative under *Wisconsin* that would direct disposition of the Close-Out Rule.  *See Missouri*, 495 U.S. at 46.  Indeed, the *Wisconsin* court has withheld issuance of the mandate directing remand of the CSAPR Update to the Agency until seven days after disposition of any timely petitions for rehearing.  ECF No. 1806379.

Because the *Wisconsin* judgment will not be final until either the Court rules on a petition for rehearing or EPA and other parties decline to file such petitions – and because this case may yet be suitable for resolution on the merits if a petition for rehearing were successful – EPA respectfully submits that it cannot reasonably respond to the *Wisconsin* decision and address its implications for the Close-Out Rule until at least October 28, 2019.  At that time, the United States will be in a position to inform the Court whether a petition for rehearing was filed in the *Wisconsin* matter and, if not, how the Close-Out Rule should be addressed in light of the final judgment in that case.

> **C.    EPA is still considering the shape and timeframe of agency action that may be necessary to comply with the *Wisconsin* decision, which, in any case, is within the *Wisconsin* panel's jurisdiction.**

Given the potential for further alteration of the *Wisconsin* judgment, as well as the fact that fewer than five days have elapsed since the 60-page opinion was issued, EPA has not determined the path it will take to revise the Update if it is indeed remanded to the Agency.  In consideration of this Court's request that EPA speak to its plan for a revised rule, however, the United States has endeavored to provide a preliminary survey of the Agency's considerations and why it cannot yet estimate a timeframe for rule revision.

First, issuing federal implementation plans region-wide is extremely complex. *See* Slip op. at 26.  EPA applies a four-step framework, described in its opening brief, EPA Br. 4-6, which necessitates the use of several different models and analyses,

including separate air quality and power sector modeling.  These tools are used to (1) model downwind states' future air quality, (2) determine upwind states' impacts on any air quality problems, (3) assess upwind states' available emission reductions and weigh the cost of those reductions against resulting downwind air quality improvement, and (4) implement upwind emission reductions, typically through a multi-state allowance trading program.  *Id.*

To determine the path forward on a revision to the CSAPR Update, EPA must first analyze whether it will need to perform new air quality modeling around a new analytic year to comply with the instructions in *Wisconsin*.  Conducting new air quality modeling is a lengthy process but EPA is working to assess whether there may be ways to adjust existing air quality modeling or use another form of data to support its air quality projections.  If new modeling is ultimately required, EPA will need to consider whether new emission inventories for different source categories will need to be developed, or whether emission inventory information developed to model other analytic years might be congruent with the new modeling.[2]

EPA's implementation of the other steps of the transport framework also presents significant uncertainties at this early stage.  For example, the *Wisconsin* panel's

---

[2] Whatever approach EPA selects, it must also be defensible under, among other things, this Court's "over-control" holding in *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 129-38 (D.C. Cir. 2015), which bars EPA from requiring more emission reductions in upwind states than are necessary to address a state's significant contribution to downwind air quality problems.

reasoning rested in part on EPA's failure to assess reductions that would be available from sources other than power plants. But addressing non-power plant sources in steps three and four of EPA's transport framework may elongate the time necessary to complete analysis at those steps and, at a minimum, makes it less certain. EPA's analysis of non-power plants will require the Agency to assess what data it has about these sources – e.g., emissions data and monitoring information, for what sectors, in which states – and what data it would need to develop before selecting sectors whose $NO_X$ emission reduction potential could be assessed under a revised rule. Likewise, including non-power plant reductions in a revised rule might require the development of new implementation mechanisms at step four.

In addition to the considerations above, EPA's proposed schedule for complying with the *Wisconsin* panel's remand would need to include appropriate time for public comment under 42 U.S.C. § 7607(d)(3), (d)(5), and (h), and the necessary time to draft proposed and final rule text, responses to comments, and technical support documents.

