# EXHIBIT C

**ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 20, 2019**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 19-1019 (and consolidated cases)

---

STATE OF NEW YORK, *et al.*,
  *Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,
  *Respondents*.

---

PETITION FOR REVIEW OF FINAL ADMINISTRATIVE ACTION OF THE
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

---

## SUPPLEMENTAL BRIEF OF CITIZEN AND STATE PETITIONERS

**DATED:** September 18, 2019

Ariel Solaski
Jon A. Mueller
Chesapeake Bay Foundation, Inc.
6 Herndon Ave.
Annapolis, MD 21401
asolaski@cbf.org
jmueller@cbf.org
(443) 482-2172

*Counsel for Chesapeake Bay Foundation, Inc.*

Neil Gormley
Isabel Segarra Trevino
Earthjustice
1625 Massachusetts Ave., NW
Suite 702
Washington, DC 20036
(202) 667-4500
ngormley@earthjustice.org
isegarra@earthjustice.org

*Counsel for Downwinders at Risk, Appalachian Mountain Club, Sierra Club, Texas Environmental Justice Advocacy Services, and Air Alliance Houston*

Ann Brewster Weeks
Clean Air Task Force
114 State Street, 6th floor
Boston, MA 02109
(617) 359-4077
aweeks@catf.us

*Counsel for Clean Wisconsin*

Joshua Berman
Zachary M. Fabish
The Sierra Club
50 F Street, NW, 8th Floor
Washington, DC 20001
(202) 675-7917
josh.berman@sierraclub.org
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

Charles McPhedran
Earthjustice
1617 JFK Blvd.
Suite 1130
Philadelphia, PA 19103
(215) 717-4521
cmcphedran@earthjustice.org

*Counsel for Downwinders at Risk, Appalachian Mountain Club, Sierra Club, Texas Environmental Justice Advocacy Services, and Air Alliance Houston*

LETITIA JAMES
*Attorney General*
BARBARA D. UNDERWOOD
*Solicitor General*

Steven C. Wu
*Deputy Solicitor General*
David S. Frankel
*Assistant Solicitor General*
Morgan A. Costello
Andrew G. Frank
Claiborne E. Walthall
*Assistant Attorneys General*
The Capitol
Albany, NY 12224
(518) 776-2392
morgan.costello@ag.ny.gov

*Counsel for State of New York*

*Additional Petitioners listed in signature blocks below.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iv

ARGUMENT .............................................................................................................2

      I.    *WISCONSIN* REQUIRES VACATUR OF THE CLOSE-OUT RULE BECAUSE IT REJECTS THE STATUTORY INTERPRETATION ON WHICH THE RULE IS PREMISED AND REQUIRES EPA TO ALIGN UPWIND STATES' ELIMINATION OF SIGNIFICANT INTERSTATE CONTRIBUTIONS WITH DOWNWIND STATES' ATTAINMENT DEADLINE. ....................................................................................... 2

      II.    THE COURT SHOULD ORDER EPA TO ISSUE A FINAL RULE PROHIBITING SIGNIFICANT CONTRIBUTIONS TO DOWNWIND NONATTAINMENT AND INTERFERENCE WITH MAINTENANCE OF THE 2008 OZONE STANDARD BY THE START OF THE 2020 OZONE SEASON. ................................................................................. 6

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .................. 13

CERTIFICATE OF SERVICE ............................................................................... 14

# TABLE OF AUTHORITIES

**CASES**                                              **PAGE(S)**

*Alabama Power Co. v. Costle*,
  636 F.2d 323 (D.C. Cir. 1979)..................................................................6

*Delaney v. EPA*,
  898 F.2d 687 (9th Cir. 1990) ...................................................................8

*NRDC v. EPA*,
  22 F.3d 1125 (D.C. Cir. 1994)..................................................................8

*NRDC v. Train*,
  510 F.2d 692 (D.C. Cir. 1974)...............................................................6, 9

*Sierra Club v. EPA*,
  719 F.2d 436 (D.C. Cir. 1983)..................................................................5

