**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW JERSEY,<br>STATE OF CONNECTICUT,<br>STATE OF DELAWARE,<br>STATE OF NEW YORK,<br>COMMONWEALTH OF MASSACHUSETTS,<br>*and* CITY OF NEW YORK<br><br><br>*Plaintiffs*,<br>v.<br><br>ANDREW R. WHEELER, *Administrator of the*<br>*United States Environmental Protection Agency;*<br>*and the* UNITED STATES<br>ENVIRONMENTAL PROTECTION<br>AGENCY,<br><br>*Defendants*. | **Civil Case No.: 20-cv-1425-JGK**<br><br><br><br><br><br><br><br>**(Clean Air Act, 42 U.S.C. §§ 7401,** *et seq.)* |

**MEMORANDUM OF LAW IN REPLY TO DEFENDANTS'**
**OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**AND DEFENDANTS' CROSS-MOTION TO DISMISS FOR LACK OF JURISDICTION**

## TABLE OF CONTENTS

PREMILINARY STATEMENT ............................................................................................ 1

ARGUMENT ................................................................................................ 3

I. EPA Has Not Fulfilled Its Mandatory Duty Under CAA § 304, and This Court Has Jurisdiction Over Plaintiffs' Claim ................................. 3

II. Defendants' Proposed Schedule Is Unreasonable and Defendants Have Not Demonstrated that it is Impossible for Defendants to Meet the Plaintiffs' Proposed Schedule Which is Consistent with the Act's Two-Year Statutory Requirement for EPA to Promulgate FIPs. .............................................................. 9

CONCLUSION ............................................................................................ 21

Sierra Club v. Johnson,
    374 F. Supp. 2d 30 (D.D.C. 2005) ........................................................................3

Sierra Club v. Johnson,
    444 F. Supp. 2d 46 (D.D.C. 2006) ....................................................................9, 16

Sierra Club v. Thomas,
    658 F. Supp. 165 (N.D. Cal. 1987) ...................................................................10, 14

Wisconsin v. Envtl. Prot. Agency,
    938 F.3d 303 (D.C. Cir. 2019) ......................2, 5, 6, 7, 8, 9, 11, 13, 14, 18, 20, 21,

## Statutes

28 U.S.C. § 1391(e) ...................................................................................................9

42 U.S.C. § 7410(a)(2)(D)(i)(I) .................................................................................1

42 U.S.C. § 7410(c)(1) ...............................................................................1, 3, 4, 14, 22

42 U.S.C. § 7604(a)(2) ...........................................................................................3, 5, 8, 9

42 U.S.C. § 7604(d) ..................................................................................................22

## Federal Register

81 Fed. Reg. 74,504 ..................................................................................................18

81 Fed. Reg. 74,521 ..................................................................................................19

83 Fed. Reg. 65,878 ..................................................................................................18

85 Fed. Reg. 24,174 ..................................................................................................16

85 Fed. Reg. 31,286 ..................................................................................................16

## PRELIMINARY STATEMENT

The states of New Jersey, Connecticut, Delaware, and New York, the Commonwealth of Massachusetts, and the City of New York (collectively "Plaintiffs" or "Downwind States") bring this action under section 304(a)(2) of the Clean Air Act (the "Act") because the United States Environmental Protection Agency ("EPA") has failed to fulfill its mandatory, nondiscretionary duty to promulgate Federal Implementation Plans ("FIPs") to reduce excessive ozone pollution from certain upwind states within the mandatory two-year period set by statute. Many years after passage of the statutory deadlines, EPA has undisputedly failed to promulgate FIPs fully addressing Illinois, Indiana, Michigan, Ohio, Pennsylvania, Virginia, and West Virginia's (the "Upwind States") obligations under 42 U.S.C. § 7410(a)(2)(D)(i)(I) (the "Good Neighbor Provision"), 42 U.S.C. § 7410(c)(1), within two years of determining that the relevant state implementation plans ("SIPs") were missing or inadequate.

This is not the first time EPA has done so. In 2018, some of the same plaintiffs brought essentially the same action in this Court for similar reasons, and were awarded relief substantially similar to that sought here: an injunction ordering EPA to promulgate a regulation satisfying its duty under the Act by a date certain. Unfortunately, the action EPA took to comply with this Court's order (the "Close-Out Rule") failed to fully address Upwind States' Good Neighbor obligations, and was subsequently held unlawful and vacated by the U.S. Court of Appeals for the District of Columbia Circuit. *New York v. EPA*, 781 F. App'x 4, 7 (D.C. Cir. 2019). Accordingly, EPA is in the same position now as it was in *New York v. Pruitt*, No. 18-CV-406 (JGK), 2018 WL 2976018 (S.D.N.Y. June 12, 2018) ("*New York v. Pruitt*"), and this Court should once again order EPA to promulgate a FIP or FIPs that fully address the Upwind States' Good Neighbor obligations for the 2008 ozone NAAQS. Defendants' arguments that this Court lacks jurisdiction cannot be

1

squared with this Court's prior exercise of jurisdiction in factually indistinguishable circumstances, when this Court in 2018 ordered EPA to promulgate a rule, on a set schedule, to fulfill the same uncompleted statutory obligation. *See id.,* 2018 WL 2976018 at *3. This is the straightforward conclusion reached by every district court presented with similar facts, and EPA's elaborate jurisdictional defense, which is utterly unmoored from judicial precedent, is unavailing.

