UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW JERSEY, STATE OF CONNECTICUT, STATE OF DELAWARE, STATE OF NEW YORK, COMMONWEALTH OF MASSACHUSETTS, *and* CITY OF NEW YORK,<br><br>　　　　　　　*Plaintiffs,*<br><br>　　v.<br><br>ANDREW R. WHEELER, *Administrator of the United States Environmental Protection Agency; and the* UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>　　　　　　　*Defendants.* | Case No.: 1:20-cv-01425-JGK |

**REPLY DECLARATION OF SHARON C. DAVIS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

I, Sharon C. Davis, declare as follows:

1.　　　I am the Manager of the Bureau of Evaluation and Planning within the Division of Air Quality at the New Jersey Department of Environmental Protection ("NJDEP"). My background and qualifications are fully set forth in my prior declaration dated May 14, 2020 and submitted in this matter in support of plaintiffs' motion for summary judgment. *See* Doc. 33-4 (Davis May 14, 2020 Decl.)

2.    I am familiar with the facts and circumstances of this matter, which seeks to compel defendants Administrator Andrew Wheeler and the United States Environmental Protection Agency (collectively, EPA), to promulgate federal implementation plans (Federal Plans or FIPs) for Illinois, Indiana, Michigan, Ohio, Pennsylvania, Virginia and West Virginia (the Upwind States) that fully address their outstanding obligations under the "Good Neighbor Provision" of the federal Clean Air Act (Act) to prohibit interstate transport of air pollution that significantly contributes to nonattainment or interferes with maintenance of the 2008 ozone national ambient air quality standards (2008 ozone NAAQS) in New Jersey, Connecticut, Delaware, New York, Massachusetts, and the City of New York (Plaintiff States).

3.    I submit this declaration in response to EPA's opposition and cross-motion papers filed June 5, 2020, including EPA's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment, Doc. 36-1 (EPA Opp.) and the Declaration of Anne Idsal and accompanying attachment, Docs. 36-3 and 36-4 (Idsal Decl.), and in further support of plaintiffs' motion for summary judgment.

4.    Defendants have conceded that they have an obligation to promulgate FIPs fully addressing the Upwind States significant contributions to downwind nonattainment. *See e.g.* Idsal Decl ¶ 5, 68, 79, 99. Under the statute, "[t]he

Administrator *shall* promulgate a Federal implementation plan at any time within 2 years after the Administrator - (A) finds that a State has failed to make a required submission or finds that the plan or plan revision submitted by the State does not satisfy the minimum criteria established under subsection (k)(1)(A), or (B) disapproves a State implementation plan submission in whole or in part." 42 U.S.C. § 7410(c)(1) (emphasis added). For most of the Upwind States the statutory 2-year period began on August 12, 2015 when EPA issued a finding of failure to submit for Illinois, Michigan, Pennsylvania, Virginia, and West Virginia with respect to their 2008 ozone NAAQS SIPs. The statutory 2-year period for EPA to fulfill its mandatory duty by promulgating FIPs bringing those states into compliance elapsed on August 12, 2017. Now, nearly 3 years later, that mandatory duty remains unfulfilled. The remaining question is how quickly EPA can fulfill their overdue obligation to address the Upwind States outstanding obligations under the Good Neighbor provision.

5.      Defendants proposed rulemaking schedule is insufficiently expeditious and would subject New Jersey, the other Plaintiff States, and our residents to yet further serious and disproportionate harms. Given the seriousness of the harms at stake and the length of EPA's delay thus far in fulfilling their mandatory duty, the most expeditious possible rulemaking schedule should be implemented. Defendants' proposed rulemaking timeline falls far short of that need.

6.      As explained in detail in my prior declaration, it is all but certain that the New York City metropolitan area will not achieve attainment of the 2008 ozone NAAQS by the July 21, 2021 attainment deadline due to cross-state emissions from upwind states. Davis May 14, 2020 Decl. at 20. When that happens the New York City metropolitan area will be downgraded from "serious" nonattainment to "severe" status under 42 U.S.C. § 7511(b)(2), and New Jersey will again be burdened with additional regulatory requirements that will further burden and potentially over control our already well controlled in-state emissions sources.

7.      While New Jersey and the other downwind states bear the burdens of nonattainment, the upwind states continue to have lax air pollution standards that allow sources in upwind states to disproportionately emit ozone precursor pollutants. Defendants' slow rulemaking timeline would allow this unfair and unjust imbalance between the upwind and downwind states to continue for years beyond the 2-year statutory deadline and would delay final resolution of EPA's duty to resolve the upwind states obligations under the Good Neighbor provision until as late as December 15, 2022. *See* Idsal Decl ¶ 8, 9, 15, 102, 150, 186.

