**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**STATE OF NEW JERSEY et al.,**

                        **Plaintiffs,**              20-cv-1425 (JGK)

            **- against -**                    OPINION AND ORDER

**ANDREW R. WHEELER et al.,**

                        **Defendants.**

**JOHN G. KOELTL, District Judge:**

    The plaintiffs—the States of New Jersey, Connecticut,
Delaware, and New York; the Commonwealth of Massachusetts; and
the City of New York—brought this action against the
Environmental Protection Agency and the Administrator of the
Environmental Protection Agency, Andrew R. Wheeler
(collectively, the "EPA"). The plaintiffs claim that the EPA has
failed to fulfill a nondiscretionary duty under the Clean Air
Act (the "CAA" or the "Act"), namely to promulgate, pursuant to
Section 110(c)(1) of the Act, 42 U.S.C. § 7410(c)(1), Federal
implementation plans for the 2008 ozone National Ambient Air
Quality Standards ("NAAQS") that fully address the requirements
of the "Good Neighbor Provision" of the Clean Air Act, 42 U.S.C.
§ 7410(a)(2)(D)(i)(I), with respect to sources of ozone
pollution in Illinois, Indiana, Michigan, Ohio, Pennsylvania,
Virginia and West Virginia (the "Defaulting States" or the
"Upwind States"). The parties have filed cross motions for

1

summary judgment. The plaintiffs request that the Court enter an order setting a schedule for the EPA to come into compliance with the Act. The EPA argues that the Court lacks jurisdiction to hear this case, but that in any event the schedule requested by the plaintiffs is impossible for the EPA to comply with.

For the reasons that follow, the plaintiff's motion for summary judgment is granted as to the EPA's liability; the EPA's motion for summary judgment is denied; and the Court will impose a schedule on the EPA to promulgate a complete-remedy rulemaking addressing the EPA's outstanding statutory obligations by March 15, 2021.

## I.

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d

2

at 1224. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114–15 (2d Cir. 1998). Where there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law. See Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of Am., 881 F. Supp. 2d 570, 574 (S.D.N.Y. 2012).

3

Claims that the EPA failed to fulfill a nondiscretionary duty under the Act are typically resolved on summary judgment. See Sierra Club v. Johnson, 444 F. Supp. 2d 46, 52 (D.D.C. 2006) (collecting cases).

## II.

## A.

Under the Clean Air Act, 42 U.S.C. §§ 7401-7671q, the EPA must establish NAAQS that "are requisite to protect the public health" for certain pollutants. 42 U.S.C. § 7409(b). As relevant to this litigation, in March 2008, the EPA promulgated a revised NAAQS for ozone[1], which principally set a standard for ozone of 75 parts per billion, as measured over an eight-hour period. See National Ambient Air Quality Standards for Ozone, 73 Fed. Reg. 16,436, 16,436 (Mar. 27, 2008) (the "2008 ozone NAAQS"). The promulgation of the 2008 ozone NAAQS triggered the States' duty under the Act to submit State implementation plans ("SIPs") to the EPA by March 12, 2011. 42 U.S.C. § 7410(a)(1); Idsal Decl. ¶ 50. Among other things, a SIP must address the State's obligations under the Good Neighbor Provision of the Act, which

---

[1] Ground-level ozone causes many negative effects on human health, vegetation and ecosystems. See Idsal Decl. ¶ 20. Ground-level ozone is a secondary air pollutant created through chemical reactions between oxides of nitrogen ($NO_x$), carbon monoxide, methane, and non-methane volatile organic compounds (VOCs) in the presence of sunlight. Id. ¶ 21. The major human sources of ozone precursors are electric utilities, industrial facilities, motor vehicles, gasoline vapors, and chemical solvents. Id. Because ground-level ozone formation increases during periods with warmer temperatures and stagnant air masses, ozone levels generally increase during summer months. Id.

requires a SIP to "contain adequate provisions (i) prohibiting,
. . . any source or other type of emissions activity within the
State from emitting any air pollutant in amounts which will (I)
contribute significantly to nonattainment in, or interfere with
maintenance by, any other State with respect to any such
national primary or secondary ambient air quality standard[.]"
42 U.S.C. § 7410(a)(2)(D)(i)(I). If a state fails to file the
required SIP, or the EPA determines that the SIP is
insufficient, the EPA is required to promulgate a federal
implementation plan ("FIP") within two years of the date that
the EPA makes that determination. 42 U.S.C. § 7410(c)(1).

In order to measure compliance with the NAAQS, "the EPA, in
coordination with state governments, divides the country
geographically into 'air quality control regions.'" New York v.
EPA, -- F.3d --, 2020 WL 3967838, at *1 (D.C. Cir. July 14,
2020) (citation omitted) (quoting 42 U.S.C. § 7407). "While some
air quality control regions lie within a single state, others
encompass portions of two or more states." Id. (internal
quotation marks and alterations omitted). Under the Act, air
quality control regions are classified under a system of degrees
of nonattainment, which dictates the deadline by which the air
quality control region is required to attain the NAAQS. See id.
at *2 (citing 42 U.S.C. § 7511(a)(1), (b)(1), (b)(2)). These
nonattainment classifications are: marginal; moderate; serious;

severe; and extreme. 42 U.S.C. § 7511(a)(1). Areas in "serious"

nonattainment of the 2008 ozone NAAQS, like the New York-

Northern New Jersey-Long Island, New York-New Jersey-Connecticut

Area (the "New York Metropolitan Area") that is one of the

primary areas of focus in this litigation, has a statutory

attainment deadline of July 20, 2021. See Determination of

Attainment and Reclassification for 2008 Ozone NAAQS, 84 Fed.

Reg. 44,238, 44,244 (Aug. 23, 2019); see also New York, 2020 WL

3967838, at *3.[2]

The Good Neighbor Provision of the Act is intended to

address the fact that "[s]tate-level air quality regulation is

an inherently complicated endeavor because 'air pollution is

transient, heedless of state boundaries. Pollutants generated by

upwind sources are often transported by air currents, sometimes

over hundreds of miles, to downwind States.'" Maryland v. EPA,

958 F.3d 1185, 1190 (D.C. Cir. 2020) (alteration omitted)

(quoting EPA v. EME Homer City Generation, L.P., 572 U.S. 489,

---

[2] The northern part of New Jersey is in "serious" nonattainment status of the
2008 ozone NAAQS. Davis Decl. ¶ 24. The State of New Jersey has a July 20,
2021 deadline to meet the 2008 ozone NAAQS, an August 3, 2021 deadline to
meet the 70 parts per billion 2015 ozone NAAQS in the Southern nonattainment
areas of the state, and an August 3, 2023 deadline to meet the 2015 ozone
NAAQS in the Northern nonattainment area of the state. Id. The 2015 ozone
NAAQS is not directly relevant to this litigation. It is likely that New York
will not meet the serious nonattainment deadline of July 20, 2021 for the
2008 ozone NAAQS, and will be reclassified as in "severe" nonattainment, with
an accompanying deadline for the 2008 ozone NAAQS of July 20, 2027. Sheehan
Decl. ¶ 49. New York has an August 3, 2024 deadline to meet the 2015 ozone
NAAQS. Id. ¶ 28. Connecticut must comply with the July 20, 2021 serious
nonattainment statutory deadline. Babbidge Decl. ¶ 17.

496 (2014)). SIPs for Upwind States that fully address the Good
Neighbor obligations of those States are thus critical to the
ability of Downwind States to attain the NAAQS because "'[a]s
the pollution travels out of state, upwind States are relieved
of the associated costs,' which 'are borne instead by the
downwind States, whose ability to achieve and maintain
satisfactory air quality is hampered by the steady stream of
infiltrating pollution.'" Id. (quoting EME Homer City, 572 U.S.
at 496).

On July 13, 2015, the EPA published notice, which became
effective August 12, 2015, that 24 States, including certain
Upwind States at issue in this case—Illinois, Michigan,
Pennsylvania, Virginia, and West Virginia—had failed to submit
SIPs that would have satisfied their Good Neighbor obligations
with respect to the 2008 ozone NAAQS. See Findings of Failure to
Submit a Section 110 State Implementation Plan for Interstate
Transport for the 2008 National Ambient Air Quality Standards
for Ozone, 80 Fed. Reg. 39,961, 39,965 (July 13, 2015); Idsal
Decl. ¶ 53. The "findings of failure to submit establish[ed] a
2-year deadline for the EPA to promulgate a [FIP] to address the
interstate transport SIP requirements . . . ." 80 Fed. Reg. at
39,961-62; see also 42 U.S.C. § 7410(c)(1). On June 15, 2016,
the EPA published notice that, effective July 15, 2016, it had
disapproved relevant portions of Indiana and Ohio's Good

Neighbor SIPs. See Indiana; Ohio; Disapproval of Interstate Transport Requirements for the 2008 Ozone NAAQS, 81 Fed. Reg. 38,957, 38,961 (June 15, 2016); Idsal Decl. ¶ 55. The disapproval likewise triggered an obligation for "EPA to promulgate a FIP no later than two years from the effective date of this disapproval, if EPA has not approved a SIP revision or revisions addressing the deficiencies identified in this action." 81 Fed. Reg. at 38,961. Thus, the EPA had a statutory obligation to promulgate FIPs for the Upwind States by August 12, 2017, except for Indiana and Ohio where the deadline was July 15, 2018. Idsal. Decl. ¶¶ 53, 55.