Until EPA completes the preliminary scoping decisions described above, it cannot forecast the precise shape or timing of the action it would take pursuant to

*Wisconsin.* But it is exploring all options for expediting preparation of a revised rule should one be necessary.[3]

Importantly, a rule revising the CSAPR Update would presumably address *all* significant contribution from upwind states for the 2008 ozone NAAQS, which would necessarily subsume the issues EPA sought to address in the Close-Out Rule. If so, the remedy already ordered in *Wisconsin* would supplant the follow-on Close-Out Rule, and so obviate the need for any additional remedy in *this* matter beyond remand of the Rule. This is yet another reason for deferring further consideration of this matter until after the deadline for (or disposition of) petitions for rehearing: if EPA ultimately must revise the CSAPR Update consistent with the *Wisconsin* opinion, then no further proceedings would be required before this panel. Both the parties and the Court would benefit from the efficiency of that resolution.

**II.   For the aforementioned reasons, the United States requests that this case be removed from the oral argument calendar.**

As explained above, the *Wisconsin* opinion may ultimately warrant a voluntary remand of the Close-Out Rule. But EPA will not know whether remand, or some other course, is appropriate until after it gives due consideration to the opportunities

---

[3] The *Wisconsin* opinion does leave open the possibility, however, that EPA might be relieved from the requirement to issue a rule by the next downwind attainment date if it determined that remaining upwind contributions to downwind air quality problems were not "significant," if it extended nonattainment deadlines for downwind states, if it demonstrated an impossibility, or upon some other "sufficient showing of necessity." Slip op. at 26-27. So EPA might also consider whether the particular circumstances here fall within one of these alternatives.

for rehearing afforded under Federal Rules 35 and 40.  To the extent that EPA believes that a petition for rehearing *en banc* is appropriate, EPA will also need to brief and consult with the Solicitor General, who in turn will need time to consider EPA's request before approving such a petition.  But if EPA does not seek rehearing, this Court may be in a position to dispose of this case in a largely ministerial fashion. Deferring further consideration in this case until after the deadline for petitions for rehearing in *Wisconsin* would thus save both party and Court resources and promote the efficient resolution of this matter.

The United States thus respectfully requests that the Court remove this case from the oral argument calendar for Friday, September 20, 2019, and defer further consideration of either the merits or the remedy in this case until after the disposition of any petitions for rehearing in *State of Wisconsin v. EPA*.  Should the Court grant this motion, EPA will provide the Court with a status report on October 29, 2019 – the day after the deadline for petitions for rehearing – informing the Court of whether any party is seeking rehearing and addressing disposition of the Close-Out Rule and these petitions.

State Petitioners state that they oppose this request.

Citizen Petitioners state that they oppose this request and will file a response.

Respondent-Intervenors the State of Texas, the Texas Commission on Environmental Quality, Homer City Generation, L.P., and the National Rural Electric Cooperative Association each state that they do not oppose this request.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court remove this case from its argument calendar and order Respondent EPA to provide a status report addressing disposition of this case on October 29, 2019.

Respectfully submitted,

DATED:  September 17, 2019

JEFFREY BOSSERT CLARK
*Assistant Attorney General*
JONATHAN D. BRIGHTBILL
*Principal Deputy Assistant Attorney General*

*/s/ Chloe H. Kolman*
CHLOE H. KOLMAN
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C.  20044
(202) 514-9277
chloe.kolman@usdoj.gov

*For Respondent EPA*

*Of Counsel:*

STEPHANIE L. HOGAN
DANIEL P. SCHRAMM
KAYTRUE TING
Office of the General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C.  20460

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify pursuant to Fed. R. App. P. 32(f) and (g) that this brief contains 2,591 words, excluding exempted parts of the brief, according to the count of Microsoft Word, and that this brief complies with the type-volume limitation of 2,600 words set forth in the Court's Order of September 13, 2019 (ECF No. 1806402).

*/s/ Chloe H. Kolman*
CHLOE H. KOLMAN

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system.  The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Chloe H. Kolman*
CHLOE H. KOLMAN