*Wisconsin v. EPA*,
  Nos. 16-1406, *et al.* (D.C. Cir. Sept. 13, 2019)............................1, 2, 3, 4, 5, 6, 7

**FEDERAL REGISTER NOTICES**

81 Fed. Reg. 74,504 (Oct. 26, 2016)................................................................2, 5, 8

83 Fed. Reg. 42,986 (Aug. 24, 2018) ...................................................................9

83 Fed. Reg. 65,424 (Dec. 20, 2018) ...................................................................9

83 Fed. Reg. 65,878 (Dec. 21, 2018) ......................................................1, 2, 4, 6, 8

84 Fed. Reg. 44,238 (Aug. 23, 2019) ...................................................................3

84 Fed. Reg. 2670 (Feb. 7, 2019) .........................................................................9

Pursuant to the Court's order of September 13, 2019, Doc. No. 1806402, State Petitioners and Citizen Petitioners jointly submit this supplemental brief addressing the effect of *Wisconsin v. EPA*, Nos. 16-1406, *et al.* (D.C. Cir. Sept. 13, 2019). As explained below, *Wisconsin* controls this case and requires vacatur of the rule challenged here, "Determination Regarding Good Neighbor Obligations for the 2008 Ozone National Ambient Air Quality Standard; Final Rule," 83 Fed. Reg. 65,878 (Dec. 21, 2018) ("Close-Out Rule"), JA026. *Wisconsin* holds that EPA must align upwind States' responsibilities—to eliminate significant contributions to downwind nonattainment and nonmaintenance—with the attainment deadlines applicable to affected downwind States. The Close-Out Rule contravenes that statutory requirement and must accordingly be vacated.

The Court should further order EPA to promulgate a lawful replacement rule within five months—in time for effective controls to be in place for the 2020 ozone season—because grave irreparable harm will result from further delay of pollution reductions required by law, and because States must use measurements during the 2020 ozone season to demonstrate compliance by the July 2021 attainment deadline.

1

# ARGUMENT

**I.** ***Wisconsin* Requires Vacatur of the Close-Out Rule Because It Rejects the Statutory Interpretation on Which the Rule Is Premised and Requires EPA to Align Upwind States' Elimination of Significant Interstate Contributions With Downwind States' Attainment Deadline.**

The Close-Out Rule expressly rests on EPA's determination that, so long as it merely *considers* downwind States' attainment deadlines, it need not prohibit upwind States' significant contributions to downwind nonattainment and nonmaintenance by the deadlines applicable to downwind States. Respondent EPA's Final Brief at 13, 16-21, Doc. No. 1800115 ("EPA Br."); 83 Fed. Reg. at 65,907, JA055. *Wisconsin* rejects that statutory interpretation.

In *Wisconsin*, petitioners challenged EPA's 2016 Cross-State Air Pollution Rule Update, 81 Fed. Reg. 74,504 (Oct. 26, 2016) ("Update Rule"), JA073, for failing to require upwind States to eliminate significant interstate contributions to nonattainment and nonmaintenance of the 2008 ozone standard by the deadlines for downwind States' attainment of that standard. *Wisconsin*, Slip Op. at 12-13. To defend the Update Rule, EPA argued that it was sufficient under the statute to "consider" downwind States' deadlines. Slip Op. at 15; Final Corrected Brief of EPA at 25-26, Case No. 16-1406, Doc. No. 1725799. This Court rejected EPA's interpretation and held that the Clean Air Act "require[s] upwind States to eliminate their significant contributions in accordance with the deadline by which

2

downwind States must come into compliance with the [ozone standard]." *Wisconsin*, Slip Op. at 13.