Further, in response to plaintiffs' proposed reasonable, feasible rulemaking schedule for a proposed rule by October 1, 2020 and a final rule by March 1, 2021, EPA's proposed schedule is unreasonably dilatory because it would not have the agency resolve its outstanding mandatory duty until December 15, 2022,  over 5 years after the agency's statutory deadline for most of the Upwind States first elapsed. In addition, EPA's proposed deadline is more than three years after the D.C. Circuit indisputably put EPA on notice that its obligation remained unfulfilled because of the remand of the CSAPR Update in *Wisconsin v. Envtl. Prot. Agency*, 938 F.3d 303 (D.C. Cir. 2019) ("*Wisconsin*") and vacatur of the CSAPR Close-Out in *New York v. EPA*. EPA's proposed compliance schedule flouts the Act's statutory deadlines and defies the D.C. Circuit's *Wisconsin* decision.  None of Defendants' proffered excuses justify the need for such a protracted rulemaking schedule, much less meet Defendants' burden to demonstrate that a more expeditious rulemaking would be impossible.  Remarkably, Defendants propose the same type of two-phase rulemaking schedule that the D.C. Circuit explicitly rejected in *Wisconsin*, and further propose to have three additional years to finalize their rulemaking effort when the statute gives EPA only two years to complete the task in the first instance.  Moreover, Defendants request for such a substantial amount of time is based, in large part, on their inexplicable claim that they do not have to begin the preliminary steps necessary to address ozone emissions from non-power plant sources—the sources from which the lion's share of cost-effective emissions reductions remain available—until

March 2021.  Defendants must act far more urgently to fulfill their mandatory duty in in order to minimize further environmental and public health harms to the Downwind States and their residents that will result from EPA's continued inaction.

## ARGUMENT

### I.  EPA Has Not Fulfilled Its Mandatory Duty Under CAA § 304, and This Court Has Jurisdiction Over Plaintiffs' Claim

Plaintiffs assert CAA § 304(a)(2), 42 U.S.C. § 7604(a)(2), as the basis for subject matter jurisdiction.  To establish jurisdiction under this provision, which allows suit to compel EPA action required by the Act yet unlawfully withheld, Plaintiffs need only "identify a mandatory, non-discretionary duty to act by a specific statutory deadline."  Defendants' Cross-Motion at 13. Plaintiffs have met that burden: EPA has a mandatory, nondiscretionary duty under 42 U.S.C. § 7410(c)(1) to promulgate a FIP within 2 years after the Administrator either finds that a state has failed to submit a required SIP or SIP revision, or finds that a required SIP or SIP revision submitted by a state does not satisfy the minimum criteria of the Act.

EPA acknowledges that this duty "obligated [it] to issue FIPs or approve SIPs" for most of the Upwind States no later than August 12, 2017 and the remainder of the Upwind States no later than July 15, 2018.  Defendants' Cross-Motion at 5. EPA further admits that the only relevant action it took prior to that date, the 2016 CSAPR Update, "only partially fulfill[ed] its obligations to address 22 upwind states' Good Neighbor obligations," leaving the Agency with outstanding an "obligation to promulgate further revised FIPs that would fully address . . . the upwind states' significant contributions to downwind nonattainment." *Id.* at 7. EPA points to no regulation it has promulgated since the CSAPR Update that purports to satisfy this obligation.

EPA nonetheless contends that its mandatory duty was actually discharged by the 2016 CSAPR Update and the 2018 Close Out. EPA Cross Motion at 14. EPA's theory is as improbable as it sounds. As noted, the CSAPR Update did not even purport to satisfy EPA's duties to promulgate FIPs fully addressing the Upwind States obligations under the Good Neighbor Provision for the 2008 ozone NAAQS. Three years after the CSAPR Update was promulgated, defendants explicitly "conceded that they failed to perform their nondiscretionary duties under the Clean Air Act because they did not promulgate FIPs to fully resolve interstate transport obligations under the Good Neighbor Provision for the defaulting states by August 12, 2017, as required by section 110(c)(1) of the Clean Air Act." *New York v. Pruitt*, 2018 WL 2976018, at *3.[1] Accordingly, the Court declared that EPA was "in violation of section 110(c)(1) of the Act, 42 U.S.C. § 7410(c)(1), for failing to timely perform its mandatory duty to promulgate a FIP for each of Illinois, Michigan, Pennsylvania, Virginia and West Virginia that fully addresses each state's obligations under […] the 'Good Neighbor Provision,' with regard to the 2008 ozone national

---

[1] Defendants now try to undo their prior concession with a conclusory statement in a footnote stating that, "[i]n light of the *Wisconsin* decision, EPA's concession in the *New York v. Pruitt* litigation proved to be incorrect as a legal matter." Defendants' Cross-Motion at 15 n.8. Nothing in the *Wisconsin* decision invalidates EPA's outstanding mandatory duty to promulgate a complete rulemaking fully addressing the Upwind States Good Neighbor obligations. The D.C. Circuit in *Wisconsin* did not hold that EPA had fulfilled its statutory obligation, but rather held the exact opposite: that EPA failed to satisfy its mandatory FIP obligations under the CAA by promulgating the partial CSAPR Update. Defendants have failed to explain why their prior concession was invalid.

ambient air quality standards." *New York v. Pruitt*, Order on Plaintiffs' Motion for Summary Judgment at 1 (Dkt No. 33, 18-cv-406 (JGK)).  And the action EPA subsequently undertook at this Court's direction in order to fulfill that unsatisfied mandatory duty, the Close-Out Rule, was vacated by the D.C. Circuit in *New York v. EPA*, 781 F. App'x at 7. (D.C. Cir.2019). Accordingly, that duty remains unfulfilled.  Thus, Defendants are manifestly wrong that this court lacks subject matter jurisdiction.  Furthermore, EPA is wrong that it has no outstanding mandatory duty upon which Plaintiffs may state a claim under Section 7604(a)(2).