8.      Defendants proposed timeline also exposes New Jersey residents to yet further detrimental health consequences. Repeated exposure to ozone pollution may cause permanent lung damage and ozone can aggravate other medical conditions such as bronchitis, heart disease, emphysema, and asthma, and can

reduce lung capacity. The detrimental effects of ozone pollution on lung function

are even more troubling in the context of our current coronavirus pandemic. *See*

*e.g.* Centers for Disease Control and Prevention, Coronavirus Disease 2019 -

People with Moderate to Severe Asthma, available at

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html

9.    The serious public health consequences of ozone pollution led the

EPA to revise ozone NAAQS in 2015 from the 75 parts per billion (ppb) standard

promulgated in 2008 which is at issue in this case, to a more stringent 70ppb

standard in 2015. Final Rule, National Ambient Air Quality Standards for Ozone,

80 Fed. Reg. 65,291 (December 28, 2015). By increasing the stringency of the

standard in 2015, EPA found that a standard more stringent than 75ppb was

necessary to protect public health.

10.    Yet despite the existence of the more stringent 70ppb standard, EPA

has failed to timely act to prevent ozone precursor pollution from Upwind States

that puts the New York City metropolitan area well out of attainment with the less

stringent 2008 standard. As the EPA has failed to take action preventing

unlawfully high emissions of ozone precursor pollutants in contravention of the

Good Neighbor provision, millions of downwind residents are exposed to

unhealthy levels of ozone well above even the less stringent 75ppb standard.

Every ozone season that passes without action by EPA will result in further serious

health consequences for New Jersey residents and the residents of other downwind states.

11.    EPA's proposal delays final action resolving the Upwind States obligations until as late as the 2023 ozone season, over five years after the EPA first failed to meet their statutory deadline to promulgate a FIP for several of the Upwind States on August 12, 2017. EPA's failure to fulfill its mandatory duty has subjected New Jerseyans and downwind residents of other states to unfair and disproportionate health risks that the Good Neighbor provision was intended to prevent, and now the agency is proposing to extend this unfair and dangerous *status quo* until as late as the 2023 ozone season. EPA's proposal runs contrary to the intent of the Good Neighbor provision and could result in negative health consequences in New Jersey.

12.    EPA must act urgently to fulfill their long overdue mandatory, nondiscretionary duty and to provide relief to the Plaintiff states and our residents. Defendants' proposed schedule lacks the necessary urgency. Defendants' proposed rulemaking schedule would delay final fulfillment of EPA's mandatory duty until as late as December 15, 2022, two-and-a-half years from today.

13.    Defendants provide several excuses for their slow proposed rulemaking schedule, citing data gaps with respect to emissions and control technologies from sources other the electrical generating units (non-EGUs). *See*

*e.g.* Idsal Decl. ¶¶ 126-136. While EPA may prefer to have more complete data on non-EGUs, the desire for perfection must give way to the need for urgent action to ameliorate Plaintiffs' serious harms and in light of the fact that EPA is already well past its statutory deadlines.

14.     EPA identified the need for further data on non EGUs and states its intent to continue to obtain necessary non-EGU data in the 2016 CSAPR Update. See 81 Fed. Reg. 745,04, 74,522 (Oct. 26, 2016). EPA should have been working to fix any identified gaps in the non-EGU data over the past 4 years. EPA can also focus its efforts on the largest stationary non-EGU sources, including cement kilns, oil and gas refining facilities, and steel mills, which all have substantial emissions and existing monitoring and reporting obligations.

15.     Likewise, administrative and procedural barriers must be minimized in EPA's rulemaking. Despite the ongoing coronavirus pandemic, EPA has had sufficient internal resources to move ahead with rulemakings rolling back air pollution regulations (*see e.g.* 85 Fed. Reg. 24,174 (rolling back emissions standards for light-duty vehicles, published April 30, 2020)). If they have sufficient resources to pursue these discretionary rollbacks, they should have the resources to fulfill a critical overdue mandatory duty in a timely manner. EPA's proposed two-part rulemaking includes substantial and unnecessary administrative and procedural delays such as allotting up to a combined 12 months for the agency's

internal review (*see* Idsal Decl. ¶¶ 159, 164, 171-172), 9 months for interagency review (*see* Idsal Decl. ¶¶ 159, 165, 173), and five-and-a-half months-for public comments (*see* Idsal Decl ¶ 167).

16.     The allotted time EPA has proposed at each stage of the rulemaking are too long, and EPA has proposed to further expand these unnecessarily lengthy timeframes by going through the process multiple times, with up to three, consecutive, partial—not concurrent or comprehensive—rulemakings.

17.     Plaintiffs have proposed a reasonable and feasible schedule for a single rulemaking that fully resolves the Upwind States outstanding obligations under the Good Neighbor provision for the 2008 ozone NAAQS by the 2021 ozone season. As Defendants' have not demonstrated the impossibility of Plaintiffs' proposed schedule, and in light of the seriousness of the harms that will result from EPA's continued delay, it is critical that EPA take prompt action to require enforceable upwind emissions reductions before the 2021 ozone season begins.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

So declared this 19th day of June, 2020.

Sharon C. Davis, Manager
Bureau of Evaluation and Planning
New Jersey Department of Environmental
Protection