### B.

In 2016, the EPA promulgated the Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS ("CSAPR Update"). See 81 Fed. Reg. 74,504 (Oct. 26, 2016).[3] The CSAPR Update purported to promulgate FIPs for certain Upwind States that had failed to submit approvable SIPs addressing the States' Good Neighbor obligations for the 2008 ozone NAAQS, and the CSAPR Update should have been designed to prevent Upwind States from

---

[3] The CSAPR Update was promulgated in response to protracted litigation in the D.C. Circuit Court of Appeals and the Supreme Court addressing various aspects of interstate transport rules, and in particular in response to the decision in EME Homer City Generation, L.P. v. EPA, 795 F.3d 118 (D.C. Cir. 2015). See Idsal Decl. ¶¶ 45-49, 57.

significantly interfering with the ability of Downwind States[4] to attain the 2008 ozone NAAQS. Id. at 74,504. Specifically, the CSAPR Update "establishe[d] (or revise[d] currently established) FIPs for 22 eastern states under the good neighbor provision of the CAA. These FIPs contain requirements for EGUs [electric generating units] in these states to reduce ozone season $NO_x$ emissions beginning with the 2017 ozone season." Id. at 74,521.

The CSAPR Update used a standard four-step framework developed by the EPA to address the requirements of the Good Neighbor Provision. Id. at 74,517. The four steps are

> (1) [i]dentifying downwind receptors that are expected to have problems attaining or maintaining clean air standards (i.e. NAAQS); (2) determining which upwind states contribute to these identified problems in amounts sufficient to 'link' them to the downwind air quality problems; (3) for states linked to downwind air quality problems, identifying upwind emissions that significantly contribute to nonattainment or interfere with downwind maintenance of a standard; and (4) for states that are found to have emissions that significantly contribute to nonattainment or interfere with maintenance of the NAAQS downwind, reducing the identified upwind emissions through regional emission allowance trading programs.

Id. (footnote omitted).

The CSAPR Update stated that it "partially addresses the EPA's obligation under the Clean Air Act to promulgate FIPs to address interstate emission transport for the 2008 ozone NAAQS.

---

[4] The plaintiff States in this action are all "Downwind" States and the plaintiff City of New York is located within the State of New York, a Downwind State.

In conjunction with other federal and state actions to reduce ozone pollution, these requirements will assist downwind states in the eastern United States with attaining and maintaining the 2008 ozone NAAQS." Id. at 74,504 (emphasis added). The EPA stated that "at this time the EPA is focusing its efforts on the immediately available and cost-effective emission reductions that are achievable by the 2017 ozone season." Id. at 74,521. The CSAPR Update focused on emissions reductions achievable by the 2017 ozone season because that was the last full ozone season prior to the July 20, 2018 attainment deadline for states with a moderate nonattainment classification. See id. at 74,540; Maryland, 958 F.3d at 1192.

The partial nature of the CSAPR Update also meant that the "reductions in this action [were] EGU-only." Id. at 74,522.[5] The CSAPR Update noted that the EPA would not address non-EGU[6] emissions reductions in its efforts to reduce interstate emissions transport for the 2017 ozone season because, "[a]s compared to EGUs, there is greater uncertainty in the EPA's

---

[5] The CSAPR Update found that "[n]othing in section 110(c)(1) of the CAA suggests that the agency is barred from taking a partial step at this time (before the FIP deadline has passed), nor does the statutory text indicate Congress' intent to preclude the EPA from tackling this problem in a step-wise process," particularly because "the EPA expects that a full resolution of upwind transport obligations would require emission reductions from sectors besides EGUs, including non-EGUs, and further EGU reductions that are achievable after 2017." 81 Fed. Reg. at 74,522.

[6] Non-EGU sources are sources that are not in the power-generation sector. Idsal Decl. ¶ 15.

current assessment of non-EGU point-source $NO_x$ mitigation potential and the EPA believes more time is required for states and the EPA to improve non-EGU point source data and pollution control assumptions before including related reduction potential in this regulation." Id. at 74,542.

### c.

Following the CSAPR Update, the State of New York and the State of Connecticut brought suit in this Court to compel the EPA to issue FIPs fully resolving the Good Neighbor obligations of certain Upwind States, namely Illinois, Michigan, Pennsylvania, Virginia, and West Virginia. See New York v. Pruitt, No. 18-cv-406, 2018 WL 2976018, at *2 (June 12, 2018). In Pruitt, the EPA did not dispute that the EPA's finding, effective August 12, 2015, that the failure of certain Upwind States to submit SIPs addressing their respective Good Neighbor obligations, triggered a two-year deadline for the EPA to issue FIPs fully addressing such obligations with respect to the 2008 ozone NAAQS. Id. at *1. The EPA also did not dispute that it had missed the deadline of August 12, 2017 to promulgate FIPs fully addressing the Upwind States' Good Neighbor obligations. Id. The only question for the Court was to determine the timeline by which the EPA would perform what the EPA "conceded" was its "nondiscretionary duties under the Clean Air Act . . . to fully

resolve interstate transport obligations under the Good Neighbor Provision for the defaulting states . . . ." Id. at *3.

In Pruitt, this Court first found that it had jurisdiction under the citizen-suit provision of the Act, which authorizes suits "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the administrator . . . ." Id. at *2 (quoting 42 U.S.C. § 7604(a)(2)). The Court found that it had jurisdiction over the action because the EPA had missed the mandatory August 12, 2017 deadline to promulgate FIPs fully addressing non-compliant states' Good Neighbor obligations. Id. The Court ordered the EPA to promulgate the final action discharging the EPA's outstanding obligations by December 6, 2018. Id. at *3. The time between the Court's order in Pruitt, June 12, 2018, and the time for the EPA to promulgate the final action, December 6, 2018, was less than six months. The EPA and the plaintiffs stipulated that it was "feasible" for the EPA to promulgate by December 6, 2018 "a final action fully addressing the obligations of under the Good Neighbor Provision for the 2008 ozone NAAQS for the defaulting states." Id. at *2.

### D.

Following Pruitt, the EPA promulgated a rule with the intention of, among other things, discharging the EPA's outstanding nondiscretionary duty to address fully the Good

12

Neighbor obligations under the 2008 ozone NAAQS for the five Upwind States at issue in the Pruitt litigation. See Determination Regarding Good Neighbor Obligations for the 2008 Ozone National Ambient Air Quality Standard (the "Close-Out Rule"), 83 Fed. Reg. 65,878, 65,883 & n.44 (Dec. 21, 2018). "The Close-Out Rule found that, for the 2008 ozone NAAQS, it was not feasible to implement cost-effective emissions controls before 2023-two years after the 2021 deadline for serious areas-and, moreover, that all downwind state would attain the NAAQS by 2023 even without further upwind emission reductions." Maryland, 958 F.3d at 1193 (citing 83 Fed. Reg. at 65,904-05, 65,917).

The Close-Out Rule found that there were no "relevant, significant changes in the EGU fleet since promulgation of the CSAPR Update that would necessitate reevaluation of the emission reduction potential from control strategies already implemented in the CSAPR Update." 83 Fed. Reg. at 65,983. Therefore, the ultimate determination by the EPA was that the CSAPR Update had sufficiently resolved the Good Neighbor obligations of Upwind States in the 2008 ozone NAAQS in the case of 20 eastern states, including Illinois, Indiana, Michigan, Ohio, Pennsylvania, Virginia, and West Virginia. As a result, the EPA stated that "the EPA ha[d] no remaining obligation to issue FIPs, nor [were] the states required to submit SIPs, that would further reduce transported ozone pollution beyond the existing CSAPR Update

requirements with regard to the 2008 ozone NAAQS." Id. at
65,921.

<strong>E.</strong>

In 2016, a number of parties petitioned for review of the
CSAPR Update in the D.C. Circuit Court of Appeals, arguing that
the final rule should be set aside as "arbitrary, capricious, an
abuse of discretion, or otherwise not in accordance with law,"
or "in excess of statutory, jurisdiction, authority, or
limitations," pursuant to 42 U.S.C § 7607(d)(9). See Wisconsin
v. EPA, 938 F.3d 303, 312 (D.C. Cir. 2019) (per curiam).