*Wisconsin* thus rejects the statutory interpretation on which EPA relies in the Close-Out Rule. The Close-Out Rule indisputably allows upwind States to continue their significant contributions to downwind nonattainment and nonmaintenance beyond both July 20, 2018, the attainment deadline that applied when EPA issued the Rule, and July 20, 2021, the deadline that downwind areas, including the New York Metropolitan Area, now face. Citizen Pet'rs' Br. at 11-13, 20, Doc. No. 1799904; State Pet'rs' Br. at 24-29, Doc. No. 1799287; State Pet'rs' Reply Br. at 3-9, Doc. No. 1799289; 84 Fed. Reg. 44,238, 44,244 (Aug. 23, 2019) (reclassification effective Sept. 23, 2019).[1] Thus, the Close-Out Rule unlawfully "enable[s] upwind States to continue their significant contributions outside of the statutory timeframe by which downwind areas must achieve attainment," *Wisconsin*, Slip Op. at 18, and must be vacated.[2]

---

[1] Two downwind nonattainment areas, Inland Sheboygan County, Wisconsin, and Shoreline Sheboygan County, Wisconsin, will receive a one-year attainment deadline extension on September 23, 2019, and become subject to an attainment deadline of July 20, 2019. *Id.* at 44,243.

[2] Vacatur is necessary here because the Close-Out Rule is fundamentally flawed and, without vacatur, would continue to stand as an obstacle to long-overdue relief from interstate pollution to which downwind states and their residents are entitled. Unlike *Wisconsin* (Slip Op. at 59), considerations of "disruption to [allowance] trading markets" are not applicable here, because the Close-Out Rule left the trading regime unchanged.

3

The process and rationales underlying the Close-Out Rule are likewise plainly barred by *Wisconsin*. EPA claimed that it had discretion under the Act to select a "future analytic year" of its choice to measure downwind air quality and assess needed upwind emission reductions. *See* 83 Fed. Reg. at 65,879/1, 65,890/2, 65,892/1, JA027, 038, 040; EPA Br. at 14, 16, 29-36. On that basis, EPA conducted no modeling relevant to the upcoming attainment deadline, projecting only air quality in 2023 (two years after the 2021 deadline) and assessing only the need for emission reductions at that late date. *Wisconsin*—in line with this Court's prior precedents—forecloses this approach, confirming that EPA lacks discretion to structure a rule around a date years after downwind States' deadlines, and lacks discretion to decline to conduct the analysis required to meet its mandate. *See Wisconsin*, Slip Op. at 24.

*Wisconsin* also forecloses EPA's various attempts to justify the Close-Out Rule's disregard of downwind States' attainment deadlines, including defenses based on (1) impracticability or infeasiblity, 83 Fed. Reg. at 65,907/2-3, JA055; (2) the uncertainty of pollution reductions, Citizen Pet'rs' Reply Br. at 15, Doc. No. 1799907; State Pet'rs' Br. at 28-29; 83 Fed. Reg. at 65,903/1, JA051; and (3) administrative inconvenience, Citizen Pet'rs' Reply Br. at 15; 83 Fed. Reg. at 65,894/2-3, JA042.

4

For example, EPA claimed in the Update Rule that, instead of prohibiting all significant contributions to downwind nonattainment and nonmaintenance by the July 20, 2018 deadline, it was requiring only the reductions that were practicable in that timeframe. 81 Fed. Reg. at 74,568/1, JA137; Final Corrected Brief of EPA at 25-26. *Wisconsin* rejected that approach as inadequate to satisfy the statute. Slip Op. at 21. The same is true of feasibility. EPA claimed in the Update Rule that eliminating significant contributions by the 2018 deadline was "not feasible," Slip Op. at 15 (quoting 81 Fed. Reg. at 74,523, JA092), but *Wisconsin* held that claims of infeasibility cannot justify EPA's failure to prohibit significant contributions by the deadlines. *Id.* (quoting *North Carolina v. EPA*, 531 F.3d 896, 911 (D.C. Cir. 2008)).