Every court that has considered the issue has reached the same conclusion: where a rule purporting to fulfill an agency's mandatory, nondiscretionary duty is found deficient and vacated or remanded, the *status quo* prior to the agency's action is restored and the agency's mandatory statutory duty must then be met. *See, e.g.*, *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 32-33 (D.D.C. 2005) ("EPA's duty to act is still (or again) unfulfilled, because the Court of Appeals' order vacating [the agency's action] operated to restore the *status quo ante*") (citing *U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847,854-55 (D.C. Cir. 1987)); *Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004); *Oxfam Am., Inc. v. SEC*, 126 F. Supp. 3d 168, 172 (D. Mass. 2015) ("Were the rule otherwise, an agency could take inadequate action to promulgate a rule and forever relieve itself of the obligations mandated by Congress."); *Sierra Club v. EPA*, 850 F. Supp. 2d 300, 303 (D.D.C. 2012); *Am. Acad. of Pediatrics v. FDA*, 330 F. Supp. 3d 657, 664 (D. Mass. 2018).

EPA's brief mentions none of these cases.  Instead, EPA emphasizes the fact that the *Wisconsin* court remanded to EPA, but did not vacate the CSAPR Update, implying that this narrow remedial distinction somehow "irrevocably alters" the conclusion otherwise compelled by the relevant precedent. *See* Defendants' Cross-Motion at 15. This convoluted argument misses the

mark for at least two reasons.  First and foremost, *Wisconsin* did not address the Close Out Rule –
*i.e.*, the rulemaking EPA promulgated in direct response to this Court's Order in *New York v. Pruitt*
that EPA act immediately to fulfill its then-outstanding obligations under CAA section 304. As
EPA notes, it "previously fulfilled this duty first by promulgating the CSAPR Update in 2016 …
*and then by promulgating the Close-Out Rule in 2018*." Defendants' Cross-Motion at 14 (emphasis
added).  In *New York v. EPA*, the D.C. Circuit found the Close-Out Rule unlawful and vacated it,
against EPA's request that it remand the rule without vacatur.  781 F. App'x at 7.  As in *Sierra
Club v. Johnson* and other similar cases cited above, this vacatur, "operated to restore the *status
quo ante*."

Second, the D.C. Circuit's decision in *Wisconsin* to remand, rather than vacate, the CSAPR
Update is immaterial given that the court found that the CSAPR Update—the action EPA relies
on here as resolving Plaintiffs' claim concerning EPA's outstanding statutory obligation—is
"invalid" and cannot stand as-is.  The *Wisconsin* court remanded the CSAPR Update because of
the rule's incompleteness, but declined to vacate the rule so as to not deprive the downwind states
of the environmental and public health benefits from the partial, but incomplete, FIP during the
remand period saying, "vacatur would undermine 'the enhanced protection of the environmental
values covered by the [Clean Air Act].'" *Wisconsin,* 938 F.3d at 336 (citing *Envtl. Def. Fund, Inc.
v. EPA,* 898 F.2d 183, 190 (D.C. Cir. 1990). It goes without saying that the agency may not rely
on a decidedly invalid and unlawful rule to satisfy a statutory duty. Rather, the reasoning behind
*Johnson* and other cases holding that vacatur of an action taken to fulfill a mandatory duty should
not allow an agency to "take inadequate action to promulgate a rule and forever relieve itself of
the obligations mandated by Congress," *Oxfam*, 126 F. Supp. at 172, is equally applicable when
the court allows an action it has held inadequate under a mandatory duty to remain in effect solely

to avoid disrupting its other salutary (and presumably legally adequate) provisions. That is precisely what the *Wisconsin* court did with respect to the CSAPR Update.

In a similarly situated case dealing with an EPA particulate matter rule that had been remanded without vacatur, the U.S. District Court for the District of Columbia denied EPA's motion to dismiss the plaintiff's mandatory duty claim for lack of jurisdiction holding, "the Court finds it untenable to conclude that dismissal of Plaintiff's $PM_{2.5}$ interstate transport claim is warranted in this case, particularly where the D.C. Circuit has expressly determined that the part of the Rule underlying Plaintiff's claim is 'invalid' and 'unlawful.'" *Sierra Club v. EPA*, No. 10-CV-01541 (CKK) at *4 (D.D.C. June 14, 2016) ("*Sierra Club*").[2]  Similarly, the *Wisconsin* court specifically determined that the CSAPR Update is invalid and unlawful with respect to its failure to fully address the Upwind State's Good Neighbor obligations in accordance with the downwind state's attainment deadline. *Wisconsin,* 938 F.3d at 320, 336.

EPA rests its entire jurisdiction argument on a single case from 1983 that is not applicable here, *Environmental Defense Fund, Inc. v. Gorsuch,* 713 F.2d 802 (D.C. Cir. 1983) ("*EDF*").  *EDF* does not deal with mandatory statutory duties at all, but is instead a case about when a court order to promulgate regulations is brought to a close. The court in *EDF* makes clear its reasoning is specific to court orders and is concerned that the courts will be bound to the "continuing

---

[2] The court in *Sierra Club* went on to hold the case in abeyance, at the request of the plaintiffs, pending EPA's completion of an action on remand. Abeyance is not appropriate here given EPA's long history of non-compliance with its mandatory statutory obligation to promulgate fully-compliant Good Neighbor FIPs for the 2008 ozone standard, as already recognized by this Court in *New York v. Pruitt*.

supervision" of an Agency's implementation of its responsibilities. *EDF,* 713 F.2d at 812. Defendants' brief makes no effort to explain how the holding of *EDF* applies to the mandatory duty of a federal agency. Plaintiffs have brought a citizen suit claim for failure to fulfill a mandatory, nondiscretionary *statutory* duty, and are not arguing that Defendants have failed to fulfill, or have unreasonably delayed, their obligations under a court order. By citing to *EDF*, Defendants are conflating two different obligations: 1) their statutory obligations under the Act to promulgate FIPs that fully address the Upwind State's Good Neighbor obligations, and 2) their separate obligation to respond to the *Wisconsin* court's remand. [3] Plaintiffs are not suing over the timeliness of EPA action on remand, but for non-fulfillment of a long overdue mandatory statutory duty. *EDF* has no applicability to this obligation.