As relevant to this litigation, in an opinion issued on
September 13, 2019, the court in Wisconsin found that the CSAPR
Update was substantively deficient because it was inconsistent
with the Act to the extent that the CSAPR Update failed "to
require upwind States to eliminate their significant
contributions in accordance with the deadline by which downwind
States must come into compliance with the NAAQS." Id. at 313.
Specifically, the CSAPR Update did not require Upwind States to
eliminate their significant contributions to downwind ozone
pollution by the same date that Downwind States at various
nonattainment levels were required to come into attainment, the
result being that "while the Rule calls for a certain level of
reductions in upwind contributions by the 2017 ozone year-in
time to assist downwind states to meet the July 2018 attainment

14

deadlines-the Rule does not purport to require upwind States to fully meet their good neighbor obligations by that time." Id. (quotation marks omitted). The Wisconsin court found that this result was inconsistent with the CAA's Good Neighbor Provision, which "calls for elimination of upwind States' significant contributions on par with the relevant downwind attainment deadlines." Id. at 315.

The Wisconsin court further noted that when the EPA promulgated the CSAPR Update, the "EPA opted to require partial (rather than full) satisfaction of upwind States' good neighbor obligations due in significant part to its decision to consider only upwind emissions from EGUs . . . because, 'as compared to EGUs, there is greater uncertainty in EPA's current assessment of non-EGU point-source $NO_x$ mitigation potential.'" Id. at 318 (alteration omitted) (quoting 81 Fed. Reg. at 74,542). The court noted that "[s]cientific uncertainty, however, does not excuse EPA's failure to align the deadline for eliminating upwind States' significant contributions with the deadline for downwind attainment of the NAAQS." Id. at 318-19.

The Wisconsin court also addressed the EPA's conclusion in the CSAPR Update that "developing a rule that would have covered additional sectors [besides EGUs] and emissions reductions on longer compliance schedules would have required more of the EPA's resources over a longer rulemaking schedule." Id. at 319

15

(quoting 81 Fed. Reg. at 74,522). The court noted that "[w]hen an agency faces a statutory mandate, a decision to disregard it cannot be grounded in mere infeasibility," but rather the agency would have to meet the heavy burden of "impossibility," a burden that the EPA had not attempted to meet. The court rejected the EPA's argument that the need to devote more resources or the "greater uncertainty" about reductions from non-EGU sources amounted to "impossibility." Id. The Wisconsin court also rejected the EPA's contention that "it should be permitted to address [the] problem incrementally," because in this case "Congress has provided a literal timetable." Id.

The Wisconsin court stated that the EPA still retained "flexibility in administering the Good Neighbor Provision." Id. at 320. Specifically, the court noted that the EPA possessed latitude in defining what upwind contribution amounts count as "significant" within the meaning of the Good Neighbor Provision; that the EPA is permitted to take into account the balance between the magnitude of Upwind States' contributions and the costs associated with eliminating those contributions; that the EPA can grant one-year extensions of the nonattainment deadlines to Downwind States; and that EPA can always attempt to demonstrate impossibility. See id.

With respect to the remedy, the Wisconsin court declined to vacate the CSAPR Update but instead ordered that the CSAPR

16

Update be remanded to the EPA without vacatur. Id. at 336. The court declined the petitioners' request to impose a six-month timeframe on EPA's promulgation of a revised rule but noted that the petitioners "could attempt to bring a mandamus petition to this court in the event that EPA fails to modify the Rule in a manner consistent with our opinion." Id. at 337 (internal quotation marks, alterations, and citation omitted).

Following Wisconsin, a separate panel of the D.C. Circuit Court of Appeals issued an opinion in a parallel challenge to the Close-Out Rule. See New York v. EPA, 781 F. App'x 4 (D.C. Cir. 2019) (per curiam). On October 1, 2019, the New York court issued its opinion and noted that the challenge to the Close-Out Rule was the same challenge to the CSAPR Update that the court addressed in Wisconsin, namely an argument that "the Good Neighbor Provision requires the EPA to eliminate, not just reduce, upwind states' excess emissions by the next attainment deadline." Id. at 6.[7] The New York court, citing Wisconsin, noted ways in which the EPA could still exercise flexibility in administering the Good Neighbor Provision. See id. at *7. But the court found that the "EPA has not argued that any of these possibilities would support affirmance of the Close-Out Rule on

---

[7] There are two cases repeatedly discussed throughout this opinion in which the State of New York was the lead plaintiff. To avoid confusion, the New York v. EPA case decided by the D.C. Circuit Court of Appeals on October 1, 2019 will be referred to as New York. The opinion issued by this Court in New York v. Pruitt on June 12, 2018 will be referred to as Pruitt.

the record before us." Id. Therefore, it ordered the Close-Out
Rule to be vacated because the "Rule rests on an interpretation
of the Good Neighbor Provision now rejected by this Court [in
Wisconsin]" and because "the rule imposes no obligations, so
vacating it will cause no disruption." Id.

### F.

Following Wisconsin and New York, on December 20, 2019, the
plaintiffs in this case submitted to the EPA a notice of intent
to file suit, as required by 42 U.S.C. § 7604(b), on the basis
of the EPA's alleged failure to perform nondiscretionary
statutory duties, namely the EPA's alleged nondiscretionary
obligation to promulgate FIPs for Upwind States fully addressing
those States' Good Neighbor obligations for the 2008 ozone
NAAQS. See Pl.'s 56.1 Stmt. ¶ 12; Kinney Decl. ¶ 2. After 60
days and without response by the EPA, the plaintiffs filed suit
on February 19, 2020. ECF No. 1. The parties have now filed
cross motions for summary judgment.

### III.

The plaintiffs must demonstrate that they have standing to
bring this suit. To satisfy the requirements of Article III
standing, a plaintiff must show that "(1) the plaintiff has
suffered an actual or imminent injury in fact, which is concrete
and particularized; (2) there is a causal connection between the
injury and defendant's actions; and (3) it is likely that a

favorable decision in the case will redress the injury." Pruitt, 2018 WL 2976018, at *2; see also Citizens for Responsibility and Ethics in Washington v. Trump, 953 F.3d 178, 189 (2d Cir. 2019).

The plaintiffs have demonstrated that they have standing to bring this action. The plaintiffs have demonstrated that they have suffered and will continue to suffer harm because of the EPA's failure to promulgate the FIPs, and that the plaintiffs' harm will likely be redressed by the entry of summary judgment in the plaintiffs' favor and an order setting a deadline by which the EPA must promulgate the FIPs. See Pruitt, 2018 WL 2976018, at *2. The plaintiffs have offered evidence that parts of New Jersey, New York, and Connecticut will fail to meet their own attainment deadlines for the 2008 ozone NAAQS at least in part because of the interstate transport of emissions from the states for which the EPA would promulgate the FIPs. See Davis Decl. ¶¶ 2, 11-12, 24, 29-35 (New Jersey); Sheehan Decl. ¶¶ 10, 23, 32-36, 43, 48-55 (New York); Babbidge Decl. ¶¶ 8, 12-15, 17-21, 25-26 (Connecticut).[8] The declarations submitted by New Jersey, New York, and Connecticut attest to the regulatory burdens that are placed on those States because of the continued failure of the EPA to promulgate FIPs fully addressing the Good

---

[8] The non-state plaintiff, New York City, is classified by the EPA as part of the NY-NJ-CT nonattainment area. See Davis Decl. ¶ 17; Sheehan Decl. ¶¶ 10, 21; Babbidge Decl. ¶¶ 15.

Neighbor obligations of the Upwind States that have not submitted adequate SIPs, including that these Downwind States will not be able to meet their own attainment deadlines for the 2008 ozone NAAQS. Moreover, the continued failure of the Upwind States to meet their Good Neighbor obligations to reduce the emissions causing ground-level ozone in the Downwind States harms the citizens of those states. The requested relief will address these harms by requiring the EPA to promulgate FIPs that will bring the Upwind States into compliance with their Good Neighbor obligations for the 2008 ozone NAAQS. See Pruitt, 2018 WL 2976018, at *3.[9]

Accordingly, the plaintiffs have demonstrated that they have standing in this case.

## IV.

The EPA's threshold argument is that this Court lacks jurisdiction to hear the plaintiffs' claim.

## A.

The citizen-suit provision of the Clean Air Act confers jurisdiction on the various district courts for the review of

---

[9] Delaware, Massachusetts, and New York City have not separately submitted declarations in support of their standing. At oral argument, the EPA stated that it did not dispute that all the plaintiffs in this case have standing. Tr. at 25. In any event, the plaintiffs have standing to file suit to protect their citizens from the harmful effects of the high levels of pollutants in their states caused by ozone precursors and ozone itself traveling into their States from the upwind defaulting States. See Mass. v. EPA, 549 U.S. 497, 520-23 (2007); Pruitt, 2018 WL 2976018, at *3.

different kinds of EPA actions or inactions. See Nat. Res. Def. Council, Inc. v. Thomas, 689 F. Supp. 246, 252 (S.D.N.Y. 1988), aff'd, 885 F.2d 1067 (2d Cir. 1989). As relevant, under the Act, the district courts have jurisdiction to hear claims brought by "any person . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator . . . ." 42 U.S.C. § 7604(a)(2).