The Court likewise rejected EPA's claims (81 Fed. Reg. at 74,542/2-3, 74,522, JA111, 091) that compliance with the deadlines was excused by uncertainty and lack of information about the potential for emission reductions from non-power plants or the time needed for installation of controls, or by administrative inconvenience. Slip Op. at 23-24. *Wisconsin* acknowledges the general rule that, under the doctrine of administrative necessity, agencies are not required to do the impossible, but reaffirms that agencies must carry a "heavy burden to demonstrate the existence of an impossibility." *Id.* at 24-27 (quoting *Sierra Club v. EPA*, 719 F.2d 436, 462 (D.C. Cir. 1983)); *see also Sierra Club*,

5

719 F.2d at 462-64. Indeed, an agency's burden of justification is "especially heavy" in cases like this one, where EPA seeks to avoid compliance with a statutory requirement "based upon the agency's prediction of the difficulties of undertaking regulation." *Alabama Power Co. v. Costle*, 636 F.2d 323, 359 (D.C. Cir. 1979). In the Close-Out Rule, EPA never claimed that compliance with the Clean Air Act's deadlines is impossible, let alone attempted to carry the "especially heavy" burden to so demonstrate.[3] In any event, *Wisconsin* makes clear that claims of infeasibility, impracticability, uncertainty, and administrative inconvenience do not amount to impossibility.[4]

II.  **The Court Should Order EPA to Issue a Final Rule Prohibiting Significant Contributions to Downwind Nonattainment and Interference With Maintenance of the 2008 Ozone Standard by the Start of the 2020 Ozone Season.**

As Petitioners have emphasized throughout this litigation—first in their joint motion for expedition, Mot. for Expedition at 1-3 (Mar. 4, 2019), Doc. No. 1775911, and later in their briefs, *see*, *e.g.*, State Pet'rs' Br. at 27-28; Citizen

---

[3] EPA did claim it could not eliminate pollution by the July 2018 deadline, which had already passed. 83 Fed. Reg. at 65,892/2, JA040. But though EPA may have been unable to prohibit pollution retroactively, it was obligated to discharge its obligation quickly thereafter. *See NRDC v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1974). EPA did not claim that was impossible, let alone substantiate such a claim.

[4] Further, *Wisconsin* describes additional limits on claims of administrative necessity that would delay Good Neighbor pollution reductions, making clear that such claims "would need to be rooted in Title I's framework" and "of course would still need to 'provide a sufficient level of protection to downwind states.'" Slip Op. at 27 (quoting *North Carolina*, 531 F.3d at 912).

6

Pet'rs' Br. at 39—additional upwind emissions reductions are necessary by the 2020 ozone season, the last period that will be used for measuring attainment by the 2021 attainment deadline. Continued nonattainment past 2021 because of unchecked upwind ozone pollution would subject downwind States to irreparable injury—causing citizens and residents of downwind States to continue suffering from unsafe levels of ozone pollution and imposing additional regulatory burdens on downwind States, which will have the unfair burden of further reducing in-state emissions at much higher costs than in upwind States. *See* Mot. for Expedition at 20. Indeed, it was this 2021 attainment deadline that prompted Citizen and State Petitioners to seek—and the Court to grant—expedited review of the Close-out Rule. Order of April 1, 2019, Doc. No. 1780502. *Wisconsin* confirms what this Court declared in *North Carolina*: that it violates the fundamental purpose of the Good Neighbor Provision if downwind States, and their residents, are forced to bear the health, environmental, and regulatory consequences of yet another missed attainment deadline due to unlawful upwind emissions. *Wisconsin*, Slip Op. at 13-15 (provision is designed to ensure that downwind areas do not have "to attain the NAAQS without the elimination of upwind states' significant contribution" (quoting *North Carolina*, 531 F.3d at 912)).

    Without an expeditious deadline, vacatur and remand of the Close-Out Rule might allow EPA to use the remand period to engage in further delay and avoid its

statutory obligation to secure the necessary upwind emissions reductions by the 2020 ozone season. This Court has the inherent authority to ensure that its mandate provides the relief to which petitioners are entitled, *see, e.g.*, *NRDC v. EPA*, 22 F.3d 1125, 1137 (D.C. Cir. 1994) (setting five-month deadline to approve or disapprove state implementation plans); *Delaney v. EPA*, 898 F.2d 687, 695 (9th Cir. 1990) (setting six-month deadline to promulgate federal implementation plan), and it should exercise that power here where EPA has failed to meet its well-established "heavy burden" to show that Petitioners' proposed five-month remedial deadline (Citizen Pet'rs' Br. at 39) is impossible.