EPA's argument is particularly absurd in these circumstances given that the Update was, on its face, a partial remedy that did not purport to fully discharge EPA's statutory duty. Even with the Update in place, EPA had unmet statutory obligations such that this Court in *Pruitt* found it appropriate to direct EPA to issue a complete remedy by a date certain. It cannot be that in finding the Update legally inadequate, the D.C. Circuit somehow transformed the Update into an action that completely discharged EPA's previously unfulfilled statutory obligation. And, as noted in *Pruitt*, EPA explicitly "conceded that they failed to perform their nondiscretionary duties under

---

[3] Just because the same action by EPA could satisfy both of these obligations does not extinguish Plaintiffs' independent remedy under CAA § 304(a)(2), 42 U.S.C. § 7604(a)(2), to compel mandatory EPA action unlawfully withheld, over which federal district courts, not the D.C. Circuit, has exclusive federal jurisdiction. Nothing in either the CAA or the D.C. Circuit's decision in *Wisconsin* provides or even suggests that these remedies are mutually exclusive.

the Clean Air Act because they did not promulgate FIPs to fully resolve interstate transport obligations under the Good Neighbor Provision for the defaulting states by August 12, 2017, as required by section 110(c)(1) of the Clean Air Act." *New York v. Pruitt*, 2018 WL 2976018 at *3. Defendants now try to undo their prior concession with a conclusory statement in a footnote stating that, "[i]n light of the *Wisconsin* decision, EPA's concession in the *New York v. Pruitt* litigation proved to be incorrect as a legal matter." Defendants' Cross-Motion at 15 n.8.  Nothing in the *Wisconsin* decision invalidates EPA's outstanding mandatory duty to promulgate a complete rulemaking fully addressing the Upwind States Good Neighbor obligations and Defendants have failed to explain why their prior concession was invalid. And given the D.C. Circuit's vacatur of the Close-Out in *New York*, the situation thus comes back to this Court in a factually indistinguishable posture from the circumstances in *Pruitt.*

For these reasons, **t**his Court has subject matter jurisdiction because section 304(a)(2) of the Act, 42 U.S.C. § 7604(a)(2), authorizes any person, after due notice, to sue to compel the performance of a nondiscretionary duty under the Act. It cannot be credibly disputed that EPA has failed to complete its mandatory statutory duty in this case. Venue in this Court is also proper pursuant to 28 U.S.C. § 1391(e) because this suit names an agency of the United States and an officer of the United States acting in his official capacity, and a substantial part of the events or omissions giving rise to the Downwind States' claims occurred in this judicial district.

**II. Defendants' Proposed Schedule Is Unreasonable and Defendants Have Not Demonstrated that it is Impossible for Defendants to Meet the Plaintiffs' Proposed Schedule Which is Consistent with the Act's Two-Year Statutory Requirement for EPA to Promulgate FIPs.**

Where an agency has "failed to meet the statutory deadline for a nondiscretionary act, the Court may exercise its equity powers "to set enforceable deadlines both of an ultimate and an intermediate nature[.]" *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 52 (D.D.C. 2006) (internal

citations omitted). While the courts have discretion to set enforceable deadlines for an agency to meet an overdue nondiscretionary act, the agency "remains obligated to issue *regulations within the time frame mandated by Congress*." *Sierra Club v. Thomas*, 658 F. Supp. 165, 171 (N.D. Cal. 1987) (emphasis added).

Where, as here, the nondiscretionary deadline has passed, the agency may avoid imposition of an "immediate deadline" where it establishes that it has used the "utmost diligence in discharging [its] statutory responsibilities" or where to do so would "call [the Administrator] 'to do an impossibility.'" *Id.* The Court should "scrutinize carefully claims of impossibility and 'separate justifications grounded in the purposes of the Act from the footdragging efforts of a delinquent agency.'" *Id.* at 53. A Court "may extend time for compliance [only where] it would be infeasible or impossible for EPA, acting in good faith, to meet the deadline[.]" *Nat'l Resources Defense Council v. EPA*, 797 F. Supp. 194, 196-97 (E.D.N.Y. 1992) (citations omitted). Plaintiffs' reasonable, feasible schedule provides for a full remedy within a timeframe congruent with the Clean Air Act's statutory deadlines. In response, Defendants have failed to demonstrate the impossibility of meeting Plaintiffs' proposed schedule and instead have proposed an unlawful and unreasonable schedule far beyond the time period provided in the statute.

Plaintiffs proposed schedule is reasonable, feasible, and provides an appropriate schedule for a single comprehensive rulemaking that fully resolves all remaining Good Neighbor obligations of the Upwind States for the 2008 ozone NAAQS by the 2021 ozone season. *See* Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, Doc. 33-1 ("Plaintiffs' MOL"), at 20; Declaration of Sharon Davis in Support of Motion for Summary Judgment, Doc. 33-4 ("Davis Decl. ") ¶ 36; Declaration of Michael Sheehan in Support of Plaintiffs' Motion for Summary Judgment, Doc. 33-5 ("Sheehan Decl. ") ¶¶ 59-82; Declaration of

Tracy R. Babbidge in Support of Plaintiffs' Motion for Summary Judgment, Doc. 33-6 ("Babbidge Decl. ") ¶ 27; Reply Declaration of Michael Sheehan in Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment, dated June 18, 2020  ("Sheehan Reply Decl.") ¶ 7; Reply Declaration of Sharon Davis in Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment, dated June 19, 2020 ("Davis Reply Decl.") ¶ 17. EPA should be required to issue proposed FIPs fully addressing the Upwind States' respective significant contributions to interstate transport for the 2008 ozone NAAQS by October 1, 2020 and promulgate final FIPs no later than March 1, 2021. *See* Sheehan Decl. ¶¶ 59-61; Sheehan Reply Decl. ¶ 7; Davis Reply Decl. ¶ 17.