The district courts also have jurisdiction to compel "agency action unreasonably delayed[.]" 42 U.S.C. § 7604(a). The citizen-suit provision of the Act also specifies that suits "to compel agency action referred to in section 7607(b) of this title which is unreasonably delayed may only be filed in a United States District Court within the circuit in which such action would be reviewable under section 7607(b) of this title." 42 U.S.C. § 7604(a). Section 7607(b) is, in turn, both a provision that confers jurisdiction on the courts of appeals to review certain EPA actions under the Clean Air Act and a venue provision that vests review of EPA actions with "nationwide scope or effect" in the D.C. Circuit Court of Appeals and EPA actions that are "locally or regionally applicable" in the court of appeals for the appropriate circuit. 42 U.S.C. § 7607(b)(1); see Sierra Club v. EPA, 955 F.3d 56, 61 (D.C. Cir. 2020)

(describing section 7607(b)(1) as both a jurisdiction and venue provision).

Because of the interplay between these provisions in the Act, the distinction between a "nondiscretionary duty" suit and an "unreasonable delay" suit is relevant to questions of jurisdiction and venue. A nondiscretionary duty suit may be brought in the district court where venue is otherwise proper under the general venue statute, 28 U.S.C. § 1391, while an unreasonable delay suit must be brought in the United States District Court for the District of Columbia if the challenged action has nationwide scope or effect. See, e.g., Am. Lung Ass'n v. Reilly, 962 F.2d 258, 263 (2d Cir. 1992).[10]

Therefore, this Court has jurisdiction over the present controversy if the plaintiffs' claim in this case is a claim alleging a failure of the EPA to perform a duty that is nondiscretionary under the Clean Air Act. "Express deadlines in the CAA typically create nondiscretionary duties to act." Envtl Def. v. Leavitt, 329 F. Supp. 2d 55, 64 (D.D.C. 2004); Am. Lung Ass'n, 962 F.2d at 263 (finding that the district court properly exercised jurisdiction over a complaint alleging that the EPA failed "to revise the NAAQS 'at five-year intervals'").

---

[10] This statutory structure makes clear that the inquiry of whether a challenged action or inaction has nationwide scope or effect or is instead locally or regionally applicable is irrelevant if the challenge is properly brought as a nondiscretionary suit, rather than as an unreasonable delay suit.

**B.**

The EPA does not dispute the basic facts material to the resolution of the jurisdictional question.

Specifically, the EPA does not dispute that the EPA has a nondiscretionary duty under 42 U.S.C. § 7410(c)(1) to promulgate FIPs within two years after the Administrator either finds that a state has failed to submit a required SIP or SIP revision or finds that a submitted SIP does not adequately satisfy the Act's minimum criteria. The EPA does not dispute that this duty obligated the EPA to issue FIPs or approve SIPs for most of the Upwind States by August 12, 2017 and for two of the remaining Upwind States by July 15, 2018. See Pruitt, 2018 WL 2976018, at *2 (noting that the August 12, 2017 deadline for the EPA to issue FIPs imposed a mandatory duty on the EPA under the Act). The EPA does not dispute that at the time that the EPA promulgated the CSAPR Update, the EPA believed that the CSAPR Update was only a "partial" fulfillment of the EPA's nondiscretionary duty to promulgate FIPs that fully address the Good Neighbor obligations of the Upwind States. The EPA does not dispute that the EPA has not, to date, promulgated any regulations that purport to discharge fully the EPA's duties to issue FIPs for non-compliant Upwind States with respect to the 2008 ozone NAAQS that fully address those States' Good Neighbor obligations. See Answer ¶ 40. The EPA also does not dispute that

23

the Wisconsin court found that the CSAPR Update was substantively deficient to the extent that the CSAPR Update declined to adopt FIPs for the Upwind States that required the Upwind States to comply fully with their Good Neighbor obligations for the 2008 ozone NAAQS. In addition, the EPA does not dispute that the Close-Out Rule, including the EPA's retroactive finding in the Close-Out Rule that the CSAPR Update had in fact been a complete, rather than a partial, fulfillment of the EPA's obligations to promulgate FIPs for the Upwind States, was vacated by the New York court.

Based on these undisputed facts, it is apparent that the EPA still has not fulfilled its nondiscretionary statutory duty to promulgate FIPs that fully address the Good Neighbor obligations of the Upwind States for the 2008 ozone NAAQS. In all material respects, this case is identical to Pruitt, in which this Court found that it had "jurisdiction over a citizen suit seeking to require the [EPA] to perform that non-discretionary duty" to issue FIPs addressing upwind States' Good Neighbor obligations under the 2008 ozone NAAQS by August 12, 2017. See Pruitt, 2018 WL 2976018, at *2. Similarly, the Court has jurisdiction over the current action because the EPA still has "fail[ed] . . . to perform [an] act or duty . . . which is

24

not discretionary with the Administrator, . . ." 42 U.S.C.
§ 7604(a)(2).[11]

C.

Nevertheless, the EPA argues that this Court lacks
jurisdiction. None of the EPA's arguments has merit.

The EPA argues that when the EPA promulgated the CSAPR
Update and the Close-Out Rule, those actions discharged the
EPA's nondiscretionary duty that the plaintiffs in this case
complain the EPA has not performed. The EPA argues that it is
important in this regard that the Wisconsin court did not vacate
the CSAPR Update but remanded the CSAPR Update to the EPA. The
EPA argues that the CSAPR Update, although substantively
deficient, remains in force and eliminated any outstanding
obligation by the EPA to act on its nondiscretionary statutory
duty under the Act. The EPA argues that, following Wisconsin,
there are a set of FIPs for upwind States that must be revised,
but, unlike the pre-Wisconsin status quo, there are no
additional FIPs that the EPA is required to issue. In this

---

[11] The EPA points out that during the Pruitt litigation, the EPA conceded that
a mandatory duty existed to promulgate a complete rulemaking fully addressing
the Good Neighbor obligations because the EPA viewed the CSAPR Update as only
a partial rulemaking that could permissibly precede the promulgation of
revised FIPs fully addressing the Good Neighbor obligations. The EPA argues
that the EPA's concession in the Pruitt litigation turned out to be legally
incorrect in light of the Wisconsin decision. But nothing in the Wisconsin
decision purported to eliminate the EPA's statutory duty to promulgate FIPs
fully addressing the defaulting Upwind States' Good Neighbor obligations for
the 2008 ozone NAAQS within two years of the EPA's determination that the
SIPs were insufficient. This Court properly exercised jurisdiction in the
Pruitt litigation and it properly has jurisdiction in this case.

regard, the EPA also argues that the <u>Wisconsin</u> court declined to set a deadline by which the EPA must act on remand, and that the EPA is no longer subject to a non-discretionary duty to promulgate FIPs implementing the 2008 ozone NAAQS by a date certain.

The EPA's argument is without merit. When it promulgated the CSAPR Update, the EPA admitted that it had only partially fulfilled its nondiscretionary duty under the Act with respect to the 2008 ozone NAAQS. Only when it promulgated the Close-Out Rule did the EPA allegedly determine that it had fully fulfilled its nondiscretionary duty under the Act with respect to the 2008 ozone NAAQS. But that determination of complete fulfillment was plainly rejected by the D.C. Circuit Court of Appeals when the CSAPR Update was remanded and the Close-Out Rule was vacated.[12] Thus, the status quo remains as it was prior to <u>Pruitt</u>, namely that the only relevant, non-vacated rule still in force, the CSAPR Update, does not represent a complete fulfillment of the EPA's nondiscretionary duty to promulgate FIPs that fully address the Good Neighbor obligations of the Upwind States for the 2008 ozone NAAQS.

---

[12] The <u>Wisconsin</u> court declined to vacate the CSAPR Update Rule in its entirety in order not to "risk significant harm to the public health or the environment." 938 F.3d at 336.

Thus, jurisdiction lies with this Court over a claim to compel the EPA to perform that outstanding statutory duty to promulgate FIPs that fully, not partially, address the Good Neighbor obligations of the Upwind States for the 2008 ozone NAAQS. See Sierra Club v. EPA, No. 10-cv-1541, 2016 WL 3281244, at *4 (D.D.C. June 14, 2016) (rejecting EPA's mootness argument with respect to a claim to compel the EPA to perform nondiscretionary duties under the Clean Air Act where the D.C. Circuit Court of Appeals had remanded without vacating the substantive rule that the EPA argued had discharged the nondiscretionary duty); Sierra Club v. Johnson, 374 F. Supp. 2d 30, 32-33 (D.D.C. 2005) (finding that the EPA's mandatory duty to act on SIPs submitted "is still (or again) unfulfilled, because the Court of Appeals' order vacating EPA's conditional approval of the pre-2001 SIPs . . . operated to restore the status quo ante.").