Although EPA has claimed in a footnote that "it takes approximinately six months to conduct modeling," EPA Br. at 74 n.21, the cited rule discussion claims that running a model takes only "a month or more." 83 Fed. Reg. at 65,908/3, JA056. And although EPA claims that "develop[ing] detailed emission projection inventories" generally takes three months, *id.*, here EPA has already compiled emission inventories for both 2017 (in the Update Rule) and 2023 (in the Close-Out Rule). If new modeling is needed, EPA need only update these inventories for 2020. Nor can EPA plausibly claim, given the record in this case, that it would be impossible, as part of a full solution or as an interim measure, to require short-term emission reductions. For example, Petitioners have explained that further reductions can be immediately obtained—entirely within EPA's existing

8

framework and based on data already before the agency—by adjusting upwind States' emission allowance budgets to account for greater use of already installed control equipment. *See* State Pet'rs' Reply Br. at 27-28.

Further, EPA's Office of Air and Radiation is currently devoting considerable resources to discretionary deregulatory actions without mandatory deadlines, siphoning resources that could be deployed instead to discharge the mandatory obligation to prohibit significant interstate air pollution.[5] A court-ordered deadline would induce EPA to redirect these resources to expeditiously promulgate a rule that finally prohibits significant contributions to violations of the 2008 ozone standard in downwind states. *Train*, 510 F.2d, at 712 (court-ordered deadline "should serve like adrenalin, to heighten the response and to stimulate the fullest use of resources.").

---

[5] *E.g.*, Proposed Policy Amendments 2012 and 2016 New Source Performance Standards for the Oil and Natural Gas Industry (signed Aug. 28, 2019) (repealing methane limits for oil and gas operations), https://www.epa.gov/controlling-air-pollution-oil-and-natural-gas-industry/proposed-policy-amendments-2012-and-2016-new; National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Stream Generating Units—Reconsideration of Supplemental Finding and Residual Risk and Technology Review; Proposed Rule, 84 Fed. Reg. 2670 (Feb. 7, 2019) (reversing conclusion that it is "appropriate" to limit toxic air pollution from power plants); The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule for Model Years 2021-2026 Passenger Cars and Light Trucks; Proposed Rule, 83 Fed. Reg. 42,986 (Aug. 24, 2018) (weakening greenhouse gas emission limits for cars); Review of Standards of Performance for Greenhouse Gas Emissions From New, Modified, and Reconstructed Stationary Sources: Electric Utility Generating Units; Proposed Rule, 83 Fed. Reg. 65,424 (Dec. 20, 2018) (weakening greenhouse gas limits for power plants).

Therefore, Petitioners respectfully request that the Court vacate the Close-Out Rule and remand to EPA with instructions to issue a final replacement rule by March 1, 2020, that fully resolves upwind States' Good Neighbor Provision obligations under the 2008 ozone standard by the start of the 2020 ozone season, on May 1, 2020.

| | |
|---|---|
| DATED: September 18, 2019 | Respectfully submitted, |
| /s/ Ariel Solaski (w/permission)<br>Ariel Solaski<br>Jon A. Mueller<br>Chesapeake Bay Foundation, Inc.<br>6 Herndon Ave.<br>Annapolis, MD 21401<br>asolaski@cbf.org<br>jmueller@cbf.org<br>(443) 482-2172<br><br>*Counsel for Chesapeake Bay Foundation, Inc.* | /s/ Neil Gormley<br>Neil Gormley<br>Isabel Segarra Trevino<br>Earthjustice<br>1625 Massachusetts Ave., NW<br>Suite 702<br>Washington, DC 20036<br>(202) 667-4500<br>ngormley@earthjustice.org<br>isegarra@earthjustice.org |
| /s/ Ann Brewster Weeks (w/permission)<br>Ann Brewster Weeks<br>Clean Air Task Force<br>114 State Street, 6th floor<br>Boston, MA 02109<br>(617) 359-4077<br>aweeks@catf.us<br>*Counsel for Clean Wisconsin* | Charles McPhedran<br>Earthjustice<br>1617 JFK Blvd.<br>Suite 1130<br>Philadelphia, PA 19103<br>(215) 717-4521<br>cmcphedran@earthjustice.org<br>*Counsel for Downwinders at Risk, Appalachian Mountain Club, Sierra Club, Texas Environmental Justice Advocacy Services, and Air Alliance Houston* |