In contrast, Defendants' proposed rulemaking schedule begins with yet another partial rule that will not fully address the Upwind States' Good Neighbor obligations by either the 2021 attainment deadline, or as expeditiously as practicable. EPA proposes only an initial first step by March 15, 2021, and fails to follow up with a second rulemaking providing full relief until as late as December 2022. This schedule is unreasonably dilatory, fails to comply with the Act's statutory timeline, and does not comport with *Wisconsin.*  None of Defendants' proffered excuses justify the need for the protracted rulemaking schedule they propose, much less establish Defendants' burden of showing that it would be impossible to meet their overdue obligation on the timeline Downwind States have proposed. Defendants must act far more urgently to fulfill their mandatory duty expeditiously to minimize further environmental and public health harms to the Downwind States and downwind residents

Defendants' proposed schedule fundamentally fails to fulfill EPA's mandatory, nondiscretionary duty with sufficient speed to adequately protect the Downwind States and downwind residents, as the Act requires. The clear intent of the Good Neighbor provision is to

11

ensure that downwind states, such as Plaintiffs here, are not unfairly burdened by inadequately controlled emissions from upwind states that significantly contribute to downwind nonattainment of the NAAQS. The Downwind States and their residents have been continually harmed by emissions from the Upwind States that significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone NAAQS since EPA first failed to fulfill their mandatory duty to promulgate FIPs for the Upwind States as required by the Act. If Defendants' proposed schedule is adopted, a full and final remedy would not be in place for the 2021 or 2022 ozone seasons, and Plaintiffs would only begin receiving relief under a fully compliant rule for the 2023 ozone season, at least five full ozone seasons beyond EPA's initial statutory deadlines for several of the Upwind States. Such a delayed schedule places unfair burdens on the Plaintiffs and their businesses and subjects residents to continuing serious health harms, while the Upwind States, conversely, are allowed to continue emitting ozone precursors at unlawful and inequitable rates.

Although EPA believes that "a limited rule, focused on near-term emission-reduction requirements that are actually implementable by the 2021 ozone season make[] sense from the standpoint of prioritizing regulatory efforts," Idsal Declaration ¶ 13, another partial rulemaking does not guarantee Plaintiffs will receive complete or even significant relief in the near term and does nothing to resolve EPA's overdue mandatory duty to *fully* resolve the Upwind States obligations under the Good Neighbor provision. As explained in Plaintiffs' Motion for Summary Judgment, certified air quality monitoring data for the 2018 and 2019 ozone seasons and air pollution transport modeling all show that the New York Metropolitan Area will not meet the 2021 attainment deadline and that the Area is unlikely to meet future attainment deadlines. *See* Davis Decl. ¶¶ 23, 24, 32, 33; Sheehan Decl. ¶¶ 30, 31, 49; Babbidge Decl. ¶¶ 19, 21; Davis Reply Decl. ¶ 6. An incomplete rulemaking that only partially addresses the Upwind States' obligations

under the Good Neighbor provision is unlikely to result in attainment for the New York City metropolitan area. If Defendants wish to prioritiz[e] regulatory efforts," *see* Idsal Decl. ¶¶ 4, 13, they should not delay the process with another incomplete rule. Instead, EPA should devote sufficient resources to fulfill their mandatory, nondiscretionary duty by fully resolving the Upwind States' obligations under the Good Neighbor provision in time for the 2021 ozone season.

Further, Defendants proposed schedule is inconsistent with the essential holding of *Wisconsin.* The D.C. Circuit in *Wisconsin* held that EPA must promulgate FIPs that "require upwind States to eliminate their significant contributions [to downwind air quality problems] in accordance with the deadline by which downwind states must come into compliance with the NAAQS." *Wisconsin*, 938 F.3d at 313.  On that basis, the court found that EPA's two-phased approach for reducing upwind ozone violated the law because it provided only a first, partial remedy in time for the relevant downwind deadlines.  EPA's bifurcated proposal here commits the identical flaw.  It is the same sort of two-phased approach found unlawful in *Wisconsin* that would impermissibly delay a complete remedy and unlawfully "determine that upwind States contribute to downwind nonattainment in a manner the agency deems 'significant,' but then still allow those upwind contributions to persist out of step with the deadline for downwind states to come into attainment." *Id.* at 320.

Indeed, the current deadline for the States' compliance with the 2008 ozone NAAQS is July 2021,[4] a deadline that Defendants' acknowledge they must meet absent a showing of

---

[4] While Defendants' delay means it is now too late for a FIP to be promulgated that fully addresses the Upwind States Good Neighbor obligations in time to affect the 2020 ozone season, EPA can still act in time to fulfill their mandatory duty by the July 2021 NAAQS attainment deadline.

impossibility.  *See* Defendants' Cross-Motion at 25 (explaining obligation to evaluate strategies that can be implemented in "2021 and/or a later year on a showing of impossibility by 2021"). But Defendants' proposed schedule fails to implement the Good Neighbor Provision as expeditiously as practicable, proposing only one phase of emission reductions in time for the coming July 2021 attainment deadline, and would not fulfill EPA's mandatory duty until a second phase of reductions that EPA advises may not occur until December 2022.  Such a bifurcated approach mirrors the defects the D.C. Circuit already has found unlawful, and Defendants' proposal simply flouts the court's holding in *Wisconsin*.