Indeed, nothing in Wisconsin indicates that the EPA is not still subject to the statutory deadlines in the CAA concerning the EPA's obligation to promulgate FIPs for the defaulting Upwind States that address those States' Good Neighbor obligations with respect to the 2008 ozone NAAQS. Although the EPA agrees that if the CSAPR Update had been vacated in its entirety in Wisconsin, there would be jurisdiction in this Court, the EPA points to no authority that explains why an order

27

remanding without vacatur, like the order in <u>Wisconsin</u>, does not also support a citizen-suit provision to compel an outstanding nondiscretionary duty. While the plaintiffs may bring a <u>mandamus</u> action in the D.C. Circuit Court of Appeals to enforce the <u>Wisconsin</u> remand order, the EPA conceded at oral argument that the existence of <u>mandamus</u> in the D.C. Circuit Court of Appeals does not divest this Court of jurisdiction under the citizen-suit provision to hear a case alleging the failure of the EPA to perform nondiscretionary duties under the Act. Tr. at 15-16.[13]

To accept the EPA's argument that the CSAPR Update, although substantively deficient, discharged the EPA's nondiscretionary duty with respect to the 2008 ozone NAAQS would endorse a rule by which the EPA could promulgate a plainly incomplete rule, claim that it had discharged the EPA's nondiscretionary duty, and then be forever immune from citizen suits brought under 42 U.S.C. § 7604(a)(2) with respect to that duty because no district court would have jurisdiction over that suit. That cannot be the law. Such a result would be

---

[13] The EPA does not explain why the fact that the <u>Wisconsin</u> court declined to set a deadline by which the EPA must act on remand to cure the substantive deficiencies in the CSAPR Update identified by the <u>Wisconsin</u> court is relevant to the question of whether this Court has jurisdiction over this case in which "there is alleged a failure of the Administrator to perform any duty <u>under this chapter</u> which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2) (emphasis added). The plain language of the citizen-suit provision indicates that it is concerned with EPA compliance with statutory duties and deadlines that arise "under this chapter," that is, under the Clean Air Act directly.

inconsistent with the congressional scheme of judicial review provided for in the Clean Air Act. Cf. Oxfam Am., Inc. v. SEC, 126 F. Supp. 3d 168, 172 (D. Mass. 2015) (citing, among other cases, Johnson, 374 F. Supp. 2d at 33, and finding that a contrary rule would mean that "an agency could take inadequate action to promulgate a rule and forever relieve itself of the obligations mandated by Congress.").

**D.**

In support of its position, the EPA relies principally on only one case, Environmental Defense Fund, Inc. v. Gorsuch ("EDF"), 713 F.2d 802 (D.C. Cir. 1983). That case does not help the EPA.

In the underlying district court action in EDF, EDF had originally sued the EPA to compel the EPA to perform a nondiscretionary duty under the Resource Conservation and Recovery Act ("RCRA"). Id. at 805. The district court had found that EDF was entitled to a court order setting a deadline for the EPA to issue certain regulations based on mandatory statutory language requiring the EPA to establish performance standards for facilities for the treatment, storage, or disposal of hazardous waste. Id. at 804-06 (citing 42 U.S.C. § 6924). Eventually, the EPA promulgated the performance standards that EDF sought, but prior to the effective date of the performance standards, the EPA issued a notice in the Federal Register

announcing the EPA's intention to suspend or withdraw the performance standards. Id. at 808. Five months later, the EPA announced that it was suspending the effective dates of the performance standards. Id. EDF then returned to the district court alleging that the EPA's suspension of the program violated the court order to promulgate standards and violated EPA's duty under the RCRA itself. Id. at 809. The district court found that it did not have jurisdiction to hear the suit, and EDF appealed. Id.

The court of appeals affirmed the district court's finding that when the EPA promulgated regulations pursuant to the district court's order, that promulgation fulfilled the EPA's obligations under the court order, and that the district court would not "undertake a continuing supervision of the Agency's implementation of its responsibility after deadlines have been met" absent some showing that the EPA's "subsequent announcement that it would suspend the regulations was a bad-faith effort to evade the Court's order[.]" Id. at 812 (quoting State of Illinois v. Gorsuch, 530 F. Supp. 337, 339 (D.D.C. 1981)). The court of appeals rejected EDF's assertion "that implied in the [district] court's order to promulgate the regulations is the command to make them effective—or perhaps to do nothing to make them ineffective—six (6) months from the date of issuance pursuant to [RCRA] and the failure to give them practical effect

is a violation of the order and EPA's duty under RCRA." Id. at
812-13.

The court of appeals also addressed EDF's argument that a
separate provision of the RCRA gave rise to a citizen suit to
compel the EPA to make the regulations effective, namely a
provision of the RCRA stating that regulations "applicable to
the generation, transportation, treatment, storage, or disposal
of hazardous waste (including requirements respecting permits
for such treatment, storage, or disposal) shall take effect on
the date six months after the date of promulgations . . . or six
months after the date of [their] revision." Id. at 813
(alteration in original) (emphasis added) (quoting 42 U.S.C.
§ 6930(b)). The court of appeals found that the statutory
language that regulations "shall take effect" did not create a
nondiscretionary duty on the part of EPA to perform an
additional act beyond promulgating the regulations. Id. at 813.
For that reason, the EDF's suit was not properly a
nondiscretionary duty suit to compel the EPA to make the
regulations effective, but was instead a petition for review
under the statute that could be filed only in the D.C. Circuit
Court of Appeals in the first instance. Id.

EDF is distinguishable from the present case. In EDF, the
parties did not dispute that the underlying regulations
promulgated by the EPA did in fact discharge the EPA's

nondiscretionary duty. The only question in EDF was whether the withdrawal of those substantively adequate regulations could give rise to a second district court order, either as an exercise of the court's continuing supervision of the original order or as a subsequent citizen suit. By contrast, in this case, the EPA concedes that the underlying regulation that the EPA claims discharged its nondiscretionary statutory duty, namely the CSAPR Update, incompletely complied with EPA's obligation to promulgate FIPs by the statutory deadline. Thus, there is jurisdiction in this case because the EPA continues in its failure to fulfill its statutory duty under 42 U.S.C. § 7410(c)(1), a provision which undeniably gives rise to jurisdiction under the citizen-suit provision to compel the EPA to perform a nondiscretionary duty, unlike the "shall take effect" language in the RCRA that the EDF court found did not give rise to a second nondiscretionary duty enforceable through a citizen suit.

Additionally, to the extent that the court of appeals in EDF found that the district court could not exercise continuing supervisory jurisdiction over alleged non-compliance with its court order absent a showing that the EPA demonstrated bad faith in evading the district court's prior order, that jurisdictional holding has no relevance to this case. The plaintiffs are not asking this Court to exercise jurisdiction to enforce a court

order, either the Wisconsin remand order or any other court
order. Rather, the plaintiffs are asking the Court to exercise
jurisdiction to compel the EPA to perform nondiscretionary
duties under the Act itself.

EDF is therefore inapposite and does not support the EPA's
jurisdictional argument.

**E.**

Finally, because the Court has jurisdiction over the
plaintiffs' claim that the EPA has failed to perform a
nondiscretionary duty under the Act by virtue of the existence
of a clear statutory deadline for the EPA to promulgate FIPs for
the 2008 ozone NAAQS, the EPA's argument that this suit is
properly considered an unreasonable delay suit fails. See Am.
Lung Ass'n, 962 F.2d at 263 (describing nondiscretionary duty
suits and unreasonable delay suits as "distinct" categories, the
former dealing with "bright-line rule[s] for agency action" and
the latter dealing with "reasonable" deadlines); see also
Mexichem Specialty Resins, Inc. v. EPA, 787 F.3d 544, 555-56
(D.C. Cir. 2015) (discussing the factors used to assess
unreasonable delay claims that arise in the absence of "a
precise statutory timetable"). In this case, the plaintiffs seek
to compel the EPA to take action in light of the EPA's duty to
promulgate FIPs, by August 12, 2017 and July 15, 2018, for
Upwind States that fully discharge the EPA's Good Neighbor

33

obligations. This case is about the timing by which the EPA must take certain nondiscretionary actions. The plaintiffs' claim that the EPA has continued to fail to discharge its obligations to promulgate FIPs requiring Upwind States to meet their Good Neighbor obligations by the date fixed by the Clean Air Act. The plaintiffs correctly claim that their complaint falls within the heartland of "nondiscretionary duty" cases, namely cases involving "[e]xpress deadlines in the CAA." Leavitt, 329 F. Supp. 2d at 64. The plaintiffs' claim is, for that reason, not an "unreasonable delay" case. Jurisdiction is therefore proper in this Court under 42 U.S.C. § 7604(a)(2).[14]

Jurisdiction and venue are therefore proper in this Court in the Southern District of New York.[15]

---

[14] At oral argument, the EPA stated that if the Court does have jurisdiction under 42 U.S.C. § 7604(a)(2), the EPA does not contest that venue is proper in the Southern District of New York. Tr. at 24-25. Indeed, venue is proper under the general venue statute because this is a suit against "an officer or employee of the United States or any agency thereof" and "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of New York as attested to by, among other things, the declarations detailing the impacts of ozone pollution on the New York Metropolitan Area, which includes the Southern District of New York. See 28 U.S.C. § 1391(e)(1)(B); see, e.g., Sheehan Decl. ¶¶ 31-32, 36, 53-55 (noting harm to the New York Metropolitan Area both because of continued nonattainment and because of corresponding ozone pollution).