Joshua Berman
Zachary M. Fabish
Sierra Club
50 F Street, NW, 8th Floor

Washington, DC 20001
(202) 675-7917
josh.berman@sierraclub.org
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

WILLIAM TONG
*Attorney General*

/s/Jill Lacedonia (w/permission)
Matthew I. Levine
Jill Lacedonia
*Assistant Attorneys General*
Office of the Attorney General
P.O. Box 120, 55 Elm Street
Hartford, CT 06141-0120
(860) 808-5250
Jill.Lacedonia@ct.gov

*Counsel for State of Connecticut*

MAURA HEALEY
*Attorney General*

/s/Jillian M. Riley (w/permission)
Jillian M. Riley
*Assistant Attorney General*
Environmental Protection Division
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 963-2424
jillian.riley@mass.gov

*Counsel for Commonwealth of Massachusetts*

BRIAN E. FROSH
*Attorney General*

LETITIA JAMES
*Attorney General*
BARBARA D. UNDERWOOD
*Solicitor General*

/s/Morgan A. Costello (w/permission)
Steven C. Wu
*Deputy Solicitor General*
David S. Frankel
*Assistant Solicitor General*
Morgan A. Costello
Andrew G. Frank
Claiborne E. Walthall
*Assistant Attorneys General*
The Capitol
Albany, NY 12224
(518) 776-2392
morgan.costello@ag.ny.gov

*Counsel for State of New York*

KATHLEEN JENNINGS
*Attorney General*

/s/Valerie S. Edge (w/permission)
Valerie S. Edge
*Deputy Attorney General*
Delaware Department of Justice
102 West Water Street, 3d Floor
Dover, DE 19904
(302) 257-3219
Valerie.edge@delaware.gov

*Counsel for State of Delaware*

GURBIR S. GREWAL
*Attorney General*

11

/s/Michael F. Strande (w/permission)
Michael F. Strande
*Assistant Attorney General*
Maryland Office of the
Attorney General

Maryland Department of the
Environment

1800 Washington Boulevard
Suite 6048
Baltimore, Maryland 21230
(410) 537-3421
(410) 537-3943 (facsimile)
michael.strande@maryland.gov

Joshua M. Segal
*Special Assistant Attorney General*
Maryland Office of the
Attorney General
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6446
jsegal@oag.state.md.us

*Counsel for State of Maryland*

/s/Lisa J. Morelli (w/permission)
Lisa J. Morelli
*Deputy Attorney General*
Division of Law
R.J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625-0093
(609) 376-2708
Lisa.Morelli@law.njoag.gov

*Counsel for State of New Jersey*


ZACHARY W. CARTER
*Corporation Counsel*

/s/Christopher G. King (w/permission)
Christopher G. King
*Senior Counsel*
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-2319
cking@law.nyc.gov

*Counsel for the City of New York*

12

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Counsel hereby certifies, in accordance with Federal Rule of Appellate Procedure 32(g)(1) and the Court's September 13, 2019 briefing order, that the foregoing **Supplemental Brief Of Citizen and State Petitioners** contains 2,209 words, as counted by counsel's word processing system, and thus complies with the 2,600 word limit provided in the Court's order.

Further, this document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) & (a)(6) because this document has been prepared in a proportionally spaced typeface using **Microsoft Word 2016** using **size 14 Times New Roman** font.

DATED: September 18, 2019

/s/ Neil Gormley
Neil Gormley

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of September, 2019, I have served the foregoing **Supplemental Brief Of Citizen and State Petitioners** on all registered counsel through the court's electronic filing system (ECF).

/s/ Neil Gormley
Neil Gormley