Defendants' approach would also make a mockery of the two-year deadline for EPA action required in 42 USC § 7410(c)(1).  EPA "remains obligated to issue regulations within the time frame mandated by Congress," *Sierra Club v. Thomas*, 658 F. Supp. at 171; *see also Wisconsin*, 938 F.3d at 313 ("upwind states must eliminate their significant contributions 'consistent with the provisions' of Title I of the Act.").  As measured from the time EPA was indisputably on notice of its unmet obligation—the October 2019 decision in *New York* that vacated the Close-Out— Defendants have unreasonably and unlawfully proposed a rulemaking schedule in excess of three years.  This request is irreconcilable with Congress's two-year deadline.  *See* 42 U.S.C. § 7410(c)(1).

None of the excuses Defendants' raise support the need for the drawn-out rulemaking timeline they propose, and Defendants' proposed schedule is entirely unjustified.  EPA would not even start the bulk of its task to develop a final comprehensive rule until *after* March 2021.  *See*, Idsal Decl.  ¶ 159.  Under the two-phased approach laid out in its brief and supporting declarations, EPA proposes to achieve some limited, short-term ozone reductions from power plants in a first phase of rulemaking that would culminate in March 2021.  *Id.*  And only then would EPA start

14

work on its proposed "Rulemaking #2," addressing "multiple industrial sectors, not just the power sector." *Id.*, ¶ 14, 159.  In other words, EPA proposes to wait a full seventeen months from the D.C. Circuit's October 2019 *New York* decision—at which time EPA was indisputably on notice that it was again on the clock to implement a full good neighbor remedy—before even starting to gather the data or taking other preliminary steps supposedly necessary to address sources other than electric generating units ("non-EGUs"). And it is those non-EGU sources that are likely to represent the lion's share of available emission reductions.  *See* EPA, *Final Technical Support Document for the Cross-State Air Pollution Rule for the 2008 Ozone NAAQS: Assessment of Non-EGU NOx Emission Controls, Cost of Controls, and Time for Compliance Final TSD* at 11-17, tbl. 3 (Aug. 2016) (estimating large quantities of available emission reductions from various types of non-EGU sources at levels EPA has already deemed to be cost-effective).

Defendants justify this type of sequenced approach based upon the assertion that it is too burdensome for EPA to simultaneously work on the issues that it has delineated between "Rulemaking #1" and "Rulemaking #2."  But it is not.  There is no justifiable reason why the agency cannot conduct the data gathering and other tasks that it has designated as part of Rulemaking 2 in parallel with the tasks it has placed in Rulemaking 1. *See* Sheehan Reply Dec. ¶¶ 22-24.  EPA suggests that because staff will be actively engaged in addressing Rulemaking 1, the agency somehow cannot also address tasks related to Rulemaking 2. Idsal Decl.  ¶ 81; *see also* ¶ 94 (EPA staff will also be working on the 2015 NAAQS SIP responses). Defendants fail to explain why EPA could not devote any additional personnel or other resources to this effort that may be needed.  *See* Sheehan Reply Dec. at 23.  Indeed, by setting a mandatory two-year deadline,

Congress plainly contemplated that EPA would deploy the necessary resources to act swiftly to address good neighbor violations.[5]

As it has already held, this Court has the authority to order the EPA to comply with a non-discretionary duty by a date certain. *New York v. Pruitt,* 2018 WL 2976018, at *3 (citing, *Nat'l Resources Defense Council v. EPA*, 797 F. Supp. 194, 196 (E.D.N.Y. 1992); *Atl. Terminal Urban Renewal Area Coal. v N.Y.C. Dep't of Envtl. Prot.*, 740 F. Supp. 989, 997 (S.D.N.Y. 1990); *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 52 (D.D.C. 2006)). Where an agency has "failed to meet the statutory deadline for a nondiscretionary act, the court may exercise its equity powers "to set enforceable deadlines both of an ultimate and an intermediate nature[.]" *Sierra Club*, 658 F. at 171. The Court should order EPA to meet its mandatory statutory obligation in time for the start of the 2021 ozone season.  As Plaintiffs have previously noted, EPA's failure to act to this point has unfortunately foreclosed the possibility of any relief in time for the 2020 ozone season.  But EPA still has time to meet their obligation by the 2021 ozone season and before the July 2021 attainment deadline. EPA should not be allowed to delay an obligation so long overdue for yet another ozone season.

---

[5] Because EPA's obligation here is in the form of a mandatory duty with a mandatory deadline—now long overdue—the agency should prioritize this task over other rulemakings that are discretionary or not subject to statutory deadlines.  EPA's many efforts on other such rulemakings, including many under the Act, show the breadth of the agency's capacity.  *See, e.g.*, 85 Fed. Reg. 24,174 (April 20, 2020) (EPA rule rolling back emissions standards for light-duty vehicles); 85 Fed. Reg. 31,286 (May 22, 2020) (EPA rule reconsidering prior findings about mercury and other toxic emissions from power plants).

Plaintiffs' proposed schedule is reasonable and achievable.  EPA explicitly conceded in a prior case in this Court concerning substantially the same FIP obligations that a deadline of less than 8 months was a feasible amount of time to promulgate a final action fully addressing its obligations under the Good Neighbor Provision for the 2008 ozone NAAQS for several Upwind States. *See* SUF ¶10; *New York v. Pruitt*, 2018 WL 2976018 *3.  In fashioning an order to ensure Defendants' compliance, this Court should measure EPA's time to fulfill its mandatory statutory duty from October 1, 2019, the date of the D.C. Circuit's decision in *New York v. EPA,* 781 F. App'x at 7. The D.C. Circuit's vacatur of the FIPs promulgated in response to this Court's *New York v. Pruitt* decision put EPA again on definitive and undeniable notice that their mandatory, nondiscretionary duty has not been fulfilled. Plaintiffs' proposed compliance schedule would give EPA approximately 17 months from October 1, 2019 to March 2021 to promulgate a final rule fulfilling all of the agency's statutory obligations.  This schedule is within the 2-year statutory period to promulgate FIPs under the Act and is particularly reasonable given how many years is EPA beyond its statutory deadlines and where EPA should already have accomplished much of the underlying work.