[15] The plaintiffs also allege that the Court has jurisdiction over this case under either the general federal question jurisdiction statute, 28 U.S.C. § 1331, or the federal mandamus statute, 28 U.S.C. § 1361. Because, as explained in this section, the Court has jurisdiction directly under the Clean Air Act, 42 U.S.C. § 7604(a)(2), it is unnecessary to address these alternative possible grounds for the Court's jurisdiction.

**V.**

When a claim is brought under the citizen-suit provision of the Clean Air Act alleging a failure by the EPA to perform a nondiscretionary statutory duty, on the merits "the only question for the district court to answer is whether the agency failed to comply with that deadline." Sierra Club v. Thomas, 828 F.2d 783, 791 (D.C. Cir. 1987), abrogated on other grounds by statute, Clean Air Act Amendments, Pub. L. No. 101-549, § 707(f), 104 Stat. 2399, 2683 (1990), as recognized in Mexichem, 787 F.3d at 553 n.6.

In this case, the "[d]efendants admit that EPA has not subsequently approved SIPs or promulgated additional transport FIPs fully resolving good neighbor obligations for the 2008 ozone NAAQS for Illinois, Indiana, Michigan, Ohio, Pennsylvania, Virginia, and West Virginia since the remand of the CSAPR Update by Wisconsin and the vacatur of the CSAPR Close-Out by New York." Answer ¶ 40. It follows from the jurisdictional analysis above that the EPA has not fully performed its nondiscretionary duty to promulgate FIPs that fully discharge the Good Neighbor obligations for the Upwind States with respect to the 2008 ozone NAAQS. For that reason, summary judgment in favor of the plaintiffs is appropriate as to liability. See Johnson, 444 F. Supp. 2d at 52 ("Because [the] defendant does not contest the issue of liability, the entry of summary judgment is

35

appropriate, and it remains only for the Court to fashion an appropriate equitable remedy."); New York v. Wheeler, No. 19-cv-3287, 2019 WL 3337996, at *1 (S.D.N.Y. July 25, 2019) (entering summary judgment in favor of the plaintiffs where the "[d]efendants do not dispute any of the relevant facts or that they have violated their nondiscretionary statutory duty . . . ."); Maryland v. Pruitt, 320 F. Supp. 3d 722, 726 (D. Md. 2018) (entering summary judgment for plaintiffs where the "[d]efendants . . . concede that they failed to carry out this nondiscretionary duty.").[16]

Therefore, the plaintiffs' motion for summary judgment as to liability is granted, and the EPA's motion for summary judgment is denied.

## VI.

Because "the entry of summary judgment is appropriate . . . it remains only for the Court to fashion an appropriate equitable remedy." Johnson, 444 F. Supp. 2d at 53 (collecting cases). "The authority to set enforceable deadlines both of an ultimate and an intermediate nature is an appropriate procedure

---

[16] The EPA acknowledged at oral argument that in this case, "the liability question is effectively the same as the jurisdictional question because it implicates what type of suit is available." Tr. at 17. In other words, once the Court finds that jurisdiction exists in this case under the citizen-suit provision that vests the district courts with jurisdiction to hear cases alleging a failure by the EPA to perform a nondiscretionary duty under the Act, it is obvious that the EPA is liable because it is clear that the EPA has not performed a statutory, nondiscretionary duty.

for exercise of the court's equity powers to vindicate the public interest." Nat. Res. Def. Council, Inc. v. Train, 510 F.2d 692, 705 (D.C. Cir. 1974). "A federal equity court may exercise its discretion to give or withhold its mandate in furtherance of the public interest, including specifically the interest in effectuating the congressional objective incorporated in regulatory legislation." Id. at 713; see also New York v. Wheeler, 2019 WL 3337996, at *2 ("It is well established that a district court has authority 'to compel EPA to comply with a nondiscretionary duty by a date certain established by court order.'") (quoting Pruitt, 2018 WL 2976018, at *3); Pruitt, 2018 WL 2976018, at *3 (collecting cases).[17]

## A.

The parties have proposed differing timelines for the EPA to complete the actions it is required to take under the Act.

The plaintiffs propose that the EPA issue a notice of proposed action fully satisfying its obligations under the Good Neighbor Provision for the 2008 ozone NAAQS with respect to the Upwind States by October 1, 2020, and that the EPA issue a notice of final action by March 1, 2021. The plaintiffs'

---

[17] At oral argument, the parties agreed that the Court may determine the appropriate schedule for the EPA's rulemaking to address the EPA's outstanding statutory duty on the basis of the declarations submitted by the parties alone and that an evidentiary hearing is unnecessary. Tr. at 36, 42. Therefore, the Court will proceed to decide the question of the appropriate schedule for the EPA on the basis of the current submissions.

proposed rulemaking is a complete-remedy rulemaking in that the rulemaking will address emissions controls for both EGU and non-EGU sources in the Upwind States.

The EPA argues that the plaintiffs' proposed schedule is "impossible." The EPA proposes instead a bifurcated rulemaking schedule. The first rulemaking will involve a notice of proposed action by October 1, 2020 and a notice of final action by March 15, 2021. This rulemaking will address EGU-source controls that can be implemented in time for the 2021 "Serious" area attainment date. The second rulemaking will involve a proposed rule addressing non-EGU sources on July 21, 2021 with a final rule on either March 15, 2022 or December 15, 2022.

**B.**

Where, as in this case, the EPA has failed to comply with a nondiscretionary statutory deadline under the Act and the EPA seeks to extend the time to comply with that deadline by invoking the doctrine of impossibility, "[a]n agency . . . bears 'a heavy burden to demonstrate the existence of an impossibility.'" Johnson, 444 F. Supp. 2d at 53 (quoting Ala. Power Co. v. Costle, 636 F.2d 323, 359 (D.C. Cir. 1979)); see also Wisconsin, 938 F.3d at 319. "That burden is especially heavy where 'the agency has failed to demonstrate any diligence whatever in discharging its statutory duty to promulgate regulations and has in fact ignored that duty for several

years.'" <u>Johnson</u>, 444 F. Supp. 2d at 53 (quoting <u>Sierra Club v.</u>
<u>Thomas</u>, 658 F. Supp. 165, 172 (N.D. Cal. 1987)). Congress has
set the statutory deadline and determined that a definite
deadline was important despite alleged difficulties in meeting
that deadline. Therefore, the EPA must show more than scientific
uncertainty or complexity, but rather impossibility. "The
genesis of [the impossibility] doctrine is in the maxim that a
court will not exercise its equity powers to compel one to do
that which is impossible." <u>New York v. Gorsuch</u>, 554 F. Supp.
1060, 1064 (S.D.N.Y. 1983).

    In other words, principles of equity do not assign the
burden to the plaintiffs to prove that their proposed schedule
is possible or feasible. The plaintiffs, as Downwind States, are
the intended beneficiaries of the congressional bright-line
deadline imposed on the EPA to promulgate FIPs that fully
address the Good Neighbor obligations of the Upwind States. In
passing the Clean Air Act, and particularly the Good Neighbor
Provision, Congress determined that Downwind States faced
substantial barriers to attainment of NAAQS posed by the
interstate transport of pollutants and pollutant precursors. The
plaintiffs are entitled, under the statute, to the prompt
resolution of the EPA's statutory duties under the Act. For that
reason, the "heavy" burden falls on the EPA to demonstrate
impossibility.

C.

The crux of the disagreement between the parties at the remedies stage is narrow. The EPA's proposed schedule would have the final notice for the first rulemaking, addressing near-term reductions achievable mostly from EGUs, issued on March 15, 2021, roughly the same time that the plaintiffs propose that the EPA issue the final notice of a complete-remedy rulemaking on March 15, 2021 that would address emissions controls for both EGUs and non-EGUs. The EPA proposes that a subsequent rule for non-EGU sources should then be promulgated in March or December 2022. Thus, the question of impossibility presented is a narrow one, namely whether it is impossible for the EPA to undertake a rulemaking that includes emissions controls for non-EGU sources on the plaintiffs' schedule.

The EPA has not met its "heavy" burden at this time to demonstrate that the plaintiffs' proposed schedule is impossible for several reasons.

1.

The EPA's claim of impossibility is undermined by the EPA's Good Neighbor rulemakings for the 2008 ozone NAAQS as those efforts relate to attempts to regulate emissions from non-EGU sources. These rulemakings, including the contexts in which they occurred, suggest that the EPA has not acted with "utmost

diligence" to comply with the Act. See Johnson, 444 F. Supp. 2d
at 53 (internal quotation marks omitted).