EPA's challenges to the Plaintiffs' declarations and proposed schedule do not demonstrate it is impossible for EPA to meet Plaintiffs' proposed schedule.  *See* Idsal Decl.  ¶¶ 175 – 183. First, EPA's assertion that it was "only put on notice of an outstanding FIP duty in October of 2019," *id.* ¶ 180 is not credible. In *North Carolina v. EPA*, 531 F.3d 896, 911-12 (D.C. Cir.), amended in part on reh'g, 550 F.3d 1176 (D.C. Cir. 2008), the court held unequivocally that EPA must align upwind emissions reductions with statutory attainment deadlines. Nonetheless, when EPA promulgated the CSAPR Update, the agency conceded that the rule only "partially addresses EPA's obligation under the Clean Air Act to promulgate FIPs to address interstate emission transport for the 2008

17

ozone NAAQS." 81 Fed. Reg. at 74,504. EPA was again reminded of this unmet obligation in *New York v. Pruitt* in 2018, which culminated in the Court's declaration of EPA's failure to meet its statutory obligations and an order to complete its duty by specific dates. *See New York v. Pruitt,* No. 18-cv-406, 2018 WL 2976018, at \*4. The CSAPR Close-Out rule then subsequently found that, in spite of the CSAPR Update's admitted partiality, EPA had "no further obligation under [the Act] to establish requirements for power plants or any other emission source in these states to further reduce transported ozone pollution […] with regard to this NAAQS." 83 Fed. Reg. 65,878. EPA's analysis relied on 2023 as the relevant future analytic year, inexplicably ignoring the states' July 2021 attainment deadline. *Id.* With the *Wisconsin* court's rejection of the Update, it should have been apparent to EPA that there was significant risk that the CSAPR Close-Out would be invalidated. In *Wisconsin*, the D.C. Circuit found it necessary to restate its prior holding in *North Carolina* that EPA must adhere to the statutory deadline for upwind state compliance, and the *New York* decision vacated the Close-Out on essentially the same well-settled grounds. *See, Wisconsin,* 938 F.3d at 313.  The agency should not be rewarded for pursuing a faulty line of rulemakings with copious additional time to fix their mistake. If the agency wished to take a risky approach resolving their obligations with respect to the Good Neighbor provision, they should have been prepared to expeditiously correct the rule in the event of invalidation.

Second, EPA also has not demonstrated the impossibility of a single, comprehensive rulemaking addressing both EGU and non-EGU sources within the statutory timeframe and has failed to adequately explain why Rulemaking #2 could not proceed concurrently with Rulemaking #1. EPA suggests that because staff will be actively engaged in addressing Rulemaking #1, they somehow cannot also address data gathering and other tasks related to Rulemaking #2. *Id.*, ¶ 81; *see also* ¶ 94 (EPA staff will also be working on the 2015 NAAQS SIP responses). But these

conclusory assertions amount to nothing more than insufficient "[m]ere apprehension the agency cannot meet a deadline," *Alabama Power Co. v. Costle*, 636 F.2d 323, 359 (D.C. Cir. 1979).

Similarly, EPA outlines various technical and administrative steps that its bifurcated rulemaking must undergo, Idsal Decl. ¶¶ 179-182, but not only over-estimates the time necessary to undertake each rulemaking step—*see* Sheehan Reply Decl. ¶¶ 26-36; Davis Reply Decl. ¶¶ 15-16—but also ignores the fact that repeating the rulemaking process up to three times, as opposed to once under Plaintiffs' schedule, adds many unnecessary months to its proposed schedule. Sheehan Reply Decl. ¶¶ 37-38. As a result, EPA has not met its burden to demonstrate the impossibility of Plaintiffs' proposed rulemaking schedule that is within the statutory timeframe and will finalize these long-overdue FIPs by the 2021 ozone season.

Third, EPA claims that inadequate information about non-EGU sources of NOx prevents the agency from acting more expeditiously to fully resolve the Upwind States' obligations under the Good Neighbor provision. Idsal Decl. ¶¶ 126 – 150. Initially, EPA overstates any gaps in data and analysis for non-EGUs. *See* Sheehan Reply Decl. ¶¶ 14-18; Davis Reply Decl. ¶¶ 13-14. To the extent EPA needs additional information on non-EGUs, EPA does not explain is why it has failed to act to address these uncertainties in the nearly four years since \ promulgating the CSAPR Update in October of 2016.  There, EPA pointed to "greater uncertainty" regarding ozone precursor emissions mitigation potential from non-EGUs as the reason the CSAPR Update only concerns emissions from EGUs. *See* 81 Fed. Reg. 74,521; Idsal Decl. ¶ 65. EPA's lack of diligence in resolving information and analytic shortcomings with respect to non-EGUs is not a valid excuse for continued delay now. Sheehan Reply Decl. ¶¶ 19-20.

EPA's lengthy discussion of the various inadequacies in its non-EGU data and the challenges of collecting and analyzing such data and promulgating a rule addressing these sources

do not demonstrate an impossibility. While EPA might ideally prefer to have more perfect information about non-EGU emissions sources, the desire for perfect information must give way to the urgent need for a fully compliant FIP. As the *Wisconsin* court noted, "[s]cientific uncertainty [. . .] does not excuse EPA's failure to align the deadline for eliminating upwind States' significant contributions with the deadline for downwind attainment of the NAAQS." *Wisconsin*, 938 F.3d at 302-03. The *Wisconsin* court further explained:

> "'Questions involving the environment are particularly prone to uncertainty,' but 'the statutes and common sense demand regulatory action to prevent harm, even if the regulator is less than certain.' *Ethyl Corp. v. EPA,* 541 F.2d 1, 24-25 (D.C. Cir. 1976) (en banc). As a result, 'EPA [cannot] avoid its statutory obligation by noting [scientific] uncertainty . . . and concluding that it would therefore be better not to regulate at this time.' *Massachusetts v. EPA*, 549 U.S. 497, 534 (2007)."