   The EPA was required under the statute to promulgate fully
compliant FIPs for the Upwind States by August 12, 2017, except
for Indiana and Ohio where the deadline is July 15, 2018. It has
failed to do so. In the CSAPR Update, which the EPA acknowledged
at the time only addressed near-term reductions that could be
achieved through emissions controls implemented at EGUs, the EPA
clearly contemplated future rulemakings addressing emissions
reductions achievable from non-EGUs. See 81 Fed. Reg. at 74,522
("[A] full resolution of upwind transport obligations would
require emission reductions from sectors besides EGUs[.]").
Then, in Pruitt, this Court ordered the EPA to perform what the
EPA conceded was its nondiscretionary duty under the Act, namely
to "promulgate FIPs to fully resolve interstate transport
obligations under the Good Neighbor Provision for the defaulting
states by August 12, 2017[.]" 2018 WL 2976018, at *3 (emphasis
added). During the Pruitt litigation, the EPA never suggested
that the performance of the EPA's conceded nondiscretionary duty
would not include the promulgation of FIPs addressing emissions
controls for non-EGU sources. And the EPA conceded that it was
feasible to promulgate fully compliant FIPs within about six
months. It was only following the Pruitt order entered on June
12, 2018, during the time that the EPA was preparing the Close-

Out Rule, that the EPA determined that it did not need to address possible emissions controls for non-EGU sources in order to fulfill the EPA's statutory duty. But following the <u>Wisconsin</u> decision issued on September 13, 2019 and the <u>New York</u> decision issued on October 1, 2019, there is no doubt that the EPA, in order to comply with its statutory duty to promulgate FIPs that fully address the Good Neighbor obligations of the Upwind States, was required to undertake a complete rulemaking that addresses possible emissions reductions from non-EGU sources in addition to reductions from EGU sources.

Thus, after the promulgation of the CSAPR Update almost four years ago, the EPA has been aware that it was required to undertake a rulemaking addressing, among other things, non-EGU sources for at least the time between the CSAPR Update on October 26, 2016 and the <u>Pruitt</u> order on June 12, 2018, and then again from at least the time of the <u>New York</u> decision on October 1, 2019 until the present day. Despite the EPA's awareness over the past four years, both in the rulemaking process and during litigation, that it was required to complete a rulemaking addressing emissions reductions for non-EGU sources as part of the EPA's statutory duty under the Act, the EPA now claims that it is impossible to issue final notice of a complete rulemaking addressing emissions controls from non-EGU sources until March 15, 2022 at the earliest. This representation is unacceptable

when it is reasonably clear that the EPA has not "exercised 'utmost diligence' in its efforts to comply with the statute." Johnson, 444 F. Supp. 2d at 53.

Plainly, the purpose of the imposition of an enforceable deadline on the EPA "is to protect the public interest and not to punish the EPA[.]" Thomas, 658 F. Supp. at 175. In this case, the public interest in the speedy performance of the EPA's statutory duties is substantial, as expressed in Congress's decision to impose bright-line deadlines on the resolution of the States' Good Neighbor obligations. The imposition of an enforceable deadline is not a punishment for the clear pattern of the EPA's refusal to fulfill its statutory mandate over the past several years, but is instead a mechanism to require the EPA to fulfill its statutory duties, and thereby provide relief to the plaintiffs and their citizens, which Congress determined should be provided.

### 2.

To the extent that the EPA argues that it is impossible to perform a complete-remedy rulemaking addressing emissions controls for non-EGU sources because of uncertainties inherent in quantifying and analyzing emissions data from non-EGU sources, see, e.g., Idsal Decl. ¶¶ 130-33, that claim does not rise to the level of impossibility.

43

Indeed, a substantially similar argument was made in the
CSAPR Update and was rejected in Wisconsin. The Wisconsin court
explained that bifurcated rulemaking was inconsistent with the
statutory scheme that sought to have Upwind States meet their
Good Neighbor obligations on a schedule that was consistent with
the schedule for the Downwind States to meet their attainment
requirements, leaving non-EGU sources out of an initial
rulemaking seriously harmed the Downwind States in their efforts
at attainment. The argument fares no better in this case. In the
CSAPR Update, the "EPA decided against considering emissions
reductions from non-EGUs because, 'as compared to EGUs, there is
greater uncertainty in EPA's current assessment of non-EGU point
source $NO_x$ mitigation potential.'" Id. (alteration omitted)
(quoting 81 Fed. Reg. at 74,542). The Wisconsin court rejected
the EPA's argument that the EPA did not need to address
emissions controls for non-EGU sources at that time, finding
that "[s]cientific uncertainty . . . does not excuse EPA's
failure to align the deadline for eliminating upwind States'
significant contributions with the deadline for downwind
attainment of the NAAQS." Id. at 318-19. The Wisconsin court
further stated that the "EPA cannot avoid its statutory
obligation by noting scientific uncertainty and concluding that
it would therefore be better not to regulate at this time." Id.
(alterations omitted) (quoting Mass., 549 U.S. at 534).

44

Similarly, to the extent that the EPA argues that "the more heterogenous mix of non-EGU sources" means that certain thresholds developed for EGU sources "may not be analytically feasible, or necessarily the most efficacious way to address these sources through FIPs under the good neighbor provision," Idsal Decl. ¶ 119, those arguments are unavailing because "a decision to disregard [a statutory mandate] cannot be grounded in mere infeasibility," Wisconsin, 938 F.3d at 319. Absent a showing that the administrative infeasibility amounts to impossibility or that the uncertainty surrounding the collection and analysis of non-EGU emissions data "is so profound that it precludes EPA from making a reasoned judgment," 938 F.3d at 319 (quoting Mass., 549 U.S. at 534), issues that the EPA has been aware of going back at least to the CSAPR Update, the EPA cannot be relieved of its statutory duty under the Act. The EPA did not attempt to make that showing in Wisconsin and has not made that showing in this case.

Moreover, the EPA has not explained sufficiently why some of this uncertainty is not mitigated by the existing collection of data for non-EGU source emissions from other programs. The EPA notes that although some sector-specific rules apply to non-EGU source categories that enable the collection and analysis of some data pertaining to non-EGUs, those "rules may not be sufficient to inform a Step 3 analysis [in which the EPA

identifies upwind emissions that significantly contribute to
nonattainment or interfere with maintenance of a standard]" and
that the EPA "currently do[es] not have good information on
which non-EGU emissions sources have [continuous emission
monitoring] or other direct monitoring." Idsal Decl. ¶¶ 132-33.
But the EPA has not explained why the currently available data
for non-EGU source emissions creates scientific uncertainty that
"is so profound that it precludes EPA from making a reasoned
judgment". Wisconsin, 938 F.3d at 319 (quoting Mass., 549 U.S.
at 534). Congress necessarily determined that reasonable
expedition was required rather than the formulation of perfect
FIPs. Therefore the EPA's impossibility-based argument grounded
in the uncertainty of quantifying and analyzing non-EGU source
emissions is rejected.[18]

### 3.

Closely related to the EPA's "uncertainty" argument is the
EPA's argument that a complete rulemaking would require analysis
that is too complex to be completed on the plaintiffs' timeline.
The EPA therefore argues that a bifurcated timeline is
appropriate in order to save the more complex analysis of

---

[18] As explained below, and consistent with Wisconsin, the EPA may attempt to
make future showings as to why the level of uncertainty precludes a reasoned
judgment, but the showing is insufficient at this time. The EPA is also
cautioned against devoting significant agency resources towards attempting to
make such showings in the future rather than simply devoting those resources
towards fulfilling the EPA's statutory mandate.

emissions reductions for non-EGUs for later. The EPA makes this argument in a conclusory fashion that is insufficient at this time to carry the EPA's "heavy" burden to demonstrate impossibility.

At a basic level, the EPA does not explain why it is necessary to proceed on a bifurcated schedule at all. Indeed, the Wisconsin court, noting the intent of Congress as embodied in the Act, expressly disapproved the EPA's argument "that it should be permitted to address a problem incrementally, one step at a time." 938 F.3d at 319. The proffered reason for the EPA to proceed now on a bifurcated schedule is that the EPA seeks to implement near-term emissions reductions achievable from EGUs in advance of the 2021 attainment deadline. However, this argument makes no sense given that attainment measurements for the 2021 attainment deadline will be based on ozone measurements from the 2018, 2019, and 2020 ozone seasons, the latter of which is almost over. Sheehan Reply Decl. ¶ 25.[19] The plaintiffs do not necessarily seek to compel EPA action for the purposes of the 2021 attainment deadline, but rather the plaintiffs seek to compel the EPA to perform a long-overdue statutory duty to

---

[19] The EPA does acknowledge that by the time the rulemaking is complete, the 2020 ozone season will be in the past. Idsal Decl. ¶ 110 n.17. However, the EPA does not seem to carry this conclusion forward throughout the rest of the EPA's discussion of the proposed schedules in this case, for example, to explain why a bifurcated rulemaking schedule is necessary under those circumstances.

undertake a complete-remedy rulemaking in order for the plaintiffs to attain the NAAQS, both the 2008 ozone NAAQS as well as the 2015 ozone NAAQS, "as expeditiously as practicable," 42 U.S.C. § 7511(a)(1), and thereby achieve clean and breathable air for the plaintiffs' inhabitants.

The EPA's argument that the complexity of the rulemaking process makes the plaintiffs' proposed schedule "impossible" fails to account for the unnecessary redundancies that the EPA's own proposal creates.[20]

For example, the EPA's schedule includes two months for Agency review of the draft of the proposed rule for the first rulemaking, two months for agency review of the draft of the final rule for the first rulemaking, two months for agency review of the draft of the proposed rule for the second rulemaking, two months for agency review of the draft of the final rule for the second rulemaking, and another two months for a draft of the supplemental proposal for the second rulemaking,

---

[20] In the Idsal Declaration, the EPA makes much of the fact that "it is appropriate to conduct a comprehensive, regional analysis in order to rationally evaluate Upwind States' remaining obligations pursuant to the good neighbor provision with respect to the 2008 ozone NAAQS." Idsal Decl. ¶ 95; see also id. ¶¶ 95-99. The plaintiffs do not appear to dispute that the rulemaking will need to be a "regional" rulemaking because of the science surrounding air pollution and because of the regulatory process within which this rulemaking will occur. Moreover, it is unclear what the relevance of the regional nature of the rulemaking is to the current litigation. As the EPA itself notes, the regional nature of these kinds of rulemakings are informed by "nearly 20 years of interstate transport rulemakings[.]" Id. ¶ 95. Thus, the regional nature of any rulemakings that result from this litigation will come as no surprise to the EPA.

if necessary. Idsal Decl. ¶ 159; Sheehan Reply Decl. ¶ 26.
Similarly, the EPA has allotted up to seven months for
interagency review of the various rules based on the fragmented
nature of the EPA's proposed bifurcated rulemaking schedule.
Idsal Decl. ¶ 159; Sheehan Reply Decl. ¶ 27. The EPA also
included two separate public comment periods, one for its
initial rule, and one for its second non-EGU rule. Idsal Decl.
¶ 159. The EPA's justifications for seeking additional delay
cannot overcome Congress's intent, as expressed in the Act with
bright-line deadlines, particularly when those delays appear to
be unnecessary and entirely of the EPA's own making.[21]

The EPA also does not explain why the substantial timeline
it proposes is necessary in light of the work to update air
quality modeling that the EPA has already completed, following
the decision in Wisconsin. Idsal Decl. ¶¶ 92, 110. Rather, the
EPA states, for example, that "[t]he modeling data that have
become available to date is still undergoing review, and a
number of methodological and policy decisions must be made

---

[21] The plaintiffs point out, more specifically, that the EPA's internal review
contemplates time to reevaluate the contribution threshold used at step 2 of
the CSAPR four-step framework by applying a different pollution standard
rather than the standards used in the CSAPR Update. Sheehan Reply Decl. ¶ 28;
Idsal Decl. ¶ 103 n.15. The plaintiffs appear to be correct that the EPA's
actions in this regard are discretionary with the EPA and unnecessary for the
EPA to be pursuing at this time in the face of nondiscretionary duties. See
Johnson, 444 F. Supp. 2d at 57 (finding that "it is inappropriate for an
agency to divert to purely discretionary rulemaking resources that
conceivably could go towards fulfilling obligations clearly mandated by
Congress.").

before the raw data can be used to inform the design of a rule
or rules." Id. ¶ 110. The EPA's explanation is entirely
conclusory as to why the data collected by the EPA in the nearly
10 months since the New York decision vacating the Close-Out
Rule would nevertheless not support the promulgation of a final
rule in March 2021, another eight months from now. It is
particularly difficult to accept the EPA's representations in
this regard because the EPA has repeatedly failed to comply with
the statutory mandate to develop complete FIPs. The EPA is
required to develop complete FIPs including non-EGU sources to
bring Upwind States into compliance with their Good Neighbor
obligations, even if those FIPs are not perfect. See Wisconsin,
938 F.3d at 318-19.[22]

**4.**

With respect to the EPA's argument that an inevitable
lengthy notice-and-comment period following the promulgation of
the notice of proposed rulemaking renders the plaintiffs'
proposed schedule impossible, the EPA has not met its burden.
The plaintiffs suggest that a single 45-day comment period would
be adequate for the single, complete rulemaking. In response,
the EPA states that this "is not realistic based on our prior

---

[22] The plaintiffs point to various ways in which the EPA could proceed, for
example by focusing on the highest-emitting emissions sources. Sheehan Reply
Decl. ¶ 16. The EPA does not explain why such an approach would not be an
appropriate way to proceed expeditiously.

good neighbor rulemaking experience." Idsal Decl. ¶ 181. But the
EPA has proposed a 45-day comment period for its initial rule
and a further 60-day comment period for its subsequent rule,
which suggests some redundancy. In any event, there is no need
for the Court to micromanage the administrative schedule that
the EPA uses to arrive at a final comprehensive rule
promulgating FIPs that comply with the EPA's statutory
obligation. It is sufficient to require that the notice of the
final rulemaking be promulgated by March 15, 2021, and allow the
EPA to determine the appropriate notice-and-comment period
within that timeframe that is sufficient to comply with the
EPA's various statutory obligations.

### D.

In sum, the EPA's impossibility arguments amount to little
more than the EPA's conclusory assertion that the Court should
take the EPA at its word that it is not possible to implement a
complete remedy by March 2021. The EPA has repeatedly failed to
act of its own accord to perform its nondiscretionary duties
under the Act, which are intended to protect the public health.
Indeed, in Pruitt, the EPA was required to develop compliant
FIPs in about six months, a schedule it agreed was feasible, but
the EPA has failed to do so for over a year and a half. It is
therefore necessary for the Court to exercise its equity powers
to compel the EPA to take action that is long overdue, namely to

promulgate FIPs for the 2008 ozone NAAQS that fully address the Good Neighbor obligations of the Upwind States, including by addressing emissions controls from EGU and non-EGU sources, and to do so expeditiously.

The EPA has not shown at this time that the plaintiffs' proposed time schedule, which must be measured against the need "to protect the public interest and not to punish EPA," is impossible. Thomas, 658 F. Supp. at 175. Indeed, the public interest in the EPA's prompt promulgation of rules addressing the Good Neighbor obligations of the Upwind States for the 2008 ozone NAAQS is high given the substantial economic, environmental, and health costs that the Downwind States will suffer from further delay.

The Court will not fix a date by which the EPA must promulgate its notice of proposed rulemaking. The Court will set a date of March 15, 2021 for the EPA to promulgate the final notice of a complete-remedy rulemaking in this matter, the date that the EPA proposed for the final notice of its proposed phase one rulemaking.

Finally, it is important to note that the Court's order does not preclude the EPA from raising certain arguments in the future. In this litigation, the EPA has primarily relied on the argument of impossibility, which the Wisconsin court expressly permitted the EPA to make subsequently. The EPA has not carried

its "heavy" burden at this point to demonstrate that it would be impossible to promulgate the final notice of a complete-remedy rulemaking by March 15, 2021. The EPA may attempt to invoke the doctrine of impossibility again in the future in this Court as circumstances may warrant. Moreover, the EPA still has flexibility on the substance of its rulemaking as the D.C. Circuit Court of Appeals noted in Wisconsin, for example to determine what upwind contributions count as "significant" within the meaning of the Good Neighbor Provision of the Act. See 938 F.3d at 320.

**VII.**

The plaintiffs also request that the Court award attorney's fees and costs pursuant to 42 U.S.C. § 7604(d), which permits the Court "to award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."

The purpose of this section is "to promote citizen enforcement of important federal policies[.]" Penn. v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 560 (1986). An award of fees and costs is appropriate in instances where the plaintiffs compel the EPA to take actions that the EPA was required to take under the Clean Air Act. See, e.g. Ctr. for Biological Diversity v. EPA, No. C 17-720, 2017 WL 6761932, at

*3 (N.D. Cal. Dec. 4, 2017); <u>New York v. Wheeler</u>, 2019 WL 3337996, at *2.

As such, an award of costs and fees in this case is appropriate. The Court will defer determination of the exact amount of costs and fees in order to allow the parties an opportunity to resolve the matter without further briefing. <u>See New York v. Wheeler</u>, 2019 WL 3337996, at *2.

### CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically discussed above, the arguments are either moot or without merit. The plaintiffs' motion for summary judgment is granted. The defendants' motion for summary judgment is denied. The EPA is directed to resolve the EPA's statutory duty to promulgate FIPs fully addressing the Good Neighbor obligations of the Upwind States with respect to the 2008 ozone NAAQS through a final rulemaking issued by March 15, 2021. The parties should submit a proposed judgment within five days of the date of this Court's opinion and order or, if there is disagreement, proposed counter-judgments. The Judgment should provide that the Court will retain jurisdiction to enforce the Judgment.

If the parties are unable to stipulate to the amount of costs and attorney's fees for the plaintiffs, the plaintiffs

should proceed in accordance with Rule 54(d) of the Federal
Rules of Civil Procedure.

The Clerk is directed to close all pending motions.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **July 28, 2020**                    ___ **/s/ John G. Koeltl** ___
                                                   **John G. Koeltl**
                                        **United States District Judge**