*Id.* at 319. EPA has much information in its possession regarding non-EGU sources, and even if that information may be less than their desired ideal, EPA is well past their statutory deadlines and must dedicate the necessary resources to urgently fulfill their mandatory duty.

Similarly, "administrative infeasibility, like scientific uncertainty, cannot justify the Update Rule's noncompliance with the statute." *Wisconsin*, 938 F.3d at 319. *See also Natural Resources Defense Council v. EPA*, 797 F. Supp. at 197-98 ("EPA's generalized complaints, both that the guidelines are complex and of enormous scope and that there are competing demands on their resources, do not amount to a claim of impossibility sufficient to justify a departure from a Congressional mandate . . . in absence of other circumstances making compliance with statutory mandate impossible, 'competing concerns' do not establish Administrator's 'good faith.'" (internal citation omitted)). Alleged administrative burdens do not justify further delay here, particularly given the long history of EPA's failure to act. Given the length of EPA's delay in fulfilling their mandatory duty and the seriousness of the harms that will result from EPA's continued delay,

promulgating a rule that fully addresses the Upwind States' obligations under the Good Neighbor provision with respect to the 2008 ozone NAAQS should be among the agency's top priorities.

In any event, it is possible for EPA to obtain any additional data it believes is necessary on non-EGUs within the schedule the Downwind States have proposed. *See* Sheehan Reply Decl. ¶ 21-24. The Plaintiffs have demonstrated that EPA, by focusing on large stationary non-EGU sources, could include these sources in a single-comprehensive rulemaking within the timeframe proposed. *Id.* ¶¶ 14-18; Davis Reply Decl. ¶ 14. If additional data are needed, and EPA has not taken steps since the *Wisconsin* and *New York* decisions to obtain them, EPA could promptly issue an Advance Notice of Proposed Rulemaking, which would make these data available to the agency in time to include in a proposed comprehensive rulemaking in the fall of 2020, as Downwind States propose. Sheehan Decl. ¶ 23. Therefore, EPA has not demonstrated that a need for additional data for non-EGUs makes it impossible for it to issue FIPs for the Upwind States within the statutory timeframe on the schedule proposed by Plaintiffs.

In summary, EPA's projected proposed rulemaking schedule is unreasonably slow, inconsistent with the Act and the *Wisconsin* decision, and exposes the Downwind States and their residents to yet further inequitable harms. The Plaintiffs urge this Court to end EPA's ongoing delays, and to instead order EPA to urgently fulfill its long-overdue duty to promulgate FIPs that fully address the Upwind States' obligations under the Good Neighbor provision by March 1, 2021.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' cross-motion for summary judgment for lack of subject matter jurisdiction be denied. Plaintiffs further request that

the court grant summary judgment (1) declaring that EPA is in violation of section 110(c)(1) of the Act, 42 U.S.C. § 7410(c)(1), for failing to perform a mandatory duty to promulgate a FIP for each of the Upwind States that fully addresses these states' respective obligations under the Good Neighbor Provision, with regard to the 2008 ozone NAAQS; (2) requiring EPA to perform its mandatory duty to sign and disseminate by October 1, 2020, a notice of a proposed action fully addressing the obligations under the Good Neighbor Provision for the 2008 ozone NAAQS for the Upwind States, and to promulgate by March 1, 2021, a final action fully addressing the obligations under the Good Neighbor Provision for the 2008 ozone NAQQS for the Upwind States; (3) awarding Plaintiffs the costs of litigation, including reasonable attorneys' fees pursuant to 42 U.S.C. § 7604(d); (4) retaining jurisdiction over this matter for purposes of enforcing and effectuating the Court's order; and (5) granting any such further relief as the Court deems just and proper.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:  /s/  *Robert J. Kinney*
Robert J. Kinney
Deputy Attorney General
Robert.Kinney@law.njoag.gov

CERTIFICATION OF COMPLIANCE WITH INDIVIDUAL PRACTICES:

I hereby certify that this Memorandum of Law, excluding the caption, table of contents and authorities, and this Certification, contains 6,978 words and complies with the Section 2. D. of the Individual Practices of Judge John G. Koeltl.

By:  /s/ Robert J. Kinney
Deputy Attorney General

LETITIA JAMES
*Attorney General of New York*
By: */s/ Morgan A. Costello*
MORGAN A. COSTELLO
CLAIBORNE E. WALTHALL
*Assistant Attorneys General*
The Capitol
Albany, NY 12224
(518) 776-2380
claiborne.walthall@ag.ny.gov
morgan.costello@ag.ny.gov

MAURA HEALEY
*Attorney General of Massachusetts*
By: */s/ Andrew Goldberg*
I. Andrew Goldberg
*Assistant Attorney General*
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA  02108
(617) 963-2429
Andy.Goldberg@mass.gov

KATHLEEN JENNINGS
*Attorney General of State of Delaware*
By: */s/  Valerie S. Edge     *
Valerie S. Edge
Christian Douglas Wright
*Deputy Attorneys General*
Delaware Department of Justice
102 W. Water Street
Dover, DE 19904
(302) 257-3219
valerie.edge@delaware.gov
christian.wright@delaware.gov

WILLIAM TONG
*Attorney General of Connecticut*
By:  */s/ Jill Lacedonia*
Jill Lacedonia
*Assistant Attorney General